IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BC HOSPITALITY GROUP INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 20-13103 (___)<br><br>(Joint Administration Requested) |

**DECLARATION OF DAVID SELINGER IN SUPPORT
OF CHAPTER 11 PETITIONS AND FIRST DAY MOTIONS**

I, David Selinger, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1. I am the Secretary and Head of Real Estate and Development of BC Hospitality Group Inc. and its debtor affiliates, the debtors and debtors-in-possession (each, a "Debtor" and collectively, the "Debtors" or the "Company") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"). I have served in this role since 2015, and I am generally familiar with the Debtors' day-to-day operations, businesses, financial affairs, and books and records.

2. Prior to joining the Company, I spent more than thirty years in the financial services industry in various roles including institutional sales and trading, business development, capital raising, and investor relations.

3. I submit this declaration (this "Declaration") to provide an overview of the Debtors, their business, and the Chapter 11 Cases, as well as to support the Debtors' chapter 11 petitions

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: BC Hospitality Group Inc. (8766); BC Hospitality Group LLC (9360); BC International LLC (1356); BC Commissary NJ LLC (0230); E2 185 Bleecker LLC (6862); E2 60 West 22nd Street LLC (9567); E2 Lafayette LLC (7419); BC Williamsburg LLC (8277); BCRC LLC (7297); CW SSS LLC (9958); BC Union Square LLC (5172); BC 1385 Broadway LLC (2138); BC 630 Lexington LLC (3202); CCSW Fenway LLC (5517); E2 Seaport LLC (9720); BC Back Bay LLC (0550); BC Providence LLC (0737); BC Silver Lake LLC (2825); BC Century City LLC (0901); and BC West Hollywood LLC (3878). The Debtors' mailing address is 205 Hudson Street, Suite 1001, New York, New York 10013.

27416330.8

and the First Day Motions (as defined below).  Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents, information supplied to me by other members of the Debtors' management and the Debtors' advisors, or my opinion based on my experience concerning the Debtors' operations and financial condition.  I am authorized to submit this Declaration on behalf of the Debtors, and, if called upon to testify, I could and would testify competently to the facts set forth herein.

4.      As described more fully herein, the Debtors operate a fast-casual, 100% vegan, and plant-based restaurant chain under the "by CHLOE." trade name.  As a result of the continued effects on their business caused by the coronavirus disease 2019 ("COVID-19") pandemic, the Debtors are facing near-term liquidity issues.  To address these issues, the Debtors and their professional advisors, after considering all available strategic options, have determined that the best course of action to maximize the value of the Debtors' estates for the benefit of all stakeholders is to sell their business through the Chapter 11 Cases.

5.      The Debtors commenced the Chapter 11 Cases on the date hereof (the "Petition Date") to accomplish this goal.  To minimize the adverse effects on their business of filing for chapter 11, the Debtors filed a number of motions contemporaneously herewith seeking various types of "first day" relief (collectively, the "First Day Motions").  The First Day Motions seek relief intended to allow the Debtors to perform and meet those obligations that are necessary to fulfill their duties as debtors in possession and to continue to operate their business without interruption.  I am familiar with the contents of each First Day Motion and believe that the relief sought in each First Day Motion is necessary to enable the Debtors to operate in chapter 11 with

minimum disruption, loss of productivity, or value, and that each First Day Motion constitutes a critical element in achieving a successful and expeditious outcome in the Chapter 11 Cases.

6. To familiarize the Court with the Debtors and the relief the Debtors seek on the first day of the Chapter 11 Cases, this Declaration is divided into four parts. Part I provides an overview of the Debtors' business, the formation of each Debtor, the Debtors' organizational and capital structure, and certain ongoing litigation involving the Debtors and their former business partner, Ms. Chloe Coscarelli. Part II describes the events leading to the filing of the Chapter 11 Cases. Part III describes the Debtors' goals in the Chapter 11 Cases. Part IV affirms and incorporates the facts that support the relief requested in the First Day Motions.

