# THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>BC HOSPITALITY GROUP, INC., *et al.*,<br><br>Debtors.<sup>1</sup> | Chapter 11 (Subchapter V)<br><br>Case No. 20-13103 (BLS)<br><br>**(Jointly Administered)**<br><br>Re: D.I. 12, 36<br><br>**Obj. Deadline: January 4, 2021 at 5:00 p.m. (ET) (For US Trustee and Subchapter V Trustee)**<br><br>**Hearing Date: January 7, 2021 at 9:30 a.m. (ET)** |

**UNITED STATES TRUSTEE'S OMNIBUS OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE BIDDING PROCEDURES, (II) SCHEDULING THE BID DEADLINE AND THE AUCTION, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND (IV) GRANTING RELATED RELIEF AND MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN SENIOR SECURED SUPERPRIORITY POSTPETITION FINANCING; (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (III) AUTHORIZING USE OF CASH COLLATERAL; (IV) MODIFYING THE AUTOMATIC STAY; (V) SCHEDULING A FINAL HEARING; AND (VI) GRANTING RELATED RELIEF**

Andrew R. Vara, the United States Trustee for Regions 3 and 9 ("U.S. Trustee"), by and through his undersigned counsel, hereby files this omnibus objection ("Objection") to the *Debtors' Motion For Entry Of*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: BC Hospitality Group Inc. (8766); BC Hospitality Group LLC (9360); BC International LLC (1356); BC Commissary NJ LLC (0230); E2 185 Bleecker LLC (6862); E2 60 West 22nd Street LLC (9567); E2 Lafayette LLC (7419); BC Williamsburg LLC (8277); BCRC LLC (7297); CW SSS LLC (9958); BC Union Square LLC (5172); BC 1385 Broadway LLC (2138); BC 630 Lexington LLC (3202); CCSW Fenway LLC (5517); E2 Seaport LLC (9720); BC Back Bay LLC (0550); BC Providence LLC (0737); BC Silver Lake LLC (2825); BC Century City LLC (0901); and BC West Hollywood LLC (3878). The Debtors' mailing address is 205 Hudson Street, Suite 1001, New York, New York 10013.

1

*An Order (I) Approving The Bidding Procedures, (II) Scheduling The Bid Deadline And The Auction, (III) Approving The Form And Manner Of Notice Thereof, And (IV) Granting Related Relief* filed at D.I. 36 (the "Bid Procedures Motion") and the *Debtors' Motion For Entry Of Interim And Final Orders (I) Authorizing The Debtors To Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting Liens And Superpriority Administrative Expense Claims; (III) Authorizing Use Of Cash Collateral; (IV) Modifying The Automatic Stay; (V) Scheduling A Final Hearing; And (VI) Granting Related Relief* filed at D.I. 12 (the "DIP Financing Motion"), and in support of this Objection states as follows:

## PRELIMINARY STATEMENT

1. The U.S. Trustee objects to certain relief requested in the DIP Financing Motion and the Bid Procedures motion because (1) the timing of the sale process is unnecessarily expedited, and the Debtors have not submitted evidence to show that this expedited process is poised to benefit the estate, and (2) certain relief requested in the DIP Financing Motion is premature at this juncture where a Section 341 meeting has not been held and Schedules and Statements have not been filed.

## JURISDICTION

2. Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine the Motions and this Objection.

3. The U.S. Trustee is charged with overseeing the administration of Chapter 11 cases filed in this judicial district, pursuant to 28 U.S.C. § 586. This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts to guard against abuse and over-reaching to assure fairness in the process and adherence to the provisions of the Bankruptcy Code. *See In re United Artists Theatre Co.*, 315 F.3d 217, 225 (3d Cir. 2003) ("U.S. Trustees are officers of the Department of Justice who protect

the public interest by aiding bankruptcy judges in monitoring certain aspects of bankruptcy proceedings."); *United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 298 (3d Cir. 1994) ("It is precisely because the statute gives the U.S. Trustee duties to protect the public interest . . . that the Trustee has standing to attempt to prevent circumvention of that responsibility." ); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 499 (6th Cir. 1990) ("As Congress has stated, the U.S. trustees are responsible for protecting the public interest and ensuring that the bankruptcy cases are conducted according to [the] law").

