# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BC HOSPITALITY GROUP INC., *et al.*,<br><br>Debtors.[1] | Chapter 11 (Subchapter V)<br><br>Case No. 20-13103 (BLS)<br><br>(Joint Administered)<br><br>**Objection Deadline:**<br>**January 27, 2021 at 4:00 p.m. ET**<br><br>**Hearing Date:**<br>**February 3, 2021 at 11:00 a.m. ET** |

## MOTION OF CHLOE COSCARELLI AND CHEF CHLOE LLC FOR RELIEF FROM STAY UNDER SECTION 362 OF THE BANKRUPTCY CODE

Creditors Chloe Coscarelli and Chef Chloe LLC (collectively, Chloe) moves the Court for an order granting relief from the automatic stay of pending litigation in the Southern District of New York. Whether by sale or plan restructuring, a court must determine to what extent any purchaser or reorganized debtor can utilize the "By Chloe" trademark—likely the most valuable asset that the Estate purports to own. Since 2018, Chloe has litigated several issues against the Debtor BC Hospitality Group LLC (BCHG or the Company) and ESquared Hospitality LLC. In February 2020, the parties cross-moved for summary judgment on issues that affect what assets the Company has the right to sell in any auction in this bankruptcy proceeding. In 2018, for instance, Chloe terminated the Name, Face, Likeness Agreement (the NFL Agreement) with the Company. Because the Company contested that termination, Chloe moved for summary

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: BC Hospitality Group Inc. (8766); BC Hospitality Group LLC (9360); BC International LLC (1356); BC Commissary NJ LLC (0230); E2 185 Bleecker LLC (6862); E2 60 West 22nd Street LLC (9567); E2 Lafayette LLC (7419); BC Williamsburg LLC (8277); BCRC LLC (7297); CW SSS LLC (9958); BC Union Square LLC (5172); BC 1385 Broadway LLC (2138); BC 630 Lexington LLC (3202); CCSW Fenway LLC (5517); E2 Seaport LLC (9720); BC Back Bay LLC (0550); BC Providence LLC (0737); BC Silver Lake LLC (2825); BC Century City LLC (0901); and BC West Hollywood LLC (3878). The Debtors' mailing address is 205 Hudson Street, Suite 1001, New York, New York 10013.

judgment. Chloe also opposed the Company's motion that it did not breach the NFL Agreement, explaining that the Company does not own the "by Chloe" trademark unconditionally. Yet in the Company's recently disclosed schedules, the Company contends both the NFL Agreement and the "by Chloe" trademark are assets that the company owns without condition. Chloe thus moves to lift the stay of the SDNY action under sections 105 and 362(d) of title 11 of the United States Code, Rule 4001 of the Federal Rules of Bankruptcy Procedure and Local Rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware. In support of this motion, Chloe states as follows:

### Relief Requested

1.      Chloe ask this Court to enter an order in substantially the form of the proposed order attached hereto as **Exhibit A** (the Proposed Order) lifting the automatic stay to allow Judge Furman to decide the pending summary judgment motions about (1) whether Chloe terminated the NFL Agreement, and (2) whether the Company has unconditional ownership of the By Chloe trademark.

### Jurisdiction, Venue, and Basis for Relief

2.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012 (Sleet, C.J.). Venue for this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409. This Motion is a core proceeding under 28 U.S.C. §157(b)(2)(G).

3.      The statutory basis for Chloe's requested relief is Section 362 of the Bankruptcy Code, as supplemented by Bankruptcy Rule 4001 and Local Rule 4000-1.

4.      Chloe does not consent under Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1(f) of the Local Rules of Bankruptcy

Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to entry of a final order by the Court in connection with this Motion if the Court later determines that, absent consent by the parties, the Court cannot enter final orders or judgments in connection with this motion consistent with Article III of the United States Constitution.

**Factual Background**

A.    **By Chloe *is* by Chloe**

5.    Chloe has earned the recognition as "America's favorite vegan chef." After graduating from UC-Berkley, she attended culinary school at the prestigious National Gourmet Institute in New York City and then received a plant-based nutrition degree from Cornell University. At the age of 22, she appeared on—and won—Food Network's hit television competition, Cupcake Wars. The New York Times then profiled Chloe and her success as a vegan chef. Chloe also became a best-selling author with multiple vegan cookbooks.