## PART I
## COMPANY OVERVIEW

**A.    The Company's Business**

7. The first "by CHLOE." restaurant was opened in July of 2015 in the West Village of New York City. It offers an expansive, entirely plant-based menu featuring seasonal salads and soups, house-made burgers and sandwiches, fresh pastas, cold-pressed juices, vegan ice cream, freshly baked sweets, and more. The restaurant's diverse and delicious menu was an instant hit and it opened to a line down the block. It quickly became known for providing fresh, fast, and affordable vegan fare and was named 2015's most surprising restaurant success story by Grub Street Magazine.[2]

8. Due to its immense popularity, the chain rapidly expanded. Prior to the pandemic, the Company operated fourteen restaurants located in New York City, Boston, Los Angeles, and Providence and construction plans were in the initial stages for two additional restaurants. The

---

[2] Sierra Tishgart, *Why By Chloe is 2015's Most Surprising Restaurant Success Story*, Grub Street (Dec. 3, 2015), https://www.grubstreet.com/2015/12/behind-by-chloe-success.html.

27416330.8

3

Company also issued licenses to certain third parties who operate by CHLOE. restaurants in Toronto and London.

9. Despite its quick growth, the chain maintained a reputation for providing a uniquely indulgent, feel-good food experience.  In addition to offering a critically-acclaimed menu, the Company is environmentally-friendly and supports local communities.  Most of the Company's to-go packaging is recyclable and/or compostable and most of its locations are cash-free to reduce its carbon footprint.  The Company participates in various charitable programs including, among others, the national program "Support + Feed," which provides meals to hospitals, first responders, senior centers, homeless shelters, and women's centers across New York City and Los Angeles.

**B.    Corporate History and Structure**

10. The Company's organization structure is set forth on Exhibit A hereto and discussed in more detail below:

11. **BC Hospitality Group Inc.** BC Hospitality Group Inc. ("BCHG Inc."), a Delaware corporation, is the direct or indirect parent of each of the other Debtors and is a passive holding company.  It was formed in 2018 to effectuate the investments described more fully below.  It is owned by the following parties:  (i) Bain Capital Double Impact Fund, LP ("Bain Capital"); (ii) BCIP Double Impact Associates, L.P.; (iii) Kitchen Fund, LP ("Kitchen Fund"); (iv) KF-Chloe, LLC; (v) Qoot International UK Limited; (vi) Lion/BC LLC; (vii) Collab+Consumer I, L.P.; (viii) Samantha Wasser; and (ix) ESquared Hospitality LLC ("ESquared").

12. **BC Hospitality Group LLC.** BC Hospitality Group LLC ("BCHG LLC"), a New York limited liability company, is a wholly owned subsidiary of BCHG Inc. and is the direct parent of each of the other Debtors.  It was formed on November 6, 2014 under the name CCSW LLC and its name was changed to BC Hospitality Group LLC on September 18, 2017.  BCHG LLC

27416330.8

provides administrative services for its subsidiaries, including operations and marketing management and accounting services.

13.     **BC International LLC.**  BC International LLC, a Delaware limited liability company, was formed on January 4, 2017 under the name CCSW International LLC.  Its name was later changed to BC International LLC.  It is a holding company that was formed to issue licenses for the operation of by CHLOE. restaurants in foreign countries.

14.     **BC Commissary NJ LLC.**  BC Commissary NJ LLC ("BC Commissary"), a New York limited liability company, was formed on January 12, 2016.  It produces the components used by the other Debtors to make their unprocessed, plant-based foods and sells the majority of such components to Sysco Corporation ("Sysco").  Sysco holds the goods in its inventory and sells them to the other Debtors on a purchase order basis.  BC Commissary also sells goods to Debtor BC Silver Lake LLC directly and sells goods directly to the other Debtors from time to time when time is of the essence.

15.     Each of the remaining sixteen Debtors was formed to operate a restaurant. However, due to the government-mandated COVID-19 shutdown, three of the restaurants are temporarily closed, as noted below.  In addition, two of the restaurants are in the initial planning stages and have not yet been constructed, as noted below.  Finally, three of the Debtors, who are subsidiaries of BCHG LLC, issued certain membership interests to investors (the "EB-5 Investors") in connection with the EB-5 Immigrant Investor Program (the "EB-5 Program"), as discussed more fully below.

   **1.     Debtors with Operating Restaurants**

16.     **BC Williamsburg LLC.**  BC Williamsburg LLC, a New York limited liability company, was formed on February 19, 2016, and operates the restaurant located at 171 N. 3rd Street in Brooklyn, New York.