4. Under § 307 of title 11 of the United States Code (the "Bankruptcy Code" or "Code"), the United States Trustee has standing to be heard on the Motion and the issues raised in this Objection.

## BACKGROUND

5. On December 14, 2020, the ("Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

6. On the petitions, the Debtors indicated that they were debtors "as defined in 11 U.S.C. § 1182(1)" and chose "to proceed under Subchapter V of Chapter 11." *See* D.I. 1 ("Petition").

7. Accordingly, the U.S. Trustee appointed Jami Nimeroff as the standing trustee under Subchapter V of the Code ("Subchapter V Trustee") on the Petition Date. *See* D.I. 16.

8. In support of the filing, the Debtors filed the *Declaration of David Selinger in Support of Chapter 11 Petitions and First Day Motion* ("Selinger Declaration") at D.I. 3. The Selinger Declaration reveals that, prepetition the Debtors and other related parties have been in ongoing litigation with Chef Chloe LLC ("Chef Chloe") on account of a 2017 repurchase of Chef Chloe's membership interest in the Debtors. *See* Selinger Declaration at ¶¶ 35-36. Currently, this litigation appears to be the subject of confirmation and vacatur proceedings in the Southern District

3

of New York. *Id*. at ¶ 41. The Selinger Declaration additionally discloses a trademark infringement action initiated by Chef Chloe against Debtor BCHG LLC in the Southern District of New York. *See id*. ¶ 39.

9. The Selinger Declaration also discloses that "prior to the Petition Date, the Investor Group entered into a settlement with Esquared and James Haber, the Chief Executive Officer of Esquared, among other parties." *See id*. at ¶ 48.

10. On the Petition Date, the Debtors also filed the DIP Financing Motion, which seeks, upon entry of a final order, approval and authorization for the Debtors to indemnify the DIP Secured Parties from certain third-party claims and actions. The relevant provisions of the Interim DIP Financing Order provide as follows:

> D. Parties' Acknowledgments, Agreements, and Stipulations. In requesting the DIP Facility, and in exchange for and as a material inducement to the DIP Secured Parties to agree to provide the DIP Facility and subordination of the DIP Liens (as defined herein) to the Carve Out, and as a condition to providing financing under the DIP Facility, the Debtors permanently and irrevocably admit, stipulate, acknowledge, and agree, as follows:
>
> (i) Indemnity. The DIP Secured Parties have acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken **by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP Facility, including in respect of the granting of the DIP Liens, any challenges or objections to the DIP Facility, and all documents related to any and all transactions contemplated by the foregoing**. Accordingly, the DIP Secured Parties shall be and hereby are indemnified and held harmless by the Debtors in respect of any claim or liability incurred in respect thereof or in any way related thereto, provided that no such parties will be indemnified for any cost, expense, or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such parties' gross negligence or willful misconduct. No exception or defense exists in contract, law, or equity as to any obligation set forth, as the case may be, in this Section E(i) or in the DIP Loan

> Documents, to the Debtors' obligation to indemnify and/or hold harmless the DIP Secured Parties, as the case may be.

*See* D.I. 35 at § D. (i) (emphasis added).

> . . . .
>
> 1.4 Indemnification. The Debtors are authorized to indemnify and hold harmless each DIP Secured Party (solely in their capacities as secured parties under this Order and the DIP Loan Documents and not in their capacity as equity investors in the Debtors), and, solely in their capacities as such, each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders and employees, past, present and future, and their respective heirs, predecessors, successors and assigns, in accordance with, and subject to, the DIP Loan Documents, which indemnification is hereby authorized and approved.

*See id*. at § 1.4

11. Furthermore, the DIP Financing Motion requests, upon entry of a final order, approval and authorization of the following Debtors' release:

> 4.15 Release. Subject to entry of the Final Order, each of the Debtors, their Estates, the Borrower, and the DIP Guarantors, on their own behalf and on behalf of each of their past, present and future predecessors, successors, heirs, subsidiaries, and assigns, to the fullest extent permitted by law, hereby forever, unconditionally, permanently, and irrevocably release, discharge, and acquit each of the DIP Secured Parties, only in their capacity as such and not in their capacity as equity investors in the Debtors, and each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, and their respective heirs, predecessors, successors and assigns (collectively, the "Released Parties") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, including, without limitation, (a) any so-called "lender liability" or

> equitable subordination claims or defenses, (b) any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code, and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law, including, without limitation, any right to assert any disgorgement or recovery, in each case, solely with respect or related to the extent, amount, validity, enforceability, priority, security, and perfection of any of the DIP Obligations, the DIP Loan Documents, or the DIP Liens, and further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the DIP Obligations that the Debtors now have or may claim to have against the Released Parties, arising under, in connection with, based upon, or related to any and all acts, omissions, conduct undertaken, or events occurring prior to entry of the Final Order only as such relate to the DIP Obligations, the DIP Loan Documents, and the DIP Liens.