6.    Based on her growing fame, Chloe pursued her dream of opening her own restaurant in 2013. By age 26, Chloe had conceived of a fast-casual vegan restaurant concept. In January 2014, Chloe met with James Haber of ESquared Hospitality to pitch her concept. Haber and ESquared Hospitality wanted to invest in Chloe's concept immediately.

B.    **Chloe and the Company bargained for limited rights in Chloe's name**

7.    Chloe and ESquared Hospitality embarked on a long process to form an LLC. From January to November 2014, counsel for the parties negotiated an operating agreement and a name, face, and likeness agreement (NFL Agreement). What resulted is a convoluted set of documents littered with lawyered-up phrases, like "subject to," "except as permitted by," and "notwithstanding anything to the contrary." Indeed, the Operating Agreement is over 50 pages long with 10 pages of definitions alone. **Ex. 1.**

8.  The Operating Agreement defined the terms for the LLC. The only parties to that agreement were Chef Chloe LLC, an entity wholly owned by Chloe, and ESquared Hospitality LLC. Specifically, Chloe as an individual is not a party to the Operating Agreement, as Judge Furman has already concluded. *Chloe v. ESquared Hospitality LLC*, 364 F. Supp. 3d 207, 218 (S.D.N.Y. 2019) ("reading the two agreements together, the Court is compelled to conclude that Coscarelli is not a 'party' to the Operating Agreement"). Rather, Chloe—as an individual—licensed her "name, face, likeness" through the NFL Agreement. **Ex. 2.** The Operating Agreement provides that any rights the Company ever had to Chloe's name in the "by Chloe" trademark are expressly "subject to the terms and conditions of this Operating Agreement and the NFL License Agreement." **Ex. 1 §4.4(a).** Thus, the terms and conditions of the NFL Agreement and Operating Agreement are essential to any ownership claims the Company has to the By Chloe trademark.

9.  The NFL Agreement is the vehicle for Chloe to provide a limited license for the Company to use her *name*, face, and likeness. The license to her name included "Chloe's full and formal name, nickname or variations of her name. **Ex. 2.**

10. The drafting history over the NFL and Operating Agreements likewise confirm that the NFL Agreement was the vehicle to license rights in "Chloe" to the Company. The NFL Agreement, for instance, provides that Chloe would receive a 1% royalty if the Company ever repurchased Chef Chloe's ownership interests in the Company. **Ex. 2 § 10(a).** The drafting history shows the parties' intent that this provision would compensate Chloe if the Company continued to use Chloe's *name* in the restaurant after she was no longer involved:

- On July 2, 2014, Brad Muro, who was negotiating the agreements on behalf of ESquared, e-mailed Chloe's lawyer, Josh Saviano, and stated, "[t]he idea that at some point a service member could quit or be terminated for cause and continue to receive profit distributions without further obligations is a very sensitive issue for [James Haber] . . . particularly here, where [Chloe] *would immediately start receiving license fees in perpetuity following termination*." **Ex. 3** (emphasis

added)). He also stated that "where [Chloe] is terminated for cause, quits without good reason, dies or becomes disabled . . . [ESquared] can continue opening new restaurants using same concept *so long as they pay the 1% royalty (if interests are repurchased/forfeited) . . . .*" (*Id.* (emphasis added)).

- Following execution of the NFL Agreement, on April 3, 2016, Mr. Muro proposed changes to the parties' various agreements, and, even under these proposed changes, "[n]ote[d] that [BCHG's] right to continue to grow post termination *is still conditioned on [Chloe] either retaining her interests or her receiving a post-termination royalty*." **Ex. 4** (emphasis added)).

- Moreover, on April 11, 2016, Mr. Muro circulated a summary of the parties' contractual relationship, including the NFL Agreement, that specifically notes that "[i]f [Chloe's] interests are repurchased, Chef Chloe *shall be entitled to a royalty equal to 1% of gross sales.*" **Ex. 5** (emphasis added)).

11. This extrinsic evidence confirms her intent that the Operating Agreement would not give the Company unconditional ownership to the "By Chloe Mark." Rather, she intended and understood that any right the Company had to use her name in the "By Chloe Mark" was subject to the NFL Agreement.