27416330.8

17. **BCRC LLC.**  BCRC LLC, a New York limited liability company, was formed on May 18, 2016, and operates the restaurant located at 1 Rockefeller Plaza in New York, New York.

18. **CW SSS LLC.**  CW SSS LLC, a New York limited liability company, was formed on April 26, 2016, and operates the restaurant located at 181 Front Street in New York, New York.

19. **BC 1385 Broadway LLC.**  BC 1385 Broadway LLC, a New York limited liability company, was formed on October 11, 2018, and operates the restaurant located at 1385 Broadway in New York, New York.

20. **CCSW Fenway LLC.**  CCSW Fenway LLC, a Massachusetts limited liability company, was formed on February 10, 2016, and operates the restaurant located 100 Van Ness Street in Boston, Massachusetts.

21. **BC Back Bay LLC.**  BC Back Bay LLC, a Massachusetts limited liability company, was formed on August 31, 2017, and operates the restaurant located at 399 Boylston Street in Boston, Massachusetts.

22. **BC Providence LLC.**  BC Providence LLC, a Rhode Island limited liability company, was formed on September 28, 2016, and operates the restaurant located at 223 Thayer Street in Providence, Rhode Island.

23. **BC Silver Lake LLC.**  BC Silver Lake LLC, a Delaware limited liability company, was formed on March 1, 2016, and operates the restaurant located in the Whole Foods Market at 2520 Glendale Boulevard in Los Angeles, California.

    a.    **Debtors with Operating Restaurants with EB-5 Investors**

24. Congress established the EB-5 Program in 1990 to stimulate the United States economy through job creation and capital investment by foreign investors.  Under the EB-5 Program, foreign investors are eligible to apply for permanent residence if (i) they make the

necessary investment in a commercial enterprise in the United States and (ii) plan to create or preserve at least ten permanent full-time jobs for qualified U.S. workers.

25. Each of the Debtors listed below issued 100% of their Class B membership interests to EB-5 Investors as part of the EB-5 Program. Each EB-5 Investor invested $500,000 in the applicable entity. In exchange, the EB-5 Investors hold limited voting rights and are entitled to a two percent return on their investment per year. Debtor BCHG LLC owns 100% of the Class A membership interests in each entity and controls their operations.

26. **E2 Lafayette LLC.** E2 Lafayette LLC, a New York limited liability company, was formed on November 25, 2015, and operates the restaurant located at 240 Lafayette Street in New York, New York. It has one EB-5 Investor, Roberta Latanza.

27. **E2 60 West 22nd Street LLC.** E2 60 West 22nd Street, a New York limited liability company, was formed on August 6, 2015, and operates the restaurant located at 60 West 22nd Street in New York, New York. It has two EB-5 Investors, Sandra Inchauste Comboni and Gilberto Varela Roman.

28. **E2 Seaport LLC.** E2 Seaport LLC, a New York limited liability company, was formed on January 11, 2016, and operates the restaurant located at 107 Seaport Boulevard in Boston, Massachusetts. It has two EB-5 Investors, the Estate of Ana Inchauste and Abdullah Raza.

    **2.    Debtors with Restaurants Temporarily Closed Due to COVID-19 Restrictions**

29. **E2 185 Bleecker LLC.** E2 185 Bleecker LLC, a New York limited liability company, was formed on October 14, 2014. Prior to the government mandated COVID-19 shutdown, E2 185 Bleecker LLC operated the Debtors' flagship location in the West Village neighborhood of New York, New York.

27416330.8

30. **BC Union Square LLC.**  BC Union Square LLC, a New York limited liability company, was formed on April 3, 2018.  Prior to the government mandated COVID-19 shutdown, it operated the restaurant located at 34 East 16th Street in New York, New York.

31. **BC 630 Lexington LLC.**  BC 630 Lexington LLC, a New York limited liability company, was formed on April 30, 2019.  Prior to the government mandated COVID-19 shutdown, it operated the restaurant located at 630 Lexington Avenue in New York, New York.

### 3. Debtors with Pending Restaurants

32. **BC Century City LLC.**  BC Century City LLC is a California limited liability company that was formed on May 10, 2019.  It is the counterparty to an initial lease for a restaurant, but construction has not yet begun.