*See id.* at § 4.15.

12. The DIP Financing Motion also grants the DIP Secured Parties postpetition liens on certain "DIP Collateral" which is defined to include proceeds of any "claim or cause of action arising under our pursuant to chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law (including any other avoidance actions under the Bankruptcy Code)." *See id.* at §§ E. (v) & 2.1 (a).

13. Additionally, on December 15, 2020, the Debtors filed the Bid Procedures Motion, seeking authorization and approval of certain proposed bidding procedures in conjunction with a sale of Debtors' assets or equity ("Bidding Procedures"). *See* D.I. 36.

14. The proposed Bidding Procedures contemplate the following deadlines:

i. ***Bid Deadline: the proposed deadline to submit bids is fifty-nine (59) days from the Petition Date on February 11, 2021.***

    *ii.    Auction: Five days after the Bid Deadline, February 16, 2021, the Debtors propose to have an auction if necessary.*

    *iii.    Sale and/or Confirmation Hearing: the proposed date to approve a sale in connection plan confirmation or stand-alone sale is sixty-seven (67) days from Petition Date is February 19, 2021.*

15. The Bidding Procedures indicate that the Debtors and its advisors are developing a list of "Contact Parties" as part of the marketing process for a sale of the Debtors' assets or equity.

16. As of the filing hereof, neither the U.S. Trustee nor the Subchapter V Trustee have seen a draft of the Debtors' proposed plan, nor has a plan been filed. The DIP Milestones provide that a plan shall be filed today.

17. As of the filing hereof, the Debtors have not filed their Schedules and Statements.

18. As of the filing hereof, a Section 341 meeting has not been held, but it is scheduled for January 8, 2021.

## ARGUMENT

I. **The Scope of the Indemnification Provisions in the Interim DIP Financing Order[2] is Unclear and Ambiguous and Should be Clarified.**

19. The Indemnification Provisions in the Interim DIP Financing Order are unclear and ambiguous because they do not clearly establish the substantive and temporal scope of claims and actions for which the Debtors are required to indemnify the DIP Secured Parties.

20. Specifically, the first indemnification provision appearing in the Debtors' stipulations states that their indemnity obligation to the DIP Secured Parties shall apply "to all actions taken **by them in connection with or related in any way to negotiating, implementing,**

---

[2] As of the filing hereof, the Debtors have not provided the U.S. Trustee a draft of the final DIP financing order; the Debtors, however, have indicated that it will be substantially similar to the Interim DIP Financing Order at D.I. 35.

7

**documenting, or obtaining the requisite approvals of the DIP Facility, including in respect of the granting of the DIP Liens, any challenges or objections to the DIP Facility, and all documents related to any and all transactions contemplated by the foregoing**," but the operative provision of the order whereby this Court approves and authorizes such indemnification does not appear to be so limited. *Compare* D.I. 35 at § D. (i) (emphasis added), *with id*. at § 1.4.

21. Therefore, the U.S. Trustee submits that unless and until the scope of indemnification is clarified as requested by the U.S. Trustee or in any other manner that addresses the ambiguity of the indemnification language, this Court should not approve nor authorize the indemnification provisions.

II. **Granting of DIP Liens on Proceeds of Avoidance Actions and a Release of the DIP Secured Parties is Premature at this Juncture.**

22. Because the Debtors propose to grant liens on proceeds of avoidance actions and to release the DIP Secured Parties of certain claims and actions before the Section 341 meeting has been held and schedules and statements have been filed, and without providing parties in interest an opportunity to better familiarize themselves with the Debtors' prepetition transactions, it is premature to grant this relief at this juncture.