12. But Chloe also retained the right to terminate the NFL Agreement—and thus the Company's conditional rights in the By Chloe trademark—if the Company "opposes, petitions to cancel, commences a legal action, or otherwise challenges, objects to or interferes with [Chloe's] ownership, use (or authorized the use by others) or registration of any of the NFL Rights, except that [the Company] may take any action permitted under the Operating Agreement." **Ex. 2 § 8(a)(vi).** Indeed, the Operating Agreement likewise precludes the Company from interfering with Chloe's rights to trademark "Chloe" marks other than the By Chloe Mark.

13. Section 4.4(e) of the Operating Agreement, for instance, provides that the Company may not interfere with Chloe's trademark rights outside "by Chloe":

> In furtherance of the foregoing and except as permitted under Section 4.4(c), [the Company] and ESquared Hospitality on behalf of itself and Permitted Transferees, hereby agrees that they will ***not** oppose, petition to cancel, commence a legal action, or otherwise challenge, object to or interfere with* [Chloe] and [Chef Chloe LLC's] ownership, use (or authorized use by others) or *registration* of any "Chloe" designation other than the By Chloe Mark.

**Ex. 1 § 4.4(e)** (emphasis added).

14. Section 4.4(c) imposes related restrictions focused only on not using the By Chloe Mark:

> Except as permitted under Section 17.9(a)(ii), [Chloe] and [Chef Chloe LLC] shall not use or permit others to use the By Chloe Word Mark or a design mark confusingly similar to the design elements of the By Chloe Design Mark or a design mark confusingly similar to the design elements of the By Chloe Design Mark, except (i) in connection with the Business [defined as fast-casual vegan restaurants], and (ii) in connection with any future cookbooks published by or on behalf of [Chloe] or [Chef Chloe LLC]; provided that the look, feel and placement of any such use of the By Chloe Mark in connection with any such cookbook shall be subject to [the Company's] prior written approval, such approval not to be unreasonably withheld or delayed. Notwithstanding the foregoing, [Chloe] and [Chef Chloe LLC] shall not use or permit others to use a name or mark that includes the By Chloe Mark for a restaurant without the approval of the [Company]. [The Company] and ESquared Hospitality may take any action it deems reasonably necessary to protect the By Chloe Mark if the [Company] and ESquared Hospitality determine *in good faith* that [Chloe] or [Chef Chloe LLC] has violated this Section 4.4(c).

**Ex. 1 §4.4(c)** (emphasis added)

15. In short, Chloe [1] may not use (a) the By Chloe Word Mark,[2] or (b) a design mark confusingly similar to the By Chloe Design Mark[3] with limited exceptions; [2] Chloe may not use the By Chloe Mark for a restaurant without approval; and [3] the Company and ESquared Hospitality may take reasonably necessary actions to protect the By Chloe Mark if they determine in good faith that Chloe violated 1 or 2 above.

**C.    Chloe has litigated with the Company for years over her rights**

---

[2]   The "By Chloe Mark" means the By Chloe Design Mark and the By Chloe Word Mark. **Ex. 1** at 3.

[3]   The "'By Chloe Design Mark' means any logo or other design mark incorporating the By Chloe Word Mark in stylized font and/or color design that is pre-approved by [Chef Chloe LLC], and used in connection with the goods and services of the Business." **Ex. 1** at 3. The "By Chloe Word Mark" means the standard character mark 'BY CHLOE" in connection with the goods and services of the Business." Id. at 3-4.

16. Following the smash opening of by Chloe in 2015, the relationship between Haber and Chloe soured, driven by Haber's degrading and harassing behavior toward Chloe.[4] Haber and his daughter (Samantha Wasser) then conspired to take Chloe's membership interests and pillage her name. In an email exchange, for instance, Haber proclaimed: "We milk till we can't!" When Wasser asked "Milk what?" Haber responded "Her name." **Ex. 6.**

17. The Company and ESquared Hospitality also tried to prevent Chloe from working as a chef with her name. For example, contrary to the clear provisions in the NFL and Operating Agreements, they opposed Chloe's trademark applications for two word marks unrelated to the By Chloe trademark: Chef Chloe and Chloe's Delicious. As a result, Chloe terminated the NFL Agreement in March 2018.