33. **BC West Hollywood LLC.**  BC West Hollywood LLC is a California limited liability company that was formed on July 18, 2019.  It is likewise a counterparty to an initial lease for a restaurant, but construction has not yet begun.

**C.    Capital Structure**

34. As of the Petition Date, the Debtors' capital structure, on a consolidated basis, consists of (i) secured debt of approximately $24,000 in connection with Debtor BC Commissary's vehicle lease, (ii) unsecured trade debt of approximately $2.5 million in connection with amounts owed to trade vendors and landlords, among other things, and (iii) other potential non-contingent unsecured debt of approximately $250,000 in connection with accrued payroll, gift card liability,

and other things.[3] Therefore, the Debtors submit that they fall well below the eligibility threshold for purposes of section 1182(a)(1) of the Bankruptcy Code and therefore, are eligible to pursue the Chapter 11 Cases pursuant to Subchapter V of the Bankruptcy Code.

**D.     Ongoing Litigation Against Chef Chloe LLC**

35.     Over the past few years, the Company has been engaged in various litigation with its former co-owner, Ms. Chloe Coscarelli.  Ms. Coscarelli's company, Chef Chloe LLC ("Chef Chloe"), owned a 50% membership interest in BCHG LLC when it was initially formed under the name CCSW LLC.  At that time, ESquared owned the other 50% membership interest in CCSW LLC.  Chef Chloe was designated as the sole Service Member under the operating agreement for CCSW LLC and had various duties, including developing the concept and recipes for "by CHLOE." restaurants and consulting on other aspects of the restaurant such as décor, publicity, and location selection.

36.     The relationship between the parties soured and, on March 21, 2017, an arbitrator issued a final award declaring that Chef Chloe was terminated for cause as the Service Member of CCSW LLC.  The following day, CCSW LLC, acting through its manager ESquared, exercised its rights under the operating agreement to repurchase Chef Chloe's 50% membership interest in CCSW LLC.  ESquared then amended CCSW LLC's operating agreement to grant a 1% membership interest to Ms. Samantha Wasser and to remove certain consent rights previously held

---

[3] The Debtors previously obtained a Payment Protection Program loan (the "PPP Loan") in the amount of $2.673 million.  The Debtors have already properly deployed the proceeds of the PPP Loan in accordance with applicable guidelines and regulations and have already submitted an application for forgiveness of the PPP Loan and expect it to be fully forgiven.  As a result, the PPP Loan was not included in the debt limitation determination under Subchapter V because it represents a contingent claim.  *See In re Parking Mgmt., Inc.*, 620 B.R. 544, 560 (Bankr. D. Md. 2020) (concluding that a debtor's PPP loan was properly excluded from the debt determination under Subchapter V of the Bankruptcy Code because the PPP loan was unliquidated as of the petition date and "it could not be determined the extent to which the debtor might use the PPP funds for ineligible expenses or might fail to maintain employee staffing levels.").  However, even if the PPP Loan was counted for eligibility purposes under Subchapter V, the Debtors' aggregate debt would still fall well below the cap.

27416330.8

by Chef Chloe. On September 18, 2017, the name of CCSW LLC was changed to BC Hospitality Group LLC.

37. Following its falling out with Chef Chloe, ESquared explored investment opportunities with outside investors. Ultimately, a consortium of investors (the "Investor Group") invested $31 million in two tranches that closed in January 2018 and January 2019. The Investor Group, led by Bain Capital and Kitchen Fund, is comprised of some of the strongest leaders in the global restaurant space with experience in fine dining, fast casual, specialized investment, and international scaling. Accordingly, the investment positioned the Debtors to expand locations both domestically and internationally, increase their social objectives, and strengthen operations and marketing initiatives.

38. To effectuate these transactions, Debtor BCHG Inc. was formed. ESquared and Ms. Wasser contributed 100% of the membership interests in BCHG LLC to BCHG Inc. in exchange for 3 million shares of common stock in BCHG Inc. The Investor Group was issued 3,722,687 shares of preferred stock in BCHG Inc. Finally, ESquared received 600,240 shares of preferred stock in BCHG Inc. as partial repayment of a loan ESquared had made to BCHG LLC. These transactions resulted in BCHG Inc.'s current ownership structure.