23. As stated in the Background section of this Objection, the Selinger Declaration reveals ongoing litigation and a settlement agreement that implicates the Debtors' prepetition financial history, dealings, and the DIP Secured Parties. The Debtors filed their petitions only three weeks ago with two intervening holidays. Accordingly, an insufficient amount of time has passed to assess whether granting DIP Liens on proceeds of avoidance actions and granting a release of the DIP Secured Parties is proper at this time.

24. The U.S. Trustee has joined the Subchapter V Trustee's informal request to the Debtors to adjourn the final hearing on the DIP Motion due to these concerns. Alternatively, if the

Debtors could not accommodate the adjournment request, the U.S. Trustee and the Subchapter V Trustee have proposed including a concept in the Interim DIP Financing Order that would make the release and the DIP Liens on avoidance actions subject to an investigation/challenge period. As of the filing hereof, the U.S. Trustee has not received a response on these requests.

25. Therefore, the DIP Liens on avoidance actions and the Debtor release of the DIP Secured Parties should not be granted on a final basis at this time.

### III. The Abbreviated Timeframe of the Sale Process May Not Allow for the Best and Highest Price for the Debtors' Assets.

26. Section 363(b)(1) of the Bankruptcy Code permits a debtor-in-possession to sell property of the estate outside the ordinary course of business. The debtor-in-possession bears the burden of proof to show that the sale is in the best interests of the creditors and the estate:

> "The sale of assets which is not in the debtor's ordinary course of business requires proof that: (1) there is a sound purpose for the sale; (2) the proposed sale price is fair; (3) the debtor has provided adequate and reasonable notice; and (4) the buyer has acted in good faith. The element of 'good faith' is of particular importance as the Third Circuit made clear in *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 149-50 (3d Cir. 1986)."

*In re Exaris Inc.*, 380 B.R. 741 (Bankr. Del. 2008) (some citations omitted).

27. Initially, the Court must determine that the bidding procedures will bring the best and highest price for the debtors' assets. The debtors must show that the assets have been fully marketed and that the sale is sufficiently publicized in order to prove that the assets will be sold for a fair and reasonable price. *See In re Abbotts Dairies, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).

28. The speed at which the Debtors propose to sell all of their assets creates a risk that potential buyers will not be reached, or that all potential purchasers will not have adequate time to perform due diligence, thereby reducing competition for purchase of the Debtors' assets. This risk is compounded by the lack of prepetition marketing of the Debtors' assets. The net result

9

could thus be a reduction in competitive bidding, and, concomitantly, in the proceeds to be realized from the sale of those assets.

29. Notably, as of the filing of this Objection, the Debtors have not submitted any evidence to support that this expedited sales process will result in the highest and best offer for the Debtors' assets. The Debtors have also been unable to informally provide meaningful details about the Debtors' sale efforts to date. Accordingly, at this juncture, the U.S. Trustee does not know whether this expedited sales process is poised to provide a benefit to the estate.

30. Furthermore, the Bidding Procedures do not contain any deadlines or process for the assumption, assignment, and cure of executory contracts and unexpired leases. To address this, the Debtors have proposed to add certain procedures which all presuppose the filing of plan and scheduling of a confirmation hearing within the timeframe imposed in the DIP Milestones. The U.S. Trustee does not object to such procedures but without having seen a draft of the plan, at this juncture, the U.S. Trustee is concerned these procedures are difficult to understand in application.

31. Therefore, absent the development of evidence on the record establishing that this expedited sales process is poised to benefit the estate, the U.S. Trustee submits that this Court should not approve the deadlines contained within the Bidding Procedures.[3]

32. The U.S. Trustee has provided other comments to Debtors' counsel regarding the proposed form of order and hopes that all such comments will be resolved consensually prior to the hearing, but reserves the right to raise the same with the Court if the issues cannot be resolved.

---

[3] On December 31, 2020, the Debtors filed the *Debtors' Application For Entry Of An Order (I) Authorizing The Employment And Retention Of Ankura Consulting Group, LLC As Their Financial And Restructuring Advisor And Asset Sale Advisor Effective As Of The Petition Date; And (II) Granting Related Relief* at D.I. 69. The U.S. Trustee has not been able to review this filing in its entirety as of the filing hereof.