18. The parties have also been involved in arbitrations and litigation since 2016.

19. After the first arbitration, Haber and Wasser tried to repurchase Chef Chloe's 50% membership interest for zero dollars. The Honorable Faith S. Hochberg nullified this sham transaction in her 87-page arbitration decision last year. **Ex. 7** at Appendix A. Yet in the interim, Haber tried to sell Chef Chloe's 50% membership to investors, like Bain Capital and Kitchen Fund in exchange for over $30 million. Even so, no company has ever paid Chloe the 1% royalty due to her when she was denied her membership interest (another basis for Chloe to terminate the NFL Agreement, and in turn any rights to the By Chloe trademark). Both the company and ESquared Hospitality owe Chef Chloe over $2.2 million in attorneys' fees and costs too.

20. In parallel with this arbitration, Chloe proceeded on various claims against the Company and ESquared Hospitality in the SDNY. *Chloe Coscarelli, Chef Chloe, LLC, CC Hospitality Holdings LLC, and CKC Sales, LLC v. Esquared Hospitality LLC and BC*

---

[4] Chloe's summary judgment brief shows examples of this degrading and abusive behavior. The exhibits are so far beyond the pale that the Company insisted Chloe file this material under seal. Chloe will submit an unredacted version of the brief at the Court's request and with consent from the Company.

*Hospitality Group LLC (f/k/a CCSW LLC).*, Case No. 18-CV-5943 (JMF). Relevant here, the parties cross briefed summary judgment motions in February 2020. Those motions included (1) Chloe's motion that the NFL Agreement is terminated, and (2) Chloe's opposition that provides that the Company does not own the By Chloe trademark outright. *See, e.g.*, **Ex. 8 at 9-12; 14-18.**

## Argument

21. This Court grants relief from the automatic stay for "cause." 11 U.S.C. § 362(d)(1). This standard is a "flexible concept" that requires a "case-by-case balancing." *In re SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007).

22. This Court applies a three-prong balancing test to grant relief from the stay:

> 1. Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit.
>
> 2. Whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and
>
> 3. The probability of the creditor prevailing on the merits.
>
> *In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992).

23. The legislative history of Section 362(d)(1) "emphasizes the importance of allowing a case to continue in the original tribunal so long as there is no prejudice to the estate." *In re SCO*, 395 B.R. at 857.

**I.     The Company and the Estates will benefit from a decision on the issues pending in summary judgment motions.**

24. Neither the Company nor the estate will suffer any prejudice if Judge Furman decides two issues in the pending summary judgment motions for two reasons. To the contrary, Judge Furman's resolution of these issues should provide the necessary certainty regarding the assets of the Company and Estates.

25. First, no more briefing is necessary in the SDNY action. The Third Circuit rejected prejudice to the estate in *In re Wilson* when "the parties have already filed briefs on

appeal" so that the appellate court could decide the issue more quickly than the bankruptcy court. 116 F.3d 87, 91 (3rd Cir. 1997). This Court reached a similar conclusion in *In re SCO*. There, the debtor filed bankruptcy on the eve of trial, after both parties spent the necessary time and resources in preparation. 395 B.R. at 858. For that reason, the Court rejected a finding of prejudice. *Id.* Here, the prejudice is even less. While the debtor's management in *SCO* still needed to attend trial, no one at the Company needs to take any more action here. The Court need only allow Judge Furman to rule on the already-briefed motions. And even if Judge Furman denies summary judgment in favor of trial, the parties are in the same position as in *SCO* because the case would be ready for trial—either in the Southern District of New York or here in the District of Delaware.

26.     Second, Judge Furman's rulings will assist—not harm—the Company in this bankruptcy proceeding. In *SCO*, the Court observed that "the Debtors simply cannot file a confirmable plan of reorganization until they know what liability they have to [the Movant]." *Id.* at 859. The same holds true here. The disputed ownership of the By Chloe trademark has to be resolved before this Court can approve a sale. Thus, as the Court determined in *SCO*, "[t]he resolution of the issues remaining in the District Court litigation will assist the Debtors, not burden them." *Id.*

27.     This Court's analysis in *In re Tribune Company* is also instructive. 418 B.R. 116 (Bankr. D. Del. 2009). This proceeding involved disputed rights to Dick Tracy intellectual property rights. The debtors argued that this Court had core jurisdiction to decide whether the Dick Tracy rights were property of the estate. *Id.* at 128. But the Court recognized that the debtors "frame the issue improperly." *Id.* "At bottom, this matter involves a contract interpretation dispute." As a result, the Court found no prejudice "from lifting the stay so that this dispute is resolved in [the district court litigation]." *Id.* The same holds true here. Whether

the Company has any right to ongoing use of Chloe's name through the By Chloe trademark is a contract dispute "subject to the terms and conditions of [the] Operating Agreement and the NFL Agreement."