39. On June 29, 2018, Ms. Coscarelli, Chef Chloe, CC Hospitality Holdings LLC, and CKC Sales LLC commenced an action (the "Chef Chloe Action") against ESquared and BCHG LLC in the United States District Court for the Southern District of New York (the "NY Federal District Court"), Case No. 18 cv 5943 (JMF), seeking, among other things, a declaratory judgment

27416330.8

that Chef Chloe still owned 50% of the membership interests in BCHG LLC.[4] Judge Furman of the NY Federal District Court determined that Chef Chloe was required to submit this claim, among others, to arbitration.

40. Accordingly, on March 12, 2019, Chef Chloe served a demand for arbitration on ESquared and BCHG LLC seeking, among other things, a declaratory judgment that Chef Chloe owned 50% of the membership interests in BCHG LLC. On May 13, 2020, the arbitrator issued a partial final award that, if confirmed by the NY Federal District Court, would reinstate Chef Chloe's membership interests in BCHG LLC, among other things. On September 3, 2020, the arbitrator issued a complete final award that, if confirmed by the NY Federal District Court, would award Chef Chloe attorneys' fees and costs totaling $2,265,838.60.

41. The arbitrator's awards — reinstating Chef Chloe's membership interests in BCHG LLC and awarding attorneys' fees and costs — are the subject of pending confirmation and vacatur proceedings before Judge Furman of the NY Federal District Court in the Chef Chloe Action, and thus, are currently inchoate and unenforceable based on my understanding and discussions with counsel. Discovery in the Chef Chloe Action is complete and there are also pending motions and cross motions for summary judgment.

42. In the subsequent months following the announcement of the arbitration award, the Debtors engaged in good faith negotiations attempting to resolve their disputes with Chef Chloe. After these negotiations reached an impasse, the parties next attempted to negotiate a settlement through formal mediation. While the parties initially reached an agreement in principle, after

---

[4] On March 14, 2019, Mr. Tom Colicchio and Ms. Coscarelli commenced an action against BCHG LLC in the United States District Court for the Southern District of New York, Case No. 19-cv-2325, seeking, among other things, a declaration that their pop-up restaurant did not infringe on BCHG LLC's right in the "by CHLOE." trademark. Mr. Colicchio dismissed himself from this case and Judge Furman consolidated it with the Chef Chloe Action.

27416330.8

several weeks of further negotiations Chef Chloe terminated the mediation process without a final resolution in hand.

## PART II
## EVENTS LEADING TO THE COMMENCEMENT
## OF THE CHAPTER 11 CASES

43. In late February and early March of 2020, the onset of the COVID-19 pandemic occurred and is continuing, which has severely disrupted the Debtors' business operations. In an effort to fight the public health crisis caused by the COVID-19 outbreak and to comply with the business closure and restriction mandates imposed by governmental authorities in the states where the Debtors operate, the Debtors were required to cease or modify their normal business operations.

44. Three of the Debtors' restaurant locations have been entirely closed since late March and the remaining restaurant locations are operating at a reduced capacity. As a result, the Debtors were forced to furlough or lay off over 50% of their employees and the Debtors' monthly revenue has decreased by approximately 67% since February 2020. The cessation of normal business operations has deprived the Debtors of vital cash flow, without which the Debtors are incapable of meeting their obligations in the ordinary course, including obligations to employees, landlords, vendors, suppliers, and other creditors and claimants. As a result, the Debtors were forced to reassess the viability of their previously successful business and their near-term survival.

45. Given the deteriorating financial and cash position of the Debtors, it became apparent that a bankruptcy or other insolvency process was likely needed. In light of his extensive bankruptcy expertise, on November 16, 2020, the Board of BCHG Inc. appointed Mr. Patrick J. Bartels, Jr. to serve as an independent director of the Company. Contemporaneously therewith, and recognizing that a potential source for additional funding was from the Investor Group, the

27416330.8

designee of the Investor Group who had previously served as a director of BCHG Inc. agreed to resign from the board of directors. Shortly thereafter, the Company retained Young Conaway Stargatt & Taylor, LLP as its bankruptcy counsel and Ankura Consulting Group, LLC as its financial and restructuring advisor.