33. The U.S. Trustee leaves the Debtors to their burden of proof and reserves any and all rights, remedies and obligations to, among other things, complement, supplement, augment, alter or modify this reservation of rights and Objection, assert any objection, file an appropriate motion, or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery

Dated: January 4, 2021.

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**REGIONS 3 AND 9**

By: */s/ Rosa Sierra*
Rosa Sierra, Trial Attorney
United Sates Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 N. King Street, Room 2201, Lockbox 35
Wilmington, DE 19801
Office: (302) 573-6492
Fax: (302) 573-6497
E-mail: rosa.sierra@usdoj.gov

## **CERTIFICATE OF SERVICE**

I, Rosa Sierra, hereby certify that on this 4th day of January, 2021, I caused a true and correct copy of the foregoing to be electronically filed using the Court's CM/ECF System and served upon those parties requesting service therefrom. The document is available for viewing and downloading. I further certify that I caused a true and correct copy of the foregoing to be served via electronic mail upon the attached Service List:

*/s/ Rosa Sierra*
Rosa Sierra

**SERVICE LIST**

M. Blake Cleary, Esquire
Elizabeth S. Justison, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
1000 North King Street
Wilmington, Delaware 19801
mbcleary@ycst.com
ejustison@ycst.com
*Counsel for Debtors*

Andrew Mordkoff, Esquire
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
amordkoff@willkie.com
*Counsel for DIP Lenders*

Patrick A. Jackson, Esquire
FAEGRE DRINKER BIDDLE & REATH
222 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
patrick.jackson@faegredrinker.com
*Counsel for DIP Lenders*

Jami Nimeroff, Esquire
JNimeroff@bmnlawyers.com
*Subchapter V Trustee*

Mette H. Kurth, Esquire
CULHANE MEADOWS, PLLC
4023 Kennett Pike #165
Wilmington, Delaware 19807
mkurth@cm.law
*Counsel for Chef Chloe LLC, et al.*

Patrick Arenz, Esquire
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
PArenz@RobinsKaplan.com
*Counsel for Chef Chloe LLC, et al.*
Scott Gautier, Esquire
ROBINS KAPLAN LLP
2049 Century Park East, Suite 3400
Los Angeles, California 90067
SGautier@RobinsKaplan.com

*Counsel for Chef Chloe LLC, et al.*

Heath B. Kushnick, Esquire
Leo Muchnik, Esquire
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue
New York, NY 10166
kushnickh@gtlaw.com
muchnikl@gtlaw.com
*Counsel for RCPI Landmark Properties, L.L.C*

Daniel B. Besikof, Esquire
Bethan Simmos, Esquire
Kenneth Sold, Esquire
LOEB & LOEB LLP
345 Park Avenue
New York, NY  10145
DBesikof@loeb.com
bsimmons@loeb.com
ksold@loeb.com

Jeremy Ouellette
BOYLESTON WEST LLC
c/o Management Office 4th Floor
1335 Boylston Street
Boston, MA  02215
Jouellette@samuelsre.com

Office of the United States Attorney
DISTRICT OF DELAWARE
Hercules Building
1313 N. Market Street, Suite 400
Wilmington, DE  19801
Usade.press@usdoj.gov

Jason Staib
DELAWARE STATE TREASURY
820 Silver Lake Bouelvard, Suite 100
Dover, DE  19904
Jason.staib@delaware.gov

Chief Financial Officer
RCPI LANDMARK PROPERTIES, LLC

PO Box 33173
Newark, NJ  07188-3137
info@rockwellrisk.com

Chief Financial Officer
COMPEAT, INC.
11500 Alterra Parkway, Suite 130
Austin, Texas  7758
info@compaet.com

Securities & Exchange Commission
100 F. Street NE
Washington, DC  20549
Help@sec.gov

Steward E. Rothman, Esquire
SELIGSON ROTHMAN & ROTHMAN
29 West 20th Street
New York, NY 10001
erothman@srrlaw.com

Brent A. Friedman, P.A.
78 SW 7th Street, Floor 5
Miami, Florida  33130-3402
Brent@ Brentafriedman.com

Paige Peck
WB MASON
59 Centre Street
Brockton, MA  02303
Customersupport@wbmason.com

Esquared Hospitality LLC
950 3rd Avenue, 22nd Floor
New York, NY  10022
Elyseg@e2hospitality.com
info@esquaredhospitality.com