28.  Nor is this a new dispute. The parties briefed this dispute in the Southern District of New York long before this bankruptcy started. Chloe's counsel identified the dispute as an issue at the First Day Hearing. Counsel for the Debtors and counsel for Chloe have discussed their disagreement over this dispute before informally, and Debtors' counsel indicated he may schedule his own motion to address this dispute with this Court. The Company and Chloe, thus, seem to agree that a court needs to resolve this dispute over trademark ownership before any sale can take place. Chloe submits that Judge Furman—who has presided over this litigation for years now—should resolve this dispute, and so this Court should address Chloe's motion about lifting the stay at the upcoming, previously scheduled Omnibus Hearing (the first hearing after the First and Second Day Hearings).[5]

29.  In sum, the parties have already briefed summary judgment motions over (1) Chloe's termination of the NFL Agreement, and (2) that the Company does not have unconditional ownership over the By Chloe trademark. Judge Furman, who has "specialized knowledge" of this dispute dating to 2018, *see SCO*, 395 B.R. at 859, should decide these issues before the Court can move forward with any sale. The Court approve a sale if it is unclear what is being sold. The Company will suffer no prejudice if Judge Furman decides issues already pending before him.

---

[5] Counsel for Chloe discussed the subject matter of this motion with Debtors' counsel earlier today. Counsel for Chloe remains available to meet and confer with Debtors' counsel after they have an opportunity to review the motion in writing (as requested) and before the Omnibus Hearing on February 3, 2021.

**II.     Chloe will suffer hardship if the Court continues to the stay the SDNY litigation.**

30.     Chloe will suffer hardship if the Court does not lift the stay for the same reasons the Company will not suffer prejudice if the stay is lifted. In *SCO*, for instance, the Court determined that:

> The moving party "will be burdened by further delay and the fact that it will have to prepare again. [The moving party] has already spent significant time and resources preparing for the trial in the Lawsuit. In addition, without a ruling on the Liability Issues, [the moving party's] rights in these bankruptcy cases remains undetermined and the value of [the moving party's] claim will remain a troubling issue for the Court, [the moving party] and Debtors."

*Id.* at 859.

31.     Chloe has pursued her claims in the SDNY since 2018. She litigated—and won—her claims in an arbitration proceeding that the Company insisted on. She fully briefed her motion over why the NFL Agreement is terminated, and why the Operating Agreement does not grant unconditional ownership to the Company. The Company's separate litigation counsel briefed these issues already as well. Forcing Chloe to "prepare again" these issues in this Court would harm and prejudice her. *See, e.g.*, *In re Rexene*, 141 B.R. at 577 ("[T]his Court is of the opinion that to begin this litigation anew in this bankruptcy court would result in more of a hardship to the Movant and would certainly result in a waste of judicial resources.").

**III.    Chloe is likely to prevail on the pending summary judgment issues, which will have profound effect on the planned bankruptcy sale.**

32.     Chloe far surpasses the minimal standard over prevailing on the merits. Indeed, this Court has observed that the "required showing is very slight." *Id.* at 578. In fact, a movant meets this standard if her claim "is not frivolous." *In re Levitz Furniture Inc.*, 267 B.R. 516, 523 (Bankr. D. Del. 200). A prima facie showing of evidence and a contract alone was sufficient in *In re Tribune*. 418 B.R. at 129. Here, Chloe far exceeds this low standard as demonstrated in her summary judgment motion. *See, e.g.,* **Ex. 8 at 9-12; 14-18.**

33. The Company has no credible position that the NFL Agreement remains effective. The Company's opposition to Chloe's trademark applications for "Chef Chloe" and "Chloe's Delicious" violate Section 4.4(c) and (e). And Section 8(a)(vi) of the NFL Agreement provides Chloe the right to terminate the agreement as a result.