46. On December 7, 2020, the Board of Directors of BCHG Inc. formed a committee independent of the Board (the "Restructuring Committee") to independently evaluate the Debtors' capital structure, negotiate financing and other strategic alternatives to address the Debtors' ongoing liquidity issues, and make decisions with respect to certain designated restructuring matters and appointed Mr. Bartels as the sole member of the Restructuring Committee. Among other things, the Board authorized the Restructuring Committee to direct the commencement of the Chapter 11 Cases, if appropriate.

47. The Restructuring Committee authorized the Debtors' advisors to initiate the process of securing debtor-in-possession financing to fund a potential chapter 11 filing and facilitate the Debtors' sale process. As set forth more fully in the declaration of Patrick J. Bartels, Jr. in support of the DIP Motion, the Debtors' professionals promptly reached out to certain of the Debtors' equity investors to determine their interest in providing financing. Ultimately, the Investor Group offered to provide the Debtors with a DIP facility to support the Debtors' sale process within the context of a chapter 11 proceeding (the "DIP Facility"). Following an extensive, multi-track negotiation process, the Restructuring Committee determined that the terms proposed by the Investor Group provide the most beneficial DIP financing to the Debtors.

48. In addition, prior to the Petition Date, the Investor Group entered into a settlement agreement with ESquared and James Haber, the Chief Executive Officer of ESquared, among other parties. Despite Mr. Haber's significant contributions over the years to the "by CHLOE." brand,

as part of the settlement Mr. Haber agreed to resign as an officer and director of the Debtors and to step away from the day-to-day operations of the company. However, ESquared will continue to provide transition services over the next several months to help facilitate a smooth transition. The settlement agreement with Mr. Haber, coupled with the Investor Group's commitment to fund the DIP Facility, signals their redoubled commitment to the Debtors and their desire to preserve the Debtors as a going concern and propel the company forward under new direction.

## PART III
## GOALS OF THE CHAPTER 11 CASES

49.     As discussed above, the Debtors commenced the Chapter 11 Cases to maximize the value of their estates for the benefit of all of their stakeholders through the sale of their business, with the hope that their restaurants will eventually resume normal business operations under new ownership when the COVID-19 crisis has passed.

50.     To achieve this goal, the Debtors filed a motion seeking approval of bid procedures (the "Bid Procedures") contemporaneously herewith to facilitate a competitive auction process related to the sale of the Debtors' assets or solicitation of plan sponsor bids. The Bid Procedures are subject to Court approval at a hearing to be scheduled in early 2021. As set forth therein, the Bid Procedures contemplate an auction in mid-February and a confirmation and/or sale approval hearing shortly thereafter.

51.     The Bid Procedures are designed to maximize value while facilitating a transparent and fair sale process where any and all interested bidders may participate. The Debtors believe that the proposed timeline is sufficient to complete a fair and open sale process that will maximize value for the benefit of the Debtors, their creditors, and their estates.

52. Additionally, the Debtors have negotiated the DIP Facility, which will allow the Debtors to continue to operate, pay landlords and vendors, and have sufficient liquidity to pay the administrative costs, both operational and statutory, required in the Chapter 11 Cases.

## PART IV
## SUPPORT FOR RELIEF REQUESTED IN FIRST DAY MOTIONS

53. Concurrently with the filing of their chapter 11 petitions, the Debtors filed a number of First Day Motions seeking relief that the Debtors believe is necessary to enable them to maximize the value of their estates while the Chapter 11 Cases are pending. The facts set forth in the First Day Motions are incorporated herein in their entirety. The Debtors request that the relief requested in each of the First Day Motions be granted as critical elements in ensuring that value is preserved as they transition into chapter 11.

54. I have reviewed each of the First Day Motions, and the facts stated therein are true and correct to the best of my belief with appropriate reliance on corporate officers and advisors. The relief sought in each of the First Day Motions constitutes a critical element in the successful implementation of the Debtors' efforts to maximize creditor recoveries. To this end, Debtors have filed the following First Day Motions:

   i. *Debtors' Motion for Entry of Order (I) Directing Joint Administration of Related Chapter 11 Cases; and (II) Granting Related Relief*

   ii. *Debtors' Application for an Order Appointing Epiq Corporate Restructuring, LLC as Claims and Noticing Agent Effective as of the Petition Date*

   iii. *Debtors' Motion for Entry of an Order (I) Authorizing Redaction of Certain Personal Identification Information in the Debtors' Creditor Matrix; and (II) Granting Related Relief*

   iv. *Debtors' Motion for Entry of Interim and Final Orders (I) (A) Approving the Debtors' Proposed Form of Adequate Assurance of Payment for Utility Services, (B) Approving the Debtors' Proposed Procedures for Resolving Additional Assurance Requests, and (C) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Services; and (II) Granting Related Relief*

27416330.8

    v.    *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition Taxes and Fees and (II) Granting Related Relief*

    vi.    *Debtors' Motion for Entry of Interim and Final Orders, (I) Authorizing the Debtors to Pay Certain Prepetition Obligations Incurred in the Ordinary Course of Business in Connection with Insurance Programs, Including Payment of Policy Premiums and Broker Fees; (II) Authorizing Banks to Honor and Process Check and Electronic Transfer Requests Related Thereto; and (III) Granting Related Relief*

    vii.    *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Honor Prepetition Obligations to Customers and (B) Otherwise Continue Certain Customer Programs in the Ordinary Course of Business; and (II) Granting Related Relief*

    viii.    *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Employees Wages, Salaries, Other Compensation, and Reimbursable Employee Expenses, and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief*

    ix.    *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Maintain Their Bank Accounts and Pay Bank and Processor Charges, (C) Maintain Existing Business Forms, and (D) Continue Intercompany Transactions; (II) Granting a Limited Suspension of Section 345(b) of the Bankruptcy Code, to the Extent Applicable; and (III) Granting Related Relief*

    x.    *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* (the "DIP Motion")

    55.    It is my belief that the relief sought in each of the First Day Motions is necessary for a successful sale process and to maximize creditor recoveries. It is my further belief that, with respect to those First Day Motions requesting the authority to pay specific prepetition claims or continue selected prepetition programs, *i.e.* the First Day Motions seeking relief related to the Debtors' obligations to their employees, taxing authorities, service providers, customers, banks, and insurers, the relief requested is essential to the Debtors' sale efforts and necessary to avoid immediate and irreparable harm to the Debtors' estates. The success of the Chapter 11 Cases depends upon the Debtors' ability to maintain their already limited operations and maximize estate value. The relief requested in the First Day Motions is a critical component of maintaining

27416330.8

uninterrupted business operations and the confidence of key constituencies necessary to implement a successful chapter 11 process.

## CONCLUSION

56. I believe approval of the relief requested in the First Day Motions is in the best interests of all stakeholders and respectfully request that the Court grant all relief requested in the First Day Motions and such other further relief as may be just.

I, the undersigned, declare under penalty of perjury that the foregoing is true and correct.

Dated: December 14, 2020

*/s/ David Selinger*
David Selinger
Secretary and Head of Real Estate and Development
BC Hospitality Group Inc.

# Exhibit A

## Corporate Organizational Chart

27416330.8

Private Investor Group
ESquared Hospitality LLC
Samantha Wasser
BC Hospitality Group Inc. (Delaware) 100%
EB-5 Program Foreign Investors (100% of Class B Membership Interests)
100% of Class A Membership Interests
BC Hospitality Group LLC (New York) (f/k/a CCSW LLC) 100%
E2 Lafayette LLC (New York)
E2 60 West 22nd Street LLC (New York)
E2 Seaport LLC (New York)
BC International LLC (Delaware) (f/k/a CCSW International LLC)
BC Commissary NJ LLC (New York)
E2 185 Bleecker LLC (New York)
BC Williamsburg LLC (New York)
BCRC LLC (New York)
CW SSS LLC (New York)
BC Union Square LLC (New York)
BC 1385 Broadway LLC (New York)
BC 630 Lexington LLC (New York)
CCSW Fenway LLC (Massachusetts)
BC Back Bay LLC (Massachusetts)
BC Providence LLC (Rhode Island)
BC Silver Lake LLC (Delaware)
BC Century City LLC (California)
BC West Hollywood LLC (California)