34. Nor is the Company's sole argument in opposition over the trademark rights—that Judge Furman denied a preliminary injunction—persuasive.[6] To start, the standards governing the merits versus a preliminary injunction differ greatly. *See, e.g., Louis Vuitton Malletier v. Dooney & Bourke, Inc.,* 561 F. Supp. 2d 368, 382 (S.D.N.Y. 2008). Even so, Judge Furman did not have the parol evidence offered with Chloe's summary judgment motion when he decided the preliminary injunction motion. The issue over Chloe's termination of the NFL Agreement was also not in front of Judge Furman during that early briefing. Thus, a ripe dispute on the merits exists because any potential rights in the By Chloe mark is "subject to the terms and conditions" of the NFL Agreement—and the NFL Agreement is terminated. Put simply, the Company cannot sell what it does not own. Thus, Judge Furman must resolve pending disputes over ownership of the By Chloe mark before the Company can sell the mark as an asset.

## Notice

35. Chloe provided notice of this Motion to: (a) counsel for the Debtors; (b) the Office of the United States Trustee for the District of Delaware; (c) Jami Nimeroff, Subchapter V Trustee; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002. Chloe submits that, in light of the nature of the relief requested, no other or further notice need be given.

---

[6] The Debtor's counsel suggested on a pre-filing call that Judge Hochberg decided this issue in the arbitration. But she did not, as ownership of the By Chloe trademark was not an issue for her to decide in the arbitration: "The dispute presented to the Arbitrator *is **not** about who owns the trademark*; rather, it is about expansion of the use of the trademark beyond fast casual vegan restaurants." *E.g.,* **Ex. 7** at Appendix A at 24 (emphasis added); *see also id.* at 21-22 (listing issues in dispute, and not referencing any issue over ownership of the By Chloe trademark).

**No Prior Request**

36. No prior request for the relief sought in this Motion has been made by the Debtors to this or any other court.

**Conclusion**

Chloe requests the entry of the Proposed Order lifting the automatic stay imposed by section 362(a) of the Bankruptcy Code to allow Chloe to continue the SDNY litigation, so that Judge Furman may resolve the pending summary judgment motions that (1) the NFL Agreement was terminated, and (2) that the Company does not unconditionally own the By Chloe trademark.


Dated: January 20, 2021　　　　　　　　　　Respectfully submitted,
Wilmington, Delaware

　　　　　　　　　　　　　　　　　　　　　*/s/ Mette H. Kurth*
　　　　　　　　　　　　　　　　　　　　　Mette H. Kurth (DE Bar No. 6496)
　　　　　　　　　　　　　　　　　　　　　CULHANE MEADOWS, PLLC
　　　　　　　　　　　　　　　　　　　　　4023 Kennett Pike #165
　　　　　　　　　　　　　　　　　　　　　Wilmington, Delaware 19807
　　　　　　　　　　　　　　　　　　　　　Telephone:(302) 660-8331
　　　　　　　　　　　　　　　　　　　　　Email: mkurth@cm.law

　　　　　　　　　　　　　　　　　　　　　*/s/ Patrick M. Arenz*
　　　　　　　　　　　　　　　　　　　　　Ronald J. Schutz (admitted pro hac vice)
　　　　　　　　　　　　　　　　　　　　　Patrick M. Arenz (admitted pro hac vice)
　　　　　　　　　　　　　　　　　　　　　ROBINS KAPLAN LLP
　　　　　　　　　　　　　　　　　　　　　800 LaSalle Avenue, Suite 2800
　　　　　　　　　　　　　　　　　　　　　Minneapolis, MN 55402
　　　　　　　　　　　　　　　　　　　　　Telephone: (612) 349-8591
　　　　　　　　　　　　　　　　　　　　　rschutz@robinskaplan.com
　　　　　　　　　　　　　　　　　　　　　parenz@robinskaplan.com

　　　　　　　　　　　　　　　　　　　　　Scott F. Gautier (admitted pro hac vice)
　　　　　　　　　　　　　　　　　　　　　2049 Century Park East, Suite 3400
　　　　　　　　　　　　　　　　　　　　　Los Angeles, California 90067
　　　　　　　　　　　　　　　　　　　　　sgautier@robinskaplan.com

　　　　　　　　　　　　　　　　　　　　　*Counsel for Chloe and Chef Chloe LLC*