**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>BC HOSPITALITY GROUP INC., *et al.*,<br><br>Debtors. [1] | Chapter 11 (Subchapter V)<br><br>Case No. 20-13103 (BLS)<br><br>(Jointly Administered) |

## JOINT CHAPTER 11 PLAN OF
## BC HOSPITALITY GROUP INC. AND ITS DEBTOR AFFILIATES

Date: January 21, 2021

YOUNG CONAWAY STARGATT & TAYLOR, LLP
M. Blake Cleary (No. 3614)
Elizabeth S. Justison (No. 5911)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Fax: (302) 571-1253

*Counsel for the Debtors and Debtors in Possession*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: BC Hospitality Group Inc. (8766); BC Hospitality Group LLC (9360); BC International LLC (1356); BC Commissary NJ LLC (0230); E2 185 Bleecker LLC (6862); E2 60 West 22nd Street LLC (9567); E2 Lafayette LLC (7419); BC Williamsburg LLC (8277); BCRC LLC (7297); CW SSS LLC (9958); BC Union Square LLC (5172); BC 1385 Broadway LLC (2138); BC 630 Lexington LLC (3202); CCSW Fenway LLC (5517); E2 Seaport LLC (9720); BC Back Bay LLC (0550); BC Providence LLC (0737); BC Silver Lake LLC (2825); BC Century City LLC (0901); and BC West Hollywood LLC (3878). The Debtors' mailing address is 205 Hudson Street, Suite 1001, New York, New York 10013.

# INTRODUCTION

Capitalized terms used in this chapter 11 plan shall have the meanings set forth in Article I.A.  The Debtors propose this Plan for the resolution of outstanding Claims against, and Interests in, the Debtors.  The Debtors are the proponents of the Plan within the meaning of section 1189(a) of the Bankruptcy Code, and the Plan constitutes a separate plan for each of the Debtors.

**ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE EXHIBITS TO THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN.  IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY FEBRUARY 25, 2021 at 4:00 P.M. (PREVAILING EASTERN TIME).**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY FEBRUARY 25, 2021 (THE "VOTING DEADLINE").**

**THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS OR SUBMITTED THROUGH THE FOLLOWING E-BALLOTING PORTAL:**

**IF MAILED:**

> **If by First Class Mail:**
> **BC Hospitality Group Inc. - Ballot Processing**
> **c/o Epiq Corporate Restructuring, LLC**
> **P.O. Box 4422**
> **Beaverton, OR 97076-4422**
>
> **If by Overnight Courier or Overnight Mail:**
> **BC Hospitality Group Inc. - Ballot Processing**
> **c/o Epiq Corporate Restructuring, LLC**
> **10300 SW Allen Boulevard**
> **Beaverton, OR 97005**

**IF SUBMITTED THROUGH THE E-BALLOTING PORTAL:**

**The Voting Agent, Epiq Corporate Restructuring, LLC, will accept Ballots if properly completed through the E-Balloting Portal. To submit your Ballot via the E-Balloting Portal, visit https://dm.epiq11.com/bychloe, click on the "E-Ballot" section of the Voting Agent's website for the Debtors, and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE: YOU WILL NEED THE UNIQUE E-BALLOT ID ON YOUR BALLOT TO RETRIEVE AND SUBMIT YOUR CUSTOMIZED ELECTRONIC BALLOT.**

The Voting Agent's E-Balloting Portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.

If your Ballot is not received by the Voting Agent on or before the Voting Deadline, and such Voting Deadline is not extended by the Debtors, your vote will not be counted.

A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR MARCH 4, 2021 AT 10:00 A.M. (PREVAILING EASTERN TIME) BEFORE THE HONORABLE BRENDAN LINEHAN SHANNON, IN COURTROOM NO. 1, 824 N. MARKET STREET, 6TH FLOOR, WILMINGTON, DELAWARE 19801.

ARTICLE X.D OF THE PLAN CONTAINS RELEASES BY THE DEBTORS OF ANY AND ALL CLAIMS AGAINST THE "RELEASED PARTIES" AS DEFINED IN THE PLAN.

ARTICLE X.E OF THE PLAN CONTAINS RELEASES BY HOLDERS OF CLAIMS AND INTERESTS OF ANY AND ALL CLAIMS AGAINST THE "RELEASED PARTIES" AS DEFINED IN THE PLAN.

ARTICLE X.F OF THE PLAN CONTAINS AN EXCULPATION BY BOTH THE HOLDERS OF CLAIMS AND INTERESTS AND THE DEBTORS OF ANY AND ALL CLAIMS AGAINST THE "EXCULPATED PARTIES" AS DEFINED IN THE PLAN.

YOUR RIGHTS MAY BE AFFECTED BY THIS PLAN. YOU SHOULD CONSIDER DISCUSSING THIS DOCUMENT WITH AN ATTORNEY.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms*

As used in this Plan, capitalized terms have the meanings set forth below.

1.    *"Administrative Claim"* means a Claim for costs and expenses of administration of the Debtors' Estates pursuant to sections 364(c)(1), 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Allowed Professional Fee Claims; (c) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code; and (d) all DIP Claims.

2.      *"Administrative Claims Bar Date"* means the deadline for Filing requests for payment of Administrative Claims, except as otherwise set forth in the Plan or a Final Order, which shall be thirty (30) days after the Effective Date with respect to all Administrative Claims, including Professional Fee Claims; provided that Filing requests for payment of Administrative Claims is not required where the Plan, the Bankruptcy Code, or a Final Order does not require such Filing.

3.      *"Affiliate"* shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

4.      *"Asset Purchase Agreement"* means one or more asset purchase agreements pursuant to which the Asset Sales are consummated.

5.      *"Asset Sales"* means the sale or sales of all or substantially all of the Debtors' assets under this Plan pursuant to an Asset Purchase Agreement or as otherwise authorized by order of the Bankruptcy Court or the Bankruptcy Code.

6.      *"Asset Sale Restructuring"* means a restructuring under this Plan providing for the Asset Sales.

7.      *"Allowed"* means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim timely Filed by the Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or a Final Order a Proof of Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely filed; or (c) a Claim Allowed pursuant to the Plan, any stipulation approved by the Court, any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan, or a Final Order of the Court; provided that, with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof (including any action to dispute, disallow, deny, equitably subordinate or otherwise limit recovery with respect thereto, or alter the priority thereof) has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Court, or if such an objection is so interposed, such Claim shall have been Allowed by a Final Order.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim or Interest is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes.  A Proof of Claim Filed after the Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim.  "Allow" and "Allowing" shall have correlative meanings.

8.      *"Auction"* means that certain auction held in connection with the Debtors' sale process, which is currently scheduled for March 1, 2021 and may be adjourned from time to time.

9.     *"Avoidance Actions"* means any and all avoidance, recovery, subordination, or other claims, actions, or remedies which any of the Debtors, the debtors in possession, the Estates, or other appropriate parties in interest have asserted or may assert under chapter five of the Bankruptcy Code or under similar or related state or federal statutes and common law.

10.     *"Ballot"* means each of the ballot forms that are distributed to Holders of Claims in Classes that are impaired under the Plan and entitled to vote to accept or reject the Plan.

11.     *"Bankruptcy Code"* means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time, as applicable to the Chapter 11 Cases.

12.     *"Bankruptcy Court"* means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases, and, to the extent of the withdrawal of reference under 28 U.S.C. § 157 and/or the General Order of the District Court pursuant to section 151 of title 28 of the United States Code, the United States District Court for the District of Delaware.

13.     *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, each as amended from time to time.

14.     *"Bar Date"* means February 12, 2021 for parties other than Governmental Units and June 14, 2021 solely for Governmental Units.

15.     *"BCHG"* means BC Hospitality Group Inc.

16.     *"BCHG LLC"* means BC Hospitality Group LLC.

17.     *"Business Day"* means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

18.     *"Cash"* means the legal tender of the United States of America or the equivalent thereof.

19.     *"Causes of Action"* means any claims, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, in tort, law, equity, or otherwise.  Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code.

20.     *"Chapter 11 Cases"* means, when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court,

and when used with reference to all of the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

21.     *"Claim"* means a claim, as defined in section 101(5) of the Bankruptcy Code, asserted against any Debtor.

22.     *"Claims Objection Bar Date"* means the deadline for objecting to a Claim, which shall be on the date that is the later of (a) 90 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by the Debtors or the Reorganized Debtors, as applicable, or by an order of the Bankruptcy Court for objecting to Claims.

23.     *"Claims Register"* means the official register of Claims maintained by Epiq Corporate Restructuring, LLC.

24.     *"Class"* means a category of Claims or Interests under section 1122(a) of the Bankruptcy Code.

25.     *"Confirmation"* means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

26.     *"Confirmation Date"* means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

27.     *"Confirmation Hearing"* means the hearing held by the Bankruptcy Court, if any, to consider Confirmation of the Plan pursuant to sections 1129 and 1191 of the Bankruptcy Code.

28.     *"Confirmation Order"* means an order of the Bankruptcy Court confirming the Plan pursuant to sections 1129 and 1191 of the Bankruptcy Code, which order shall be consistent with the Case Milestones (as defined in the DIP Term Sheet), as modified by the DIP Orders.

29.     *"Consummation"* means the occurrence of the Effective Date.

30.     *"Cure Claim"* means a monetary Claim based upon a Debtor's defaults under any Executory Contract or Unexpired Lease to be assumed under the Plan by such Debtor pursuant to section 365 of the Bankruptcy Code and calculated in accordance with the terms herein.

31.     *"Cure Notice"* means a notice, to be filed at least 21 days before the Confirmation Hearing, of a proposed amount to be paid on account of a Cure Claim in connection with an Executory Contract or Unexpired Lease to be assumed under the Plan pursuant to section 365 of the Bankruptcy Code, which notice shall include:  (a) procedures for objecting to the proposed assumption of Executory Contracts and Unexpired Leases in accordance with the Plan; (b) Cure Claims to be paid in connection therewith; and (c) procedures for resolution by the Bankruptcy Court of any related dispute in accordance with the Plan.

32.     *"Cure/Assumption Objection Deadline"* means the date that is 14 days after filing and service of the Cure Notice; provided that if any Executory Contract or Unexpired Lease is

added to the Schedule of Assumed Executory Contracts and Unexpired Leases after the filing of the initial Schedule of Assumed Executory Contracts and Unexpired Leases, or an Executory Contract or Unexpired Lease proposed to be assumed by the Debtors or Reorganized Debtors is proposed to be assigned to a third party after the filing of the initial Schedule of Assumed Executory Contracts and Unexpired Leases, then the Cure/Assumption Objection Deadline with respect to such Executory Contract or Unexpired Lease shall be the earlier of (a) 14 days after service of the amended Cure Notice reflecting such additions to the Schedule of Assumed Executory Contracts and Unexpired Leases and (b) the date of the scheduled Confirmation Hearing.

33.    *"D&O Liability Insurance Policies"* means all insurance policies (including any "tail policy") of any of the Debtors for liability of any current or former directors, managers, officers, and members.

34.    *"Debtors"* means, collectively, each of the following:  BC Hospitality Group Inc.; BC Hospitality Group LLC; BC International LLC; BC Commissary NJ LLC; E2 185 Bleecker LLC; E2 60 West 22nd Street LLC; E2 Lafayette LLC; BC Williamsburg LLC; BCRC LLC; CW SSS LLC; BC Union Square LLC; BC 1385 Broadway LLC; BC 630 Lexington LLC; CCSW Fenway LLC; E2 Seaport LLC; BC Back Bay LLC; BC Providence LLC; BC Silver Lake LLC; BC Century City LLC; and BC West Hollywood LLC.

35.    *"DIP Claim"* means any Claim against any of the Debtors arising under the DIP Facility or the DIP Orders, including Claims for all principal amounts outstanding, interest, fees, expenses (including the reasonable and documented expenses of counsel as set forth in the DIP Loan Documents and the DIP Orders), costs, and other charges and obligations.

36.    *"DIP Facility"* has the meaning set forth in the DIP Orders.

37.    *"DIP Lenders"* means, collectively, Bain Capital Double Impact Fund, LP, BCIP Double Impact Associates, L.P., Kitchen Fund, LP, KF-Chloe, LLC, Qoot International UK Limited, Lion/BC LLC, and Collab+Consumer I, L.P., solely in their capacity as lenders under the DIP Facility and not in their capacity as equity investors in the Debtors.

38.    *"DIP Loan Documents"* has the meaning set forth in the DIP Orders.

39.    *"DIP Orders"* means, collectively, the interim and final orders entered by the Bankruptcy Court [Docket Nos. 35 and 103, respectively] authorizing the Debtors to enter into the DIP Term Sheet and incur postpetition obligations thereunder.

40.    *"DIP Term Sheet"* means that certain DIP Facility Term Sheet, dated as of December 15, 2020, by and among the Debtors and the DIP Lenders, as it may be amended, restated, supplemented, or otherwise modified from time to time.

41.    *"Disallowed"* means, with respect to any Claim, a Claim or any portion thereof that:  (a) has been disallowed by a Final Order; (b) is listed in the Schedules as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court

pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or the Plan; (c) is not listed in the Schedules and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or the Plan; (d) has been withdrawn by agreement of the applicable Debtor and the Holder thereof; or (e) has been withdrawn by the Holder thereof.

42.    *"Disbursing Agent"* means the Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable, or the Entity or Entities selected by the Debtors, the Reorganized Debtors, or the Plan Administrator to make or facilitate distributions contemplated under the Plan.

43.    *"Disputed"* means a Claim that is not yet Allowed.

44.    *"Distribution Record Date"* means the date for determining which Holders of Allowed Claims or Allowed Interests are eligible to receive distributions hereunder, which shall be (a) the Confirmation Date or (b) such other date as designated in a Final Order of the Bankruptcy Court.

45.    *"Distribution Reserve"* means Cash from the Plan Administrator or Reorganized Debtors, as applicable, in an amount equal to the distribution or distributions under applicable classes of Claims that shall be made on account of Disputed Claims when allowed, which Cash will be held by the Plan Administrator or Reorganized Debtors, as applicable, pending allowance of Disputed Claims, and then distributed on account of Allowed Claims in accordance with the Plan.

46.    *"Effective Date"* means, with respect to the Plan, the date that is a Business Day selected by the Debtors on which: (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in Article XI.A hereof have been satisfied or waived (in accordance with Article XI.B hereof); and (c) the Plan is declared effective.

47.    *"Entity"* shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

48.    *"Equitization Restructuring"* means the transactions and reorganization contemplated by, and pursuant to, this Plan under which the New BCHG Interests are distributed, among other things.

49.    *"Estate"* means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

50.    *"Exculpated Parties"* means, collectively, and in each case in its capacity as such, (a) the Debtors, (b) the Reorganized Debtors, (c) the Subchapter V Trustee, and (d) with respect to each of the foregoing Entities in clauses (a) and (b), each of their respective predecessors, successors and assigns, and current and former stockholders, members, limited partners, general partners, equity holders, Affiliates and its and their subsidiaries, principals, partners, parents, equity holders, members, employees, agents, officers, directors, managers, trustees, professionals,

representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants.

51. *"Executory Contract"* means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

52. *"Existing Interests"* means all existing Interests (other than Intercompany Interests) in each of the Debtors that are outstanding immediately prior to the Effective Date.

53. *"Federal Judgment Rate"* means the federal judgment rate in effect as of the Petition Date, compounded annually.

54. *"File," "Filed,"* or *"Filing"* means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the submission of a Proof of Claim or proof of Interest, Epiq Corporate Restructuring, LLC.

55. *"Final Order"* means: (a) an order or judgment of the Bankruptcy Court, as entered on the docket in any Chapter 11 Case (or any related adversary proceeding or contested matter) or the docket of any other court of competent jurisdiction; or (b) an order or judgment of any other court having jurisdiction over any appeal from (or petition seeking certiorari or other review of) any order or judgment entered by the Bankruptcy Court (or any other court of competent jurisdiction, including in an appeal taken) in the Chapter 11 Cases (or in any related adversary proceeding or contested matter), in each case that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; provided that the possibility a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules may be filed relating to such order shall not prevent such order from being a Final Order.

56. *"General Unsecured Claim"* means any Claim other than: (a) an Administrative Claim; (b) an Other Secured Claim; (c) a Priority Tax Claim; (d) an Other Priority Claim; (e) an Intercompany Claim; (f) a DIP Claim; (g) a Section 510(b) Claim; (h) a Professional Fee Claim; or (i) a Claim that is an assumed liability under the Asset Purchase Agreement or Plan Sponsor Agreement.

57. *"Governmental Unit"* shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

58. *"GUC Sale Proceeds"* means, upon either an Asset Sale Restructuring or Equitization Restructuring having occurred, all Cash to be paid to the Debtors under the terms of the Plan Sponsor Agreement or Asset Purchase Agreement after payment of the DIP Claims,

Administrative Claims, Allowed Priority Claims, Allowed Other Secured Claim, the Professional Fee Claims, and the Wind-Down Amount, if any.

59.      *"GUC Distribution Amount"* means the GUC Sale Proceeds, if any, to be distributed under the Plan to holders of Claims in Class 3.

60.      *"Holder"* means an Entity holding a Claim or Interest, as applicable.

61.      *"Impaired"* means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

62.      *"Intercompany Claim"* means any Claim held by a Debtor or a Debtor's Affiliate against a Debtor.

63.      *"Intercompany Interest"* means, other than an Interest in BCHG, an Interest in one Debtor held by another Debtor.

64.      *"Interest"* means any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor.

65.      *"Interim Compensation Order"* means the order of the Bankruptcy Court [Docket No. 84] establishing procedures for interim compensation and reimbursement of expenses for professionals.

66.      *"Judicial Code"* means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as amended from time to time, as applicable to the Chapter 11 Cases.

67.      *"Lien"* shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

68.      *"New Boards"* means, if an Equitization Restructuring occurs, the initial board of directors, members, or managers, as applicable, of each Reorganized Debtor.

69.      *"New Organizational Documents"* means, if an Equitization Restructuring occurs, the form of the certificates or articles of incorporation, bylaws, or such other applicable formation documents of each of the Reorganized Debtors, which shall be in form and substance acceptable to the Plan Sponsor and included in the Plan Supplement, if applicable.

70.      *"New BCHG Interests"* means, if an Equitization Restructuring occurs, interests in Reorganized BCHG.

71.      *"New Stockholders' Agreement"* means, if an Equitization Restructuring occurs, the agreement with respect to the New BCHG Interests, which shall be in form and substance acceptable to the Plan Sponsor and shall be included in the Plan Supplement, if applicable.

72.      *"Other Priority Claim"* means any Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than: (a) an Administrative Claim; or (b) a Priority Tax Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases.

27437196.15

73.     *"Other Secured Claim"* means any Secured Claim other than the DIP Claims.

74.     *"Person"* shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

75.     *"Petition Date"* means December 14, 2020, the date on which the Debtors commenced the Chapter 11 Cases.

76.     *"Plan"* means this plan, as it may be amended or supplemented from time to time, including all exhibits, schedules, supplements, appendices, annexes, and attachments thereto.

77.     *"Plan Administrator"* means the person selected by the Debtors to administer the Plan Administrator Assets if the Asset Sale Restructuring has occurred, who shall be reasonably acceptable to the DIP Lenders.  All costs, liabilities, and expenses reasonably incurred by the Plan Administrator, and any personnel employed by the Plan Administrator in the performance of the Plan Administrator's duties, shall be paid from the Plan Administrator Assets.

78.     *"Plan Administrator Assets"* means, if the Asset Sale Restructuring has occurred, on the Effective Date, all proceeds of the Asset Sales and all other assets of the Estates vested in the Reorganized Debtors to be administered by Plan Administrator, and, thereafter, all assets held from time to time by Reorganized Debtors to be administered by Plan Administrator.

79.     *"Plan Sponsor"* means, collectively, one or more sponsors or other financial institutions providing the Plan Sponsor Investment.

80.     "*Plan Sponsor Agreement*" means that certain plan sponsor agreement, by and among each of the Debtors and the Plan Sponsor governing the Equitization Restructuring.

81.     "*Plan Sponsor Investment*" means the investment, if any, by the Plan Sponsor under the Plan Sponsor Agreement to implement the Equitization Restructuring.

82.     *"Plan Supplement"* means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed by the Debtors no later than 14 days before the Confirmation Hearing or as otherwise provided in the Solicitation Procedures Order, and additional documents Filed with the Bankruptcy Court before the Effective Date as amendments to the Plan Supplement.  If an Equitization Restructuring occurs, the Plan Supplement shall include the following documents, all in form and substance acceptable to the Plan Sponsor: (a) New Organizational Documents; (b) Schedule of Assumed Executory Contracts and Unexpired Leases; (c) Schedule of Rejected Executory Contracts and Unexpired Leases; (d) Retained Causes of Action List; (e) New Stockholders' Agreement, if any; (f) Plan Sponsor Agreement, if any; (g) a document listing the members of the New Boards and the officers of the Reorganized Debtors, if any; and (h) any and all other documentation necessary to effectuate the Restructuring Transactions or that is contemplated by the Plan.  If an Asset Sale Restructuring occurs, the Plan Supplement shall include the following documents, all in form and substance acceptable to the Purchaser: (a) Schedule of Assumed Executory Contracts and Unexpired Leases; (b) Schedule of Rejected Executory Contracts and Unexpired Leases; (c) Retained Causes of Action List; (d) Asset Purchase Agreement; (e) the identity of the Plan Administrator and the compensation of the Plan

Administrator, if any; (f) the Wind-Down Amount; and (g) any and all other documentation necessary to effectuate the Restructuring Transactions or that is contemplated by the Plan. The Debtors shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date in accordance with Article XII of the Plan.

83.     *"Priority Claims"* means, collectively, Priority Tax Claims and Other Priority Claims.

84.     *"Priority Tax Claim"* means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

85.     *"Pro Rata"* means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

86.     *"Professional"* means an Entity employed pursuant to a Bankruptcy Court order and to be compensated for services rendered before or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code. For the avoidance of doubt, the Subchapter V Trustee shall be considered a Professional for purposes of this Plan.

87.     *"Professional Fee Claims"* means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Confirmation Date to the extent such fees and expenses have not been previously paid.

88.     *"Professional Fee Escrow Account"* means an interest-bearing account in an amount equal to the total Professional Fee Reserve Amount funded by the Reorganized Debtors on the Effective Date.

89.     *"Professional Fee Reserve Amount"* means the aggregate amount of Professional Fee Claims that the Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Effective Date, which estimates Professionals shall deliver to the Debtors as set forth in Article III.B of this Plan.

90.     *"Proof of Claim"* means a proof of Claim Filed in the Chapter 11 Cases.

91.     *"Purchaser"* means the purchaser under the Asset Purchase Agreement, together with its successors and permitted assigns (including any and all of its wholly-owned Affiliates to which it assigns any of its rights or obligations under the Asset Purchase Agreement).

92.     *"Reinstated"* or *"Reinstatement"* means, with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

93.     *"Released Party"* means each of the following in their capacity as such: (a) the Debtors and the Reorganized Debtors; (b) the Debtors' current and former officers, directors, and managers; (c) the DIP Lenders; (d) the Sale Parties; and (e) with respect to each of the foregoing

Entities described in clauses (a) through (d), such Entities' respective predecessors, successors and assigns, and current and former stockholders, members, limited partners, general partners, equity holders, Affiliates and its and their subsidiaries, principals, partners, parents, equity holders, members, employees, agents, officers, directors, managers, trustees, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants, in each case solely in their capacity as such; *provided* that any Holder of a Claim or Interest that elects to "opt out" of granting the Plan's third-party releases by either opting out of such release or timely objecting to the Plan's third-party release provisions shall not be a "Released Party."[2]

94.    *"Releasing Party"* means, collectively, and in each case solely in its capacity as such: (a) the Debtors and the Reorganized Debtors; (b) the DIP Lenders; (c) each Holder of a Claim or Interest entitled to vote to accept or reject the Plan that (i) votes to accept the Plan or (ii) votes to reject the Plan or does not vote to accept or reject the Plan but does not affirmatively elect to "opt out" of granting the Plan's third-party releases by either opting out of such release or timely objecting to the Plan's third-party release provisions; (d) each Holder of a Claim or Interest that is Unimpaired and presumed to accept the Plan; (e) each Holder of a Claim or Interest that is deemed to reject the Plan that does not affirmatively elect to "opt out" of granting the Plan's third-party releases by timely objecting to the Plan's third-party release provisions; and (f) with respect each of the foregoing Entities described in clauses (a) through (e), such Entities' current and former affiliates, and such entities' and such affiliates' partners, subsidiaries, predecessors, current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), members, officers, principals, employees, agents, managed accounts or funds, advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, together with their respective successors and assigns; *provided* that any holder of a Claim or Interest that is deemed to have granted a third party release in the Confirmation Order shall be deemed a "Releasing Party" regardless of whether such holder elected to opt out of or object to the third party releases.

95.    *"Reorganized BCHG"* means either: (a) BCHG, or any successor thereto, as reorganized pursuant to and under the Plan; or (b) a new corporation or limited liability company designated by the Debtors to, among other things, directly or indirectly acquire substantially all of the assets and/or stock of the Debtors and issue the New BCHG Interests to be distributed or sold pursuant to the Plan, or any other successor to the forgoing, including the Plan Sponsor.

96.    *"Reorganized BCHG Board"* means the New Board of Reorganized BCHG on and after the Effective Date.

97.    *"Reorganized Debtors"* means the Debtors, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date, including Reorganized BCHG.

98.    *"Restructuring"* means the restructuring of the Debtors pursuant to the terms of the Plan.

---

[2]    The definition of Released Parties set forth herein is subject to change. The Debtors intend to file an amended version of the Plan and reserve their right to amend or supplement the definition of Released Parties.

99.    *"Restructuring Documents"* means the Plan, Plan Supplement, and the various agreements and other documents formalizing or implementing the Plan and the transactions contemplated thereunder.

100.    *"Restructuring Transactions"* means those mergers, amalgamations, consolidations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that the Debtors reasonably determine to be necessary to implement the Restructuring, as described in more detail in Article V.B herein.

101.    *"Retained Causes of Action List"* means a list of all retained Claims and Causes of Action belonging to the Debtors that are not waived, relinquished, exculpated, released, compromised, transferred, or settled pursuant to the Plan or a Final Order of the Bankruptcy Court, as the same may be amended, modified, or supplemented from time to time by the Debtors; provided, that the Retained Causes of Action List shall not include any Causes of Action against any Released Party. The Debtors shall include the Retained Causes of Action List in the Plan Supplement.

102.    *"Sale Parties"* means (a) the Debtors, (b) the Plan Sponsor or Purchaser, as applicable, and (c) with respect to each of the foregoing Entities described in clauses (a) and (b), each of their respective current and former officers, directors, members, managers, principals, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals. For the avoidance of doubt, the DIP Lenders shall be "Sale Parties" to the extent the DIP Lenders agree to credit bid or equitize all or a portion of the DIP Claims in connection with the applicable transaction.

103.    *"Schedule of Assumed Executory Contracts and Unexpired Leases"* means the schedule (including any amendments or modifications thereto), if any, of the Executory Contracts and Unexpired Leases to be assumed or assumed and assigned by the Debtors or the Reorganized Debtors, as applicable, pursuant to the Plan, as set forth in the Plan Supplement, as amended by the Debtors from time to time in accordance with the Plan, which shall be in form and substance acceptable to the Debtors. The initial version of the Schedule of Assumed Executory Contracts and Unexpired Leases filed with the Plan Supplement shall include Executory Contracts and Unexpired Leases that may be assumed or assumed and assigned. The Debtors shall file a final version of the Schedule of Assumed Executory Contracts and Unexpired Leases following the Auction listing the Executory Contracts and Unexpired Leases that will be assumed or assumed and assigned, which Schedule may be modified until the Effective Date or as otherwise set forth in the Plan.

104.    *"Schedule of Rejected Executory Contracts and Unexpired Leases"* means the schedule (including any amendments or modifications thereto), if any, of the Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan, as set forth in the Plan Supplement, as amended by the Debtors from time to time in accordance with the Plan, which shall be in form and substance acceptable to the Debtors. The Debtors shall file a final version of the Schedule of Rejected Executory Contracts and Unexpired Leases following the Auction listing the Executory Contracts and Unexpired Leases that will be rejected, which Schedule may be modified until the Effective Date or as otherwise set forth in the Plan.

105.    *"Schedules"* means, collectively, the schedules of assets and liabilities and statements of financial affairs Filed by the Debtors in the Chapter 11 Cases, as the same may have been amended, modified, or supplemented from time to time.

106.    *"Section 510(b) Claim"* means any Claim subject to subordination under section 510(b) of the Bankruptcy Code.

107.    *"Secured"* means, when referring to a Claim: (a) secured by a Lien on property in which any of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the applicable Holder's interest in the applicable Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan, or separate order of the Bankruptcy Court, as a secured claim.

108.    *"Securities Act"* means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, together with the rules and regulations promulgated thereunder, as amended from time to time.

109.    *"Securities Exchange Act"* means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78nn, as amended from time to time.

110.    *"Security"* means a security as defined in section 2(a)(1) of the Securities Act.

111.    *"Solicitation Procedures Order"* means that certain order [Docket No. __] scheduling the Confirmation Hearing and establishing procedures for the solicitation and tabulation of votes on the Plan.

112.    *"Subchapter V Trustee"* means the standing trustee appointed in the Chapter 11 Cases pursuant to Subchapter V of the Bankruptcy Code.

113.    *"Unexpired Lease"* means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

114.    *"Unimpaired"* means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that are unimpaired within the meaning of section 1124 of the Bankruptcy Code, including through payment in full in Cash.

115.    *"Voting Agent"* means Epiq Corporate Restructuring, LLC.

116.    "Wind Down" means the wind down and dissolution of the Debtors' Estates following the Effective Date.

117.    "Wind-Down Amount" means Cash in an amount to be determined by the Debtors, which amount shall be funded by the Debtors and used by the Plan Administrator to fund the Wind Down.  The Wind-Down Amount shall be disclosed in the Plan Supplement.

118.    *"Wind-Down Reserve"* means a segregated account established by the Plan Administrator established in accordance with Article VII.F.

B.    *Rules of Interpretation*

For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (13) any immaterial effectuating provisions may be interpreted by the Debtors, the Reorganized Debtors, or the Plan Administrator in such a manner that is consistent with the overall purpose and intent of the Plan, all without further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity; and (14) except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

C.    *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

27437196.15

D.      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or Reorganized Debtor, as applicable.

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Controlling Document*

In the event of an inconsistency between the Plan and any document included in the Plan Supplement, the terms of the relevant provision in the Plan shall control (unless stated otherwise in such document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

G.      *Nonconsolidated Plan*

Although for purposes of administrative convenience and efficiency the Plan has been filed as a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors.

## ARTICLE II.
## HISTORY OF THE DEBTORS' BUSINESS OPERATIONS
## PURSUANT TO SECTION 1190(1) OF THE BANKRUTPCY CODE

A.      *Background and History of the Debtors*

1.      *General Background*

The Debtors operate a fast-casual, 100% vegan, and plant-based restaurant chain under the "by CHLOE." trade name.  The first "by CHLOE." restaurant was opened in July of 2015 in the West Village of New York City.  It offers an expansive, entirely plant-based menu featuring seasonal salads and soups, house-made burgers and sandwiches, fresh pastas, cold-pressed juices, vegan ice cream, freshly baked sweets, and more.  The restaurant's diverse and delicious menu was an instant hit and it opened to a line down the block.  It quickly became known for providing

27437196.15

fresh, fast, and affordable vegan fare and was named 2015's most surprising restaurant success story by Grub Street Magazine.[3]

Due to its immense popularity, the chain rapidly expanded. Prior to the pandemic, the Debtors operated fourteen restaurants located in New York City, Boston, Los Angeles, and Providence and construction plans were in the initial stages for two additional restaurants. The Debtors also issued licenses to certain third parties who operate by CHLOE. restaurants in Toronto and London.

Despite its quick growth, the chain maintained a reputation for providing a uniquely indulgent, feel-good food experience. In addition to offering a critically-acclaimed menu, the Debtors' restaurants are environmentally-friendly and support local communities. Most of the restaurants' to-go packaging is recyclable and/or compostable and most of its locations are cash-free to reduce its carbon footprint. The Debtors participate in various charitable programs including, among others, the national program "Support + Feed," which provides meals to hospitals, first responders, senior centers, homeless shelters, and women's centers across New York City and Los Angeles.

2.      *Events Prior to Filing of Chapter 11 Cases*

In late February and early March of 2020, the onset of the COVID-19 pandemic occurred and is continuing, which has severely disrupted the Debtors' business operations. In an effort to fight the public health crisis caused by the COVID-19 outbreak and to comply with the business closure and restriction mandates imposed by governmental authorities in the states where the Debtors operate, the Debtors were required to cease or modify their normal business operations.

Three of the Debtors' restaurant locations have been entirely closed since late March and the remaining restaurant locations are operating at a reduced capacity. As a result, the Debtors were forced to furlough or lay off over 50% of their employees and the Debtors' monthly revenue has decreased by approximately 67% since February 2020. The cessation of normal business operations has deprived the Debtors of vital cash flow, without which the Debtors are incapable of meeting their obligations in the ordinary course, including obligations to employees, landlords, vendors, suppliers, and other creditors and claimants. As a result, the Debtors were forced to reassess the viability of their previously successful business and their near-term survival.

Given the deteriorating financial and cash position of the Debtors, it became apparent that a bankruptcy or other insolvency process was needed. In light of his extensive bankruptcy expertise, on November 16, 2020, the Board of BCHG appointed Mr. Patrick J. Bartels, Jr. to serve as an independent director of the Company. Contemporaneously therewith, and recognizing that a potential source for additional funding was from certain of the Debtors' existing equity investors (such investors, the "Investor Group"), the designee of the Investor Group who had previously served as a director of BCHG agreed to resign from the board of directors. Shortly thereafter, the

---

[3]    Sierra Tishgart, *Why By Chloe is 2015's Most Surprising Restaurant Success Story*, Grub Street (Dec. 3, 2015), https://www.grubstreet.com/2015/12/behind-by-chloe-success.html.

Company retained Young Conaway Stargatt & Taylor, LLP as its bankruptcy counsel and Ankura Consulting Group, LLC as its financial and restructuring advisor and asset sale advisor.

On December 7, 2020, the Board of Directors of BCHG formed a committee independent of the Board (the "Restructuring Committee") to independently evaluate the Debtors' capital structure, negotiate financing and other strategic alternatives to address the Debtors' ongoing liquidity issues, and make decisions with respect to certain designated restructuring matters and appointed Mr. Bartels as the sole member of the Restructuring Committee.  Among other things, the Board authorized the Restructuring Committee to direct the commencement of the Chapter 11 Cases, if appropriate.

The Restructuring Committee authorized the Debtors' advisors to initiate the process of securing debtor-in-possession financing to fund a potential chapter 11 filing and facilitate the Debtors' sale process.  The Debtors' professionals promptly reached out to the Investor Group to determine their interest in providing financing.  Ultimately, the Investor Group offered to provide the Debtors with a DIP facility to support the Debtors' sale process within the context of a chapter 11 proceeding.  Following an extensive, multi-track negotiation process, the Restructuring Committee determined that the terms proposed by the Investor Group provided the most beneficial DIP financing to the Debtors and determined to commence the Chapter 11 Cases.

3.      *Capital Structure*

As of the Petition Date, the Debtors' capital structure, on a consolidated basis, consisted of (i) secured debt of approximately $25,000 in connection with Debtor BC Commissary NJ LLC's vehicle lease, (ii) unsecured trade debt of approximately $2.8 million in connection with amounts owed to trade vendors and landlords, among other things, and (iii) other potential non-contingent unsecured debt of approximately $250,000 in connection with accrued payroll, gift card liability, and other things.[4]

Following the Petition Date, the Bankruptcy Court entered the DIP Orders authorizing the Debtors to obtain postpetition financing pursuant to the DIP Facility in the aggregate amount of $3.25 million, which financing is secured by first priority liens on all of the Debtors' unencumbered property and junior liens on the Debtors' encumbered property.

4.      *Corporate Ownership*

BCHG is the direct or indirect parent of each of the other Debtors.  BCHG owns 100% of the interests in BCHG LLC, which itself owns (a) 100% of the interests in Debtors BC International LLC, BC Commissary NJ LLC, E2 185 Bleecker LLC, BC Williamsburg LLC, BCRC LLC, CW SSS LLC, BC Union Square LLC, BC 1385 Broadway LLC, BC 630 Lexington LLC, CCSW Fenway LLC, BC Back Bay LLC, BC Providence LLC, BC Silver Lake LLC, BC Century City LLC, and BC West Hollywood LLC, (b) 100% of the interests in certain dormant

---

[4]     The Debtors previously obtained a Payment Protection Program loan (the "PPP Loan") in the amount of $2.673 million.  The Debtors have already properly deployed the proceeds of the PPP Loan in accordance with applicable guidelines and regulations and have already submitted an application for forgiveness of the PPP Loan and expect it to be fully forgiven.

non-debtor entities, including BC Showfields LLC and BC Frozen Desserts LLC, and (c) 100% of the Class A interests in E2 60 West 22nd Street LLC, E2 Lafayette, and E2 Seaport LLC (collectively, the "EB-5 Debtors").  Certain foreign investors own 100% of the Class B interests in the EB-5 Debtors as part of the EB-5 Immigrant Investor Program administered by U.S. Citizenship and Immigration Services.

As of the Petition Date, the equity holders of BCHG and their respective percentage equity interest are as follows:

| Entity | Ownership Interest | | |
|---|---|---|---|
| Bain Capital Double Impact Fund, LP ("Bain Capital") | Common Stock: | - | |
| | Series A Preferred Stock: | 1,954,361 (45.21%) | shares |
| BCIP Double Impact Associates, L.P. | Common Stock: | - | |
| | Series A Preferred Stock: | 207,703 (4.80%) | shares |
| Kitchen Fund, LP ("Kitchen Fund") | Common Stock: | - | |
| | Series A Preferred Stock: | 300,120 (6.94%) | shares |
| KF-Chloe, LLC | Common Stock: | - | |
| | Series A Preferred Stock: | 402,160 (9.30%) | shares |
| Qoot International UK Limited | Common Stock: | - | |
| | Series A Preferred Stock: | 360,144 (8.33%) | shares |
| Lion/BC LLC | Common Stock: | - | |
| | Series A Preferred Stock: | 420,168 (9.72%) | shares |

27437196.15

| | | |
|---|---|---|
| Collab+Consumer I, L.P. | Common Stock: | - |
| | Series A Preferred Stock: | 78,031        shares (1.81%) |
| Samantha Wasser | Common Stock: | 30,000        shares (1.00%) |
| | Series A Preferred Stock: | - |
| ESquared Hospitality LLC ("ESquared") | Common Stock: | 2,970,000    shares (99.00%) |
| | Series A Preferred Stock: | 600,240      shares (13.89%) |
| | **Total shares of Common Stock:** | **3,000,000** |
| | **Total shares of Series A Preferred Stock:** | **4,322,927** |

5.    *Litigation with Chef Chloe LLC*

Over the past few years, the Debtors have been engaged in various litigation with its former co-owner, Ms. Chloe Coscarelli.  Ms. Coscarelli's company, Chef Chloe LLC ("Chef Chloe"), previously owned a 50% membership interest in BCHG LLC when it was initially formed under the name CCSW LLC.  At that time, ESquared owned the other 50% membership interest in CCSW LLC.  Chef Chloe was designated as the sole Service Member under the operating agreement for CCSW LLC and had various duties, including developing the concept and recipes for "by CHLOE." restaurants and consulting on other aspects of the restaurant such as décor, publicity, and location selection.

The relationship between the parties soured and, on March 21, 2017, an arbitrator issued a final award declaring that Chef Chloe was terminated for cause as the Service Member of CCSW LLC.  The following day, CCSW LLC, acting through its manager ESquared, exercised its rights under the operating agreement to repurchase Chef Chloe's 50% membership interest in CCSW LLC.  ESquared then amended CCSW LLC's operating agreement to grant a 1% membership interest to Ms. Samantha Wasser and to remove certain consent rights previously held by Chef Chloe.  On September 18, 2017, the name of CCSW LLC was changed to BC Hospitality Group LLC.

Following its falling out with Chef Chloe, ESquared explored investment opportunities with outside investors.  Ultimately, the Investor Group invested $31 million in two tranches that closed in January 2018 and January 2019.  The Investor Group, led by Bain Capital and Kitchen Fund, is comprised of some of the strongest leaders in the global restaurant space with experience in fine dining, fast casual, specialized investment, and international scaling.  Accordingly, the

investment positioned the Debtors to expand locations both domestically and internationally, increase their social objectives, and strengthen operations and marketing initiatives.

To effectuate these transactions, Debtor BCHG was formed.  ESquared and Ms. Wasser contributed 100% of the membership interests in BCHG LLC to BCHG in exchange for 3 million shares of common stock in BCHG.  The Investor Group was issued 3,722,687 shares of preferred stock in BCHG.  Finally, ESquared received 600,240 shares of preferred stock in BCHG as partial repayment of a loan ESquared had made to BCHG LLC.  These transactions resulted in BCHG's current ownership structure, as set forth above.

On June 29, 2018, Ms. Coscarelli, Chef Chloe, CC Hospitality Holdings LLC, and CKC Sales LLC commenced an action (the "Chef Chloe Action") against ESquared and BCHG LLC in the United States District Court for the Southern District of New York (the "NY Federal District Court"), Case No. 18-cv-5943 (JMF), seeking, among other things, a declaratory judgment that Chef Chloe still owned 50% of the membership interests in BCHG LLC.  Judge Furman of the NY Federal District Court determined that Chef Chloe was required to submit this claim, among others, to arbitration.

Accordingly, on March 12, 2019, Chef Chloe served a demand for arbitration on ESquared and BCHG LLC seeking, among other things, a declaratory judgment that Chef Chloe owned 50% of the membership interests in BCHG LLC.  On May 13, 2020, the arbitrator issued a partial final award that, if confirmed by the NY Federal District Court, would reinstate Chef Chloe's membership interests in BCHG LLC, among other things.  Furthermore, on September 3, 2020, the arbitrator issued a complete final award that, if confirmed by the NY Federal District Court, would award Chef Chloe attorneys' fees and costs totaling $2,265,838.60.

The arbitrator's awards — reinstating Chef Chloe's membership interests in BCHG LLC and awarding attorneys' fees and costs — are the subject of pending confirmation and vacatur proceedings before Judge Furman of the NY Federal District Court in the Chef Chloe Action, and thus, are currently inchoate and unenforceable.  Discovery in the Chef Chloe Action is complete and there are also pending motions and cross motions for summary judgment.  The Chef Chloe Action was stayed with respect to BCHG LLC following the commencement of the Chapter 11 Cases.

B.      *Summary of the Plan and Expected Recoveries Under the Plan*

The Debtors and their advisors are engaged in a marketing process for potential purchasers and/or plan sponsors to facilitate the Debtors' emergence from these Chapter 11 Cases.  To that end, on December 15, 2020, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Approving the Bidding Procedures, (II) Scheduling the Bid Deadline and the Auction, (III) Approving the Form and Manner of Notice Thereof, and (IV) Granting Related Relief* [Docket No. 36], which was approved by the Bankruptcy Court on January 7, 2021 [Docket No. 102] (the "Bidding Procedures Order").

Pursuant to the Bidding Procedures Order, the Court approved the Debtors' marketing process associated with the Plan, which includes a toggle feature, resulting in either: (a) an Asset Sale Restructuring, which allows the Debtors to enter into a sale transaction for the sale or

disposition the Debtors' assets; or (b) an Equitization Restructuring, which provides for the implementation of the terms of an acceptable plan sponsor investment in the form of an equity investment.  The Plan toggle provides the Debtors with the latitude necessary to negotiate the precise terms of their ultimate emergence from chapter 11 and, consequently, the terms of the Plan may be revised, as necessary.  Consistent with this process, the Debtors are marketing for equity investors or a sale of the Debtors' business.

The net proceeds received by the Debtors upon either an Asset Sale Restructuring or an Equitization Restructuring are to be used to make payments, to the extent of available Cash, to holders of Allowed Claims in the order of priority under section 507 of the Bankruptcy Code, including DIP Claims, Allowed Administrative Claims (including Professional Fee Claims), Allowed Priority Tax Claims and Allowed Claims in Class 1, Class 2, and Pro Rata Distributions to holders of Allowed General Unsecured Claims in Class 3.  The chart below reflects the proposed treatment of Claims and Interests under the Plan:

| Class | Claim/Equity Interest | Treatment of Claim/Interest | Estimated Amount of Unpaid Allowed Claims on Effective Date | Projected Recovery Under the Plan |
|---|---|---|---|---|
| N/A | DIP Claims | On or before the Effective Date, except to the extent that a Holder of an Allowed DIP Claim agrees to a less favorable treatment, the DIP Claims shall be repaid indefeasibly in full in Cash; *provided* that the DIP Lenders shall have the option to equitize their DIP Claims at their sole discretion. | $3,250,000, not including interest, fees and expenses | 100% |
| N/A | Administrative Claims, excluding DIP Claims and Professional Fee Claims | Each Holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim, payment in Cash in full from the Plan Administrator or the Reorganized Debtors, as applicable. | $280,000 | 100% |
| N/A | Professional Fee Claims | Upon Bankruptcy Court approval, Professional Fee Claims shall be promptly paid from the Professional Fee Escrow Account up to the full Allowed amount. | TBD | 100% |
| N/A | Priority Tax Claims | Except to the extent that a Holder of an Allowed Priority Tax Claim and, as applicable, the Plan Administrator or the Reorganized Debtors, agree to a less favorable treatment, in full and final satisfaction, settlement, and release of and in exchange for each Allowed Priority Tax Claim, pursuant to section 1129(a)(9) of the Bankruptcy Code, each Holder of such Allowed Priority Tax Claim shall receive the full unpaid amount of such Allowed Priority Tax Claim in Cash on the later of the Effective Date and the date on which such Priority Tax Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Priority Tax Claim is due or as soon as reasonably practicable thereafter).  Any Allowed Priority Tax Claim that has been expressly assumed by the Purchaser under the Asset Purchase Agreement in an Asset Sale Restructuring shall not be an obligation of the Debtors. | $0 | 100% |
| 1 | Other Secured Claims | Each Holder of an Allowed Other Secured Claim shall receive, at the Debtors' election: (a) payment | $25,000 | 100% |

| | | | | |
|---|---|---|---|---|
| | | in Cash in full; (b) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (c) Reinstatement of such Claim; or (d) such other treatment rendering such Claim Unimpaired. | | |
| 2 | Other Priority Claims | Each Holder of an Allowed Other Priority Claim shall receive payment in full in Cash. The failure to object to Confirmation by a Holder of an Allowed Other Priority Claim shall be deemed to be such Holder's consent to receive treatment for such Claim that is different from that set forth in section 1129(a)(9) of the Bankruptcy Code. | $0 | 100% |
| 3 | General Unsecured Claims | Each Holder of an Allowed General Unsecured Claims shall receive its Pro Rata share of the GUC Distribution Amount. | $2.85 million | Amount Unknown at this Time |
| 4 | Intercompany Claims | Each Allowed Intercompany Claim, unless otherwise provided for under the Plan, shall either be Reinstated or canceled and released at the option of the Debtors; *provided* that no distributions shall be made on account of any such Intercompany Claims. | $0 | 0% |
| 5 | Intercompany Interests | Each Allowed Intercompany Interest shall be Reinstated for administrative convenience or canceled and released without any distribution on account of such interests at the option of the Debtors. | N/A | N/A |
| 6 | Existing Interests | Existing Interests shall be discharged, cancelled, released and extinguished, and holders thereof shall not receive or retain any distribution under the Plan on account of such Existing Interests. | N/A | 0% |
| 7 | Section 510(b) Claims | Section 510(b) Claims shall be canceled, released, and extinguished as of the Effective Date, and shall be of no further force or effect, and each Holder of a Section 510(b) Claim shall not receive any distribution on account of such Section 510(b) Claim. | TBD | 0% |

C.    *Significant Events During the Chapter 11 Cases*

Since the Petition Date, the Debtors have engaged in extensive negotiations with counsel to Chef Chloe and counsel to the Investor Group in an effort to consensually resolve the issues raised in the Chef Chloe Action and develop a path forward for the Chapter 11 Cases that maximizes value for all creditors.

Contemporaneously, the Debtors have continued their marketing process for plan sponsors or purchasers to facilitate the Debtors' emergence from the Chapter 11 Cases. As discussed above, the Court entered the Bidding Procedures Order on January 7, 2021. As of the date hereof, the Debtors' asset sale advisor, Ankura Consulting Group, LLC, has contacted 140 potential interested parties and executed non-disclosure agreements with 23 parties. The bid deadline in connection with the Debtors' sale process is February 25, 2021 and the Auction is scheduled for March 1, 2021.

The Debtors also obtained entry of the DIP Orders [Docket Nos. 35 & 103], pursuant to which the Court authorized the Debtors to obtain $3.25 million in debtor-in-possession financing, and retained various professionals, including Epiq Corporate Restructuring, LLC, as claims and noticing agent and administrative agent [Docket Nos. 33 & 83], and Young Conaway Stargatt & Taylor, LLP, as bankruptcy counsel [Docket No. 82].  The Debtors also sought authority to retain Ankura Consulting Group, LLC [Docket No. 69] as their financial and restructuring advisor and asset sale advisor and have sought to retain various other professionals as ordinary course professionals [Docket No. 153].

D.      *Liquidation Analysis*

See <u>Exhibit A</u> attached hereto.

E.      *Financial Projections with Respect to the Debtors' Ability to Make Payments Under the Plan*

As set forth more fully in the Bidding Procedures Motion and discussed above, the Debtors are engaged in a marketing process for potential purchasers and/or plan sponsors to facilitate the Debtors' emergence from these Chapter 11 Cases.  The Debtors believe that this marketing process will test the market and result in a lump-sum payment, either through the Asset Purchase Agreement or the Plan Sponsor Agreement, that maximizes value for the benefit of all creditors. The proceeds of the sale will be used to make the Distributions set forth in this Plan.  As such, no financial projections are set forth in the Plan.

In addition, because the Debtors intend to make all payments required under this Plan from the proceeds of the sale, section 1190(2) of the Bankruptcy Code, which requires the submission of future earnings of the Debtors to the trustee as necessary for execution of the Plan, does not apply.

F.      *Current Financial Performance*

For more details regarding the Debtors' current financial performance, please refer to the Debtors' monthly operating reports, which are available on the Voting Agent's website at https://dm.epiq11.com/case/bychloe.

G.      *Recovery of Avoidable Transfers*

The Debtors have not yet completed their investigation with regard to prepetition transactions. The Debtors anticipate completing their investigation by February 12, 2021. If you received a payment or other transfer of property within 90 days of the Petition Date, the Debtors may seek to avoid such transfer.

27437196.15

**ARTICLE III.**
**ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS,**
**PROFESSIONAL FEE CLAIMS AND DIP CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, Professional Fee Claims and DIP Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article IV hereof.

A.    *Administrative Claims*

Except as otherwise provided in this Article III.A and except with respect to Administrative Claims that are DIP Claims and Professional Fee Claims, requests for payment of Allowed Administrative Claims must be Filed and served on the Reorganized Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests, if any, must be Filed and served by the Claims Objection Bar Date. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim Allowed by Final Order.

For the avoidance of doubt, the DIP Lenders will not be required to file any request for allowance and/or payment of any Administrative Claim.

Except with respect to Administrative Claims that are Professional Fee Claims or DIP Claims, and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Cases or a Holder of an Allowed Administrative Claim and the applicable Debtor(s) agree to less favorable treatment, each Holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim, payment in Cash in full. Except as otherwise set forth herein, and except to the extent that a Holder of an Allowed Administrative Claim and, as applicable, the Plan Administrator or the Reorganized Debtors, agree to less favorable treatment, the Plan Administrator or the Reorganized Debtor, as applicable, shall pay each Holder of an Allowed Administrative Claim the unpaid amount of such Allowed Administrative Claim in Cash, which payment shall be made (x) in the ordinary course of business; or (y) on the later of (i) the Effective Date and (ii) the date on which such Administrative Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter) with a Cash distribution.

B.    *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim and, as applicable, the Plan Administrator or the Reorganized Debtors, agree to a less favorable treatment, in full and final satisfaction, settlement, and release of and in exchange for each Allowed Priority Tax Claim, pursuant to section 1129(a)(9) of the Bankruptcy Code, each Holder of such Allowed Priority Tax

Claim shall receive the full unpaid amount of such Allowed Priority Tax Claim in Cash on the later of the Effective Date and the date on which such Priority Tax Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Priority Tax Claim is due or as soon as reasonably practicable thereafter). Any Allowed Priority Tax Claim that has been expressly assumed by the Purchaser under the Asset Purchase Agreement in an Asset Sale Restructuring shall not be an obligation of the Debtors.

C.    *Professional Compensation*

    1.    Final Fee Applications and Payment of Professional Fee Claims

All final requests for payment of Professional Fee Claims incurred during the period from the Petition Date through the Confirmation Date shall be Filed no later than thirty (30) days after the Effective Date. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior orders of the Bankruptcy Court, including the Interim Compensation Order, and once approved by the Bankruptcy Court, shall be promptly paid from the Professional Fee Escrow Account up to the full Allowed amount. To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, and the Reorganized Debtors or the Plan Administrator, as applicable, shall pay the full unpaid amount of such Allowed Administrative Claim in Cash.

    2.    Professional Fee Escrow Account

On the Effective Date, the Reorganized Debtors or Plan Administrator, as applicable, shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals. Such funds shall not be considered property of the Estates. The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtors or Plan Administrator, as applicable, as soon as reasonably practicable after such Professional Fee Claims are Allowed. When all Allowed amounts owing to the Professionals have been paid in full, any amount remaining in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors or Plan Administrator, as applicable, without any further action or order of the Bankruptcy Court. If the Professional Fee Escrow Account is insufficient to fund the full Allowed amounts of Professional Fee Claims, the remaining unpaid Allowed Professional Fee Claims will be paid by the Reorganized Debtors or Plan Administrator, as applicable.

    3.    Professional Fee Reserve Amount

Professionals shall reasonably estimate their unpaid Professional Fee Claims, and shall deliver such estimate to the Debtors no later than five days before the Effective Date; provided that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims. If a Professional does not provide an estimate, the Debtors or Reorganized Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

4.       Post-Confirmation Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to, or action, order, or approval of, the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Professionals.    Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors or the Plan Administrator, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to, or action, order, or approval of, the Bankruptcy Court.

D.       *DIP Claims*

As of the Effective Date, the DIP Claims shall be Allowed Claims in the full amount outstanding under the DIP Loan Documents, including principal, interest, fees, and expenses, and shall not be subject to any avoidance, reductions, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or any other challenges under any applicable law or regulation by any person.

On or before the Effective Date, except to the extent that a Holder of an Allowed DIP Claim agrees to a less favorable treatment, the DIP Claims shall be repaid indefeasibly in full in Cash; provided that the DIP Lenders shall have the option to equitize their DIP Claims at their sole discretion.

## ARTICLE IV.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.       *Confirmation of the Plan*

Pursuant to section 1191(b) of the Bankruptcy Code, the Bankruptcy Court may confirm the Plan even if no Impaired Class of Claims votes to accept the Plan.  Specifically, section 1191(b) of the Bankruptcy Code provides that the Plan may be confirmed if the applicable requirements of section 1129(a) are satisfied, other than sections 1129(a)(8), (10), and (15), if the Bankruptcy Court finds that the Plan does not discriminate unfairly, and is fair and equitable, with respect to each Class of Claims or Interests that is Impaired under, and has not accepted, the Plan.  The Debtors reserve the right to assert that the Plan satisfies these requirements.

B.       *Summary of Classification*

Claims and Interests, except for DIP Claims, Professional Fee Claims, Administrative Claims and Priority Tax Claims, are classified in the Classes set forth in this Article IV.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  Except as otherwise provided in this Plan, a Claim or Interest is classified in a particular Class for the purpose of

receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.

1.      Class Identification

The classification of Claims and Interests against each Debtor (as applicable) pursuant to the Plan is as follows:

| Class | Claim or Interest | Status |
|-------|-------------------|--------|
| 1 | Other Secured Claims | Unimpaired |
| 2 | Other Priority Claims | Unimpaired |
| 3 | General Unsecured Claims | Impaired |
| 4 | Intercompany Claims | Unimpaired / Impaired |
| 5 | Intercompany Interests | Unimpaired / Impaired |
| 6 | Existing Interests | Impaired |
| 7 | Section 510(b) Claims | Impaired |

C.      *Treatment of Claims and Interests*

Subject to Article VII hereof, each holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, such holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors and the holder of such Allowed Claim or Allowed Interest, as applicable.  Unless otherwise indicated, the holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

1.      Class 1 – Other Secured Claims

a.      *Classification*:   Class 1 consists of Other Secured Claims against any Debtor.

b.      *Treatment*:  Each Holder of an Allowed Other Secured Claim shall receive, at the Debtors' election: (a) payment in Cash in full; (b) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (c) Reinstatement of such Claim; or (d) such other treatment rendering such Claim Unimpaired.

c.      *Voting*:  Class 1 is Unimpaired.  Holders of Other Secured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

2.      Class 2 – Other Priority Claims

 a. *Classification*:  Class 2 consists of Other Priority Claims.

 b. *Treatment*: Each Holder of an Allowed Other Priority Claim shall receive payment in full in Cash.  The failure to object to Confirmation by a Holder of an Allowed Other Priority Claim shall be deemed to be such Holder's consent to receive treatment for such Claim that is different from that set forth in section 1129(a)(9) of the Bankruptcy Code.

 c. *Voting*:  Class 2 is Unimpaired.  Holders of Other Priority Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

3.      Class 3 – General Unsecured Claims

 a. *Classification*:  Class 3 consists of all General Unsecured Claims.

 b. *Treatment*:  Each Holder of an Allowed General Unsecured Claims shall receive its Pro Rata share of the GUC Distribution Amount.

 c. *Voting*:  Class 3 is Impaired.  Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

4.      Class 4 – Intercompany Claims

 a. *Classification*:  Class 4 consists of all Intercompany Claims.

 b. Treatment:  Each Allowed Intercompany Claim, unless otherwise provided for under the Plan, shall either be Reinstated or canceled and released at the option of the Debtors; *provided* that no distributions shall be made on account of any such Intercompany Claims.

 c. Class 4 is either Unimpaired, in which case Holders of Allowed Intercompany Claims shall be conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, or Impaired, in which case Holders of Allowed Intercompany Claims shall be deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

5.      Class 5 – Intercompany Interests

 a. *Classification*:  Class 5 consists of all Intercompany Interests.

 b. *Treatment*:  Each Allowed Intercompany Interest shall be Reinstated for administrative convenience or canceled and released without any distribution on account of such interests at the option of the Debtors.

    c.      Class 5 is either Unimpaired, in which case Holders of Allowed Intercompany Interests shall be conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, or Impaired, in which case Holders of Allowed Intercompany Interests shall be deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

6.    Class 6 – Existing Interests

    a.      *Classification*:  Class 6 consists of all Existing Interests.

    b.      *Treatment*:  Existing Interests shall be discharged, cancelled, released and extinguished, and holders thereof shall not receive or retain any distribution under the Plan on account of such Existing Interests.

    c.      *Voting*:  Class 6 is Impaired.  Holders of Existing Interests are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

7.    Class 7 – Section 510(b) Claims

    a.      *Classification*:  Class 7 consists of all Section 510(b) Claims.

    b.      *Treatment*:  Section 510(b) Claims shall be canceled, released, and extinguished as of the Effective Date, and shall be of no further force or effect, and each Holder of a Section 510(b) Claim shall not receive any distribution on account of such Section 510(b) Claim.

    c.      *Voting*:  Class 7 is Impaired.  Holders of Section 510(b) Claims are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

D.    *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights in respect of any Unimpaired Claim, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

E.    *Subordinated Claims and Interests*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and their respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors, Reorganized Debtors or Plan

Administrator, as applicable, reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *General Settlement of Claims*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to the Plan. The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.

B.    *Restructuring Transactions*

Before, on, and after the Effective Date, the Debtors, Reorganized Debtors or Plan Administrator, as applicable, shall take all actions as may be necessary or appropriate to effectuate the Restructuring Transactions, including: (a) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (d) such other transactions that are required to effectuate the Restructuring Transactions; (e) all transactions necessary to provide for the purchase of substantially all of the assets of, or Interests in, any of the Debtors by one or more Entities to be wholly owned by Reorganized Debtors or any other Entity pursuant to the Asset Purchase Agreement, which purchase may be structured as a taxable transaction for United States federal income tax purposes; and (f) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

C.    *Cancelation of Notes, Instruments, Certificates, and Other Documents*

On the Effective Date, except as otherwise specifically provided for in the Plan: (1) the obligations of any Debtor under any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in the Debtors or any warrants,

options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim or Interest shall be canceled and deemed surrendered as to the Debtors and shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in the Debtors shall be fully released, settled, and compromised.

D.    *Exemption from Certain Taxes and Fees*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto, including the Asset Sales, or the issuance, transfer or exchange of any security under the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

E.    *Release of Liens*

Except as otherwise expressly provided herein, on the Effective Date, all Liens on any property of any Debtors or the Reorganized Debtors shall automatically terminate, all property subject to such Liens shall be automatically released, and all guarantees of any Debtors or the Reorganized Debtors shall be automatically discharged and released.  For the avoidance of doubt, the Liens securing the DIP Claims shall not be released until the DIP Claims have been paid indefeasibly in full in Cash or the DIP Lenders agree otherwise in their sole discretion.

F.    *The Equitization Restructuring*

If the Equitization Restructuring occurs, the following provisions shall govern.

1.    Sources of Consideration for Plan of Reorganization Distributions

The Reorganized Debtors will fund distributions under the Plan with Cash on hand on the Effective Date and the revenues and proceeds of all assets of the Debtors, including proceeds from all Causes of Action not settled, released, discharged, enjoined, or exculpated under the Plan or otherwise on or prior to the Effective Date, and the New BCHG Interests.

2.    Issuance and Distribution of New BCHG Interests

On the Effective Date, the Reorganized Debtors shall issue the New BCHG Interests to fund distributions to the Plan Sponsor.  The issuance of New BCHG Interests under the Plan is

duly authorized without the need for any further corporate action and without any further action by the Debtors or Reorganized Debtors, the Holders of Claims or Interests, or the Plan Sponsor.

On the Effective Date, Holders of New BCHG Interests shall be parties to the New Stockholders' Agreement, in substantially the form included in the Plan Supplement.  On the Effective Date, the Reorganized Debtors shall enter into and deliver the New Stockholders' Agreement to each Entity that is intended to be a party thereto, and such New Stockholders' Agreement shall be deemed to be valid, binding, and enforceable in accordance with its terms, and each Holder of New BCHG Interests shall be bound thereby, in each case without the need for execution by any party thereto other than Reorganized Debtors.

3.      Plan Sponsor Investment

On the Effective Date, the Plan Sponsor shall consummate the Plan Sponsor Investment, if any, in exchange for up to 100 percent of the New BCHG Interests.  The Cash received from the Plan Sponsor Investment shall fund distributions under the Plan and shall be contributed to the Reorganized Debtors on the Effective Date.

4.      Corporate Existence

Except as otherwise provided in the Plan, the New Organizational Documents, the New Stockholders' Agreement, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, each Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other analogous formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval.

5.      Vesting of Assets in the Reorganized Debtors

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors shall vest in each applicable Reorganized Debtor free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

6.     Corporate Action

Upon the Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated by the Plan shall be deemed authorized and approved by the Bankruptcy Court in all respects, including, as applicable:   (a) the implementation of the Restructuring Transactions; (b) the selection of the directors and officers for the Reorganized Debtors; (c) the issuance and distribution of the New BCHG Interests; and (d) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date).   Upon the Effective Date, all matters provided for in the Plan involving the corporate structure of the Reorganized Debtors, and any corporate action required by the Debtors, or the other Reorganized Debtors in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtors or the Reorganized Debtors.   On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors, the New BCHG Interests, and any and all other agreements, documents, securities, and instruments relating to the foregoing, to the extent not previously authorized by the Bankruptcy Court.   The authorizations and approvals contemplated by this Article V.F.6 shall be effective notwithstanding any requirements under non-bankruptcy law.

7.     New Organizational Documents

On the Effective Date, each of the Reorganized Debtors will file its New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in its respective state of incorporation or formation in accordance with the applicable laws of the respective state of incorporation or formation.   The New Organizational Documents shall be consistent with section 1123(a)(6) of the Bankruptcy Code.   Pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents will prohibit the issuance of non-voting equity securities.   After the Effective Date, the Reorganized Debtors may amend and restate their respective New Organizational Documents and other constituent documents as permitted by the laws of their respective states of incorporation and their respective New Organizational Documents.

8.     Directors and Officers of the Reorganized Debtors

As of the Effective Date, the terms of the current members of the board of directors of the Debtors shall expire, and the New Boards and new officers of each of the Reorganized Debtors shall be appointed in accordance with the New Organizational Documents and other constituent documents of each Reorganized Debtor.   The identities of the Reorganized BCHG Board shall be included in the Plan Supplement.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will, to the extent reasonably practicable, disclose in advance of the Confirmation Hearing the identity and affiliations of any Person proposed to serve on the New Boards, as well as those Persons that will serve as officers of the Reorganized Debtors.   To the extent any such director or officer is an "insider" under the Bankruptcy Code, the nature of any compensation to be paid to such director

or officer will also be disclosed. Provisions regarding the removal, appointment, and replacement of members of the New Boards will be disclosed in the New Organizational Documents.

9.      Effectuating Documents; Further Transactions

On and after the Effective Date, the Reorganized Debtors, their officers, and the members of the New Boards are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan, including the New BCHG Interests, in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorization, or consents.

10.      Preservation of Causes of Action

Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, including the Claims and Causes of Action specifically released and exculpated in Article X of the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action (including all Avoidance Actions), whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtors may pursue such Causes of Action, as appropriate, in the Reorganized Debtors' sole discretion. No Entity may rely on the absence of a specific reference in the Plan or the Plan Supplement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against it. The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled under the Plan or pursuant to a Bankruptcy Court order, the Debtors or Reorganized Debtors, as applicable, expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. In accordance with section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided herein, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors. The applicable Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to, or action, order, or approval of, the Bankruptcy Court.

11.    Reporting Upon Emergence

On the Effective Date, none of the New BCHG Interests will be registered under the Securities Act or the Securities Exchange Act or listed on a national securities exchange, Reorganized BCHG will not be a reporting company under the Securities Exchange Act, Reorganized BCHG shall not be required to and will not file Securities Exchange Act reports with the Securities and Exchange Commission or any other entity or party, and Reorganized BCHG shall not be required to file monthly operating reports with the Bankruptcy Court after the Effective Date. To prevent the Reorganized Debtors from becoming subject to the reporting requirements of the Securities Exchange Act, except in connection with a public offering, a separate agreement or Reorganized BCHG's organizational documents may impose certain trading restrictions, and the New BCHG Interests may be subject to certain transfer and other restrictions designed to maintain Reorganized BCHG as a private, non-reporting company.

G.    *The Asset Sale Restructuring*

If the Asset Sale Restructuring occurs, the following provisions shall govern.

1.    Vesting of Assets

Except as otherwise provided in the Plan, the Asset Purchase Agreement, or any agreement, instrument, or other document incorporated herein or therein, on the Effective Date, the assets of the Debtors shall vest in the Reorganized Debtors for the purpose of liquidating the Estates, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided for in the Plan or the Asset Purchase Agreement, the Debtors and the Reorganized Debtors may operate their business and use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

2.    Sources of Consideration for Plan Distributions

The Reorganized Debtors will fund distributions under the Plan with Cash on hand on the Effective Date and the revenues and proceeds of all assets of the Debtors, including proceeds from all Causes of Action not settled, released, discharged, enjoined, or exculpated under the Plan or otherwise on or prior to the Effective Date.

Notwithstanding anything to the contrary in the Plan or in the Asset Purchase Agreement, on the Effective Date any Cause of Action not settled, released, discharged, enjoined, or exculpated under Article X of the Plan on or prior to the Effective Date shall vest in the Reorganized Debtors and shall be subject to administration by the Plan Administrator.

3.    Asset Sales

On the Effective Date, the Debtors shall consummate the Asset Sales and, among other things, the acquired assets, as set forth in the Asset Purchase Agreement, shall be transferred to and vest in the Purchaser free and clear of all Liens, Claims, charges, or other encumbrances pursuant to the terms of the Asset Purchase Agreement and Confirmation Order. The Purchaser

shall be deemed not to be a successor of the Debtors.  On the Effective Date, the Purchaser shall pay to the Debtors the proceeds from the Asset Sales, as and to the extent provided for in the Asset Purchase Agreement.  The Confirmation Order shall:  (a) approve the Asset Purchase Agreement; and (b) authorize the Debtors or Reorganized Debtors, as applicable, to undertake the transactions contemplated by the Asset Purchase Agreement, including pursuant to sections 363, 365, 1123(a)(5)(B), and 1123(a)(5)(D) of the Bankruptcy Code.

4.      Reorganized Debtors

On and after the Effective Date, the Reorganized Debtors shall continue in existence for purposes of (a) winding down the Debtors' business and affairs as expeditiously as reasonably possible, (b) resolving Disputed Claims, (c) making distributions on account of Allowed Claims as provided hereunder, (d) establishing and funding the Distribution Reserve Accounts, (e) enforcing and prosecuting claims, interests, rights, and privileges under the Causes of Action on the Retained Causes of Action List in an efficient manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, (f) filing appropriate tax returns, (g) complying with the Reorganized Debtors' continuing obligations under the Asset Purchase Agreement, if any, and (h) administering the Plan in an efficient manner.  The Reorganized Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

5.      Plan Administrator

The Plan Administrator shall act for the Reorganized Debtors in the same fiduciary capacity as applicable to a board of managers, directors, and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same).  On the Effective Date, the authority, power, and incumbency of the persons acting as managers, officers, and/or directors of the Reorganized Debtors shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed as the sole manager, sole director, and sole officer of the Reorganized Debtors, and shall succeed to the powers of the Reorganized Debtors' managers, directors, and officers.  From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Reorganized Debtors.  The foregoing shall not limit the authority of the Reorganized Debtors or the Plan Administrator, as applicable, to continue the employment of any former manager or officer, including pursuant to any transition services agreement entered into on or after the Effective Date by and between the Reorganized Debtors and the Purchaser.

6.      Dissolution and Board of the Debtors

As of the Effective Date, the existing board of directors or managers, as applicable, of the Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, managers, shareholders, or members, and any remaining officers,

directors, managers, or managing members of any Debtor shall be dismissed without any further action required on the part of any such Debtor, the equity holders of the Debtors, the officers, directors, or managers, as applicable, of the Debtors, or the members of any Debtor. Subject in all respects to the terms of this Plan, the Debtors shall be dissolved as soon as practicable on or after the Effective Date, but in no event later than the closing of the Chapter 11 Cases.

As of the Effective Date, the Plan Administrator shall act as the sole officer, director, and manager, as applicable, of the Debtors with respect to their affairs. Subject in all respects to the terms of this Plan, the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve any of the Debtors and shall: (a) file a certificate of dissolution for any of the Debtors, together with all other necessary corporate and company documents, to effect the dissolution of the Debtors under the applicable laws of its state of formation; and (b) complete and file all final or otherwise required federal, state, and local tax returns and shall pay taxes required to be paid for any of the Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the Debtors or their Estates for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

The filing by the Plan Administrator of any of the Debtors' certificates of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, board of directors, or board of managers of BCHG or any of its affiliates.

7.      Corporate Action

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved in all respects, including: (a) consummation of the Asset Sales; and (b) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan or corporate structure of the Debtors or Reorganized Debtors, shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors. Before, on, or after the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors. The authorizations and approvals contemplated by this Article shall be effective notwithstanding any requirements under non-bankruptcy law.

8.      Effectuating Documents; Further Transactions

Prior to the Effective Date, the Debtors are, and on and after the Effective Date, the Reorganized Debtors, the Plan Administrator, and the officers and members thereof are, authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases,

and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, notice, or consents, except for those expressly required pursuant to the Plan.

        9.      Preservation of Causes of Action

Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors shall convey to the Plan Administrator all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, which shall vest in the Plan Administrator pursuant to the terms of the Plan. The Plan Administrator may enforce all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Plan Administrator's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Plan Administrator may, in its reasonable business judgment, pursue such Causes of Action and may retain and compensate professionals in the analysis or pursuit of such Causes of Action to the extent the Plan Administrator deems appropriate, including on a contingency fee basis. No Entity may rely on the absence of a specific reference in the Plan or the Plan Supplement to any Cause of Action against them as any indication that the Debtors or the Plan Administrator will not pursue any and all available Causes of Action against them. The Debtors and the Plan Administrator expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan; provided that the Debtors, in consultation with the Plan Administrator after the Effective Date, may prosecute any such Cause of Action against any party only in connection with their objection to and resolution of any Claim asserted by such party. Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Plan Administrator expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. The Plan Administrator reserves and shall retain the foregoing Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. The Plan Administrator shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to, or action, order, or approval of, the Bankruptcy Court.

H.      Closing the Chapter 11 Cases

Upon the occurrence of the Effective Date, the Reorganized Debtors or the Plan Administrator, as applicable, shall be permitted to close all of the Chapter 11 Cases except for the Chapter 11 Case of BCHG, and all contested matters relating to each of the Debtors, including objections to Claims, shall be administered and heard in the Chapter 11 Case of BCHG.

When all Disputed Claims have become Allowed or Disallowed and all remaining Cash has been distributed in accordance with the Plan, the Reorganized Debtors or the Plan Administrator, as applicable, shall seek authority from the Bankruptcy Court to close the Chapter 11 Case of BCHG in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE VI.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Executory Contracts and Unexpired Leases are contracts and leases where significant performance remains for both a Debtor and another party to the contract or lease. The Debtors have the right to reject, assume (*i.e.* accept), or assume and assign these types of contracts and leases to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtors' intentions regarding their Executory Contracts and Unexpired Leases and the impact such intentions would have on the other parties to the Executory Contracts and Unexpired Leases.

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases*

If an Asset Sale Restructuring is elected, on the Effective Date, except as otherwise provided herein, in the Plan Supplement, or in the Confirmation Order, each Executory Contract and Unexpired Lease that is not assumed or assigned pursuant to the Asset Purchase Agreement shall be deemed automatically rejected.

If an Equitization Restructuring is elected, on the Effective Date, except as otherwise provided herein or in the Confirmation Order, each Executory Contract and Unexpired Lease shall be deemed automatically assumed by the applicable Debtor as of the Effective Date other than those contracts and leases that are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases in the Plan Supplement.

Such automatic assumption or rejection, as applicable, shall be effective without the need for any further notice to or action, order, or approval of the Bankruptcy Court, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than any Executory Contracts and Unexpired Leases that: (a) have been previously assumed, assumed and assigned, or rejected pursuant to a Bankruptcy Court order; (b) are the subject of a motion to assume, assume and assign, or reject such Executory Contract or Unexpired Lease (or of a Filed objection with respect to the proposed assumption, assumption and assignment, or rejection of such Executory Contract or Unexpired Lease) that is pending on the Effective Date; or (c) are a contract, release, or other agreement or document entered into in connection with the Plan.  The Confirmation Order will constitute an order of the Bankruptcy Court approving, subject to and upon the occurrence of the Effective Date, the above-described assumptions and assumptions and assignments, or rejections, as applicable.  Any Filed motions to assume, assume and assign, or reject any Executory Contracts or Unexpired Leases (or Filed objection with respect to the proposed assumption and assignment of such contract) that is pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order but may be withdrawn, settled, or otherwise prosecuted by the Reorganized Debtors or the Plan Administrator, with any such disposition to be deemed to effect an assumption, assumption and assignment, or rejection, as applicable, as of the Effective Date.

27437196.15

B.       *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Proofs of Claims with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court within the latest to occur of: (1) 30 days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; (2) 30 days after the Debtors provide notice of surrender of possession to a landlord of a rejected lease where surrender occurs after entry of an order approving such rejection; and (3) 30 days after notice of any rejection that occurs after the Effective Date. **Any Holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claims were not timely Filed shall not (1) be treated as a creditor with respect to such Claim, (2) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (3) participate in any distribution in the Chapter 11 Cases on account of such Claim, and any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Debtors' Estates, the Reorganized Debtors, the Purchaser, the Plan Administrator or the property for any of the foregoing without the need for any objection by such parties or further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** Valid Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article IV of the Plan.

Counterparties to Executory Contracts or Unexpired Leases listed on the Schedule of Rejected Executory Contracts and Unexpired Leases shall be served with a notice of rejection of Executory Contracts and Unexpired Leases, as soon as reasonably practicable following the Auction.

C.       *Cure of Defaults for Assumed, or Assumed and Assigned, Executory Contracts and Unexpired Leases*

Any monetary defaults under an Executory Contract or Unexpired Lease to be assumed, or assumed and assigned, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim, as reflected on the Cure Notice or as otherwise agreed or determined by a Final Order of the Court, in Cash on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitations described below, or on such other terms as the parties to such Executory Contract or Unexpired Leases may otherwise agree.  In the event of a dispute regarding:  (1) the amount of any Cure Claim; (2) the ability of the Reorganized Debtors, the Purchaser, or any assignee, as applicable, to provide "adequate assurance of future performance" (with the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or assumed and assigned; or (3) any other matter pertaining to assumption or the assumption and assignment, the Cure Claims shall be made

following the entry of a Final Order resolving the dispute and approving the assumption or the assumption and assignment.

Unless otherwise provided by an order of the Bankruptcy Court or in the Asset Purchase Agreement or Plan Sponsor Agreement, at least fourteen days before the Voting Deadline, the Debtors shall distribute, or cause to be distributed, Cure Notices to the applicable third parties. **Any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption, assumption and assignment, or related Cure Claim must be Filed by the Cure/Assumption Objection Deadline.** Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption, assumption and assignment, or Cure Notice will be deemed to have assented to such assumption or assumption and assignment, and Cure Claim. To the extent that the Debtors seek to assume and assign an Executory Contract or Unexpired Lease pursuant to the Plan, the Debtors will identify the assignee following the Auction and provide "adequate assurance of future performance" for such assignee (within the meaning of section 365 of the Bankruptcy Code) under the applicable Executory Contract or Unexpired Lease to be assumed and assigned. The Solicitation Procedures Order shall include the deadline for counterparties to Executory Contracts and Unexpired Leases to object solely with respect to the proposed adequate assurance of future performance, which deadline shall be after the Auction.

Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and the payment of the Cure Claim, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume or assume and assign such Executory Contract or Unexpired Lease. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged, without further notice to, or action, order, or approval of, the Bankruptcy Court.

D.    *Director and Officer Liability Insurance*

To the extent that the D&O Liability Insurance Policies are considered to be Executory Contracts, notwithstanding anything in the Plan to the contrary, effective as of the Effective Date, the Debtors shall be deemed to have assumed all D&O Liability Insurance Policies with respect to the Debtors' directors, managers, officers, and employees serving on or before the Petition Date pursuant to section 365(a) of the Bankruptcy Code, and coverage for defense and indemnity under any of the D&O Liability Insurance Policies shall remain available to all individuals within the definition of "Insured" in any of the D&O Liability Insurance Policies. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the unexpired D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be Filed.

E.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

F.      *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contracts and Unexpired Leases or the Schedule of Assumed Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor or Reorganized Debtor has any liability thereunder.

G.      *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting any Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VII.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Allowed Interest (or such Holder's affiliate) shall receive the full amount of the distributions that the Plan provides for Allowed Claims and Interests in each applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in the Plan.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

27437196.15

B.    *Disbursing Agent*

Distributions under the Plan shall be made by the Disbursing Agent. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors or the Plan Administrator, as applicable.

C.    *Establishment of Distribution Reserve*

The Disbursing Agent shall establish a Distribution Reserve (which may be affected by either establishing a segregated account or establishing book entry accounts, in the sole discretion of the Disbursing Agent).

D.    *Rights and Powers of Disbursing Agent*

1.    Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.    Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out of pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors or the Plan Administrator, as applicable.

E.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.    Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date.

2.    Delivery of Distributions

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims, except as otherwise provided in this Article VII, or Interests shall be made to Holders of record as of the Distribution Record Date by the Disbursing Agent: (a) to the signatory set forth on any of the Proof of Claim Filed by such Holder or other representative identified therein (or at the last

27437196.15

known addresses of such Holder if no Proof of Claim is Filed or if the Debtors have been notified in writing of a change of address); (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; (c) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Reorganized Debtors have not received a written notice of a change of address; or (d) on any counsel that has appeared in the Chapter 11 Cases on such Holder's behalf.  Subject to this Article VII, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.  The Debtors, the Disbursing Agent, the Reorganized Debtors, or the Plan Administrator, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

3.      No Fractional Distributions

No fractional shares of New BCHG Interests shall be distributed, and no Cash shall be distributed in lieu of such fractional shares.  When any distribution pursuant to the Plan on account of an Allowed Claim would otherwise result in the issuance of a number of shares of New BCHG Interests that is not a whole number, the actual distribution of shares of New BCHG Interests shall be rounded as follows:  (a) fractions of one-half or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half shall be rounded to the next lower whole number with no further payment therefore.  The total number of authorized shares of New BCHG Interests to be distributed pursuant to the Plan shall be adjusted as necessary to account for the foregoing rounding.

4.      Minimum Distributions

Holders of Allowed Claims entitled to distributions of $50 (whether Cash or otherwise) or less shall not receive distributions, and each such Claim shall be discharged pursuant to Article X and its Holder is forever barred pursuant to Article X from asserting that Claim against the Debtors, the Reorganized Debtors or the Plan Administrator, as applicable, or their property.

5.      Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to the applicable Reorganized Debtor, without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be discharged and forever barred.

F.      *Manner of Payment.*

Unless otherwise set forth herein, all distributions of Cash and the New BCHG Interests, as applicable, to the Holders of Allowed Claims under the Plan shall be made by the Disbursing Agent.  At the option of the Disbursing Agent, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

G.      *Registration or Private Placement Exemption*

If an Equitization Restructuring occurs, the New BCHG Interests are or may be "securities," as defined in Section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws.

Pursuant to section 1145 of the Bankruptcy Code, the issuances of the New BCHG Interests as contemplated by the Plan are exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration prior to the offering, issuance, distribution, or sale of Securities.  The New BCHG Interests (1) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (2) are freely tradable and transferable by any initial recipient thereof that (a) is not an "affiliate" of Reorganized BCHG as defined in Rule 144(a)(1) under the Securities Act, (b) has not been such an "affiliate" within 90 days of such transfer, and (iii) is not an entity that is an "underwriter" as defined in subsection (b) of Section 1145 of Title 11 of the United States Code.

H.      *Tax Issues and Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Reorganized Debtors or the Plan Administrator, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors or the Plan Administrator, as applicable, shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Reorganized Debtors or the Plan Administrator, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

I.      *Allocations*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest as Allowed herein.

J.      *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims other than DIP Claims and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim other than on account of DIP Claims.

K.      *Setoffs and Recoupment*

The Debtors or the Reorganized Debtors, as applicable, may, but shall not be required to, set off against or recoup any payments or distributions to be made pursuant to the Plan in respect of any Claims of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the Reorganized Debtors, or their successors of any such Claim it may have against the Holder of such Claim.

L.      *Claims Paid or Payable by Third Parties*

1.      Claims Paid by Third Parties

To the extent that the Holder of an Allowed Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor, such Claim shall be Disallowed without an objection having to be Filed and without any further notice to, or action, order, or approval of, the Bankruptcy Court.  To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or Reorganized Debtors on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the applicable Debtor or Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to, or action, order, or approval of, the Bankruptcy Court.

2.      Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Notwithstanding anything herein to the contrary, nothing shall constitute or be deemed a release, settlement, satisfaction,

compromise, or waiver of any Cause of Action that the Debtors or any other Entity may hold against any other Entity, including insurers under any policies of insurance or applicable indemnity, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

# ARTICLE VIII.
# THE PLAN ADMINISTRATOR

The following provisions shall apply only if an Asset Sale Restructuring occurs and a Plan Administrator is appointed.

A.      *The Plan Administrator*

The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to administer and distribute the Plan Administrator Assets and the Distribution Reserve and wind down the business and affairs of the Debtors and the Reorganized Debtors, including:  (1) liquidating, receiving, holding, investing, supervising, and protecting the assets of the Reorganized Debtors; (2) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan from the Plan Administrator Assets and the Distribution Reserve; (3) making distributions from the Plan Administrator Assets and the Distribution Reserve as contemplated under the Plan; (4) establishing and maintaining bank accounts in the name of the Reorganized Debtors; (5) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (6) paying all reasonable fees, expenses, debts, charges, and liabilities of the Reorganized Debtors; (7) administering and paying taxes of the Reorganized Debtors, including filing tax returns; (8) representing the interests of the Reorganized Debtors or the Estates before any taxing authority in all matters, including any action, suit, proceeding, or audit; and (9) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

The Plan Administrator may resign at any time upon 30 days' written notice delivered to the Bankruptcy Court; *provided* that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator.  Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Reorganized Debtors shall be terminated.

1.      Plan Administrator Rights and Powers

The Plan Administrator shall retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under this Plan, and as otherwise provided in the Confirmation Order.  The Plan Administrator shall be the exclusive trustee of the assets of the Reorganized Debtors for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

49

2.      Retention of Professionals

The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties.  The reasonable fees and expenses of such professionals shall be paid by the Reorganized Debtors from the Wind-Down Reserve upon the monthly submission of statements to the Plan Administrator.  The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business from the Wind-Down Reserve and shall not be subject to the approval of the Bankruptcy Court.

3.      Compensation of the Plan Administrator

The Plan Administrator's compensation, on a post-Effective Date basis, shall be as described in the Plan Supplement and paid out of the Wind-Down Reserve.  Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Plan Administrator on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Plan Administrator in connection with such Plan Administrator's duties shall be paid without any further notice to, or action, order, or approval of, the Bankruptcy Court in Cash from the Wind-Down Reserve if such amounts relate to any actions taken hereunder.

4.      Plan Administrator Expenses

All costs, expenses, and obligations incurred by the Plan Administrator in administering this Plan, the Reorganized Debtor, or in any manner connected, incidental, or related thereto, in effecting distributions from the Reorganized Debtors thereunder (including the reimbursement of reasonable expenses) shall be a charge against the assets of the Reorganized Debtors remaining from time to time in the hands of the Plan Administrator.  Such costs, expenses, and obligations shall be paid from the Wind-Down Reserve.

The Debtors and the Plan Administrator, as applicable, shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  However, in the event that the Plan Administrator is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash from the Wind-Down Reserve.

B.      *Wind-Down*

On and after the Effective Date, the Plan Administrator will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve the Debtors' Estates.

As soon as practicable after the Effective Date, the Plan Administrator shall:  (1) cause the Debtors and the Reorganized Debtors, as applicable, to comply with, and abide by, the terms of the Purchase Agreements and any other documents contemplated thereby; (2) to the extent

27437196.15

applicable, file a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of the Debtors under the applicable laws of their state of incorporation or formation (as applicable); and (3) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan.   Any certificate of dissolution or equivalent document may be executed by the Plan Administrator without need for any action or approval by the shareholders or board of directors or managers of any Debtor.  From and after the Effective Date, except with respect to the Reorganized Debtors as set forth herein, the Debtors (1) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action to effectuate such withdrawal, (2) shall be deemed to have canceled pursuant to this Plan all Interests, and (3) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.  Notwithstanding the Debtors' dissolution, the Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Administrator.

C.      *Exculpation, Indemnification, Insurance and Liability Limitation*

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Reorganized Debtors.   The Plan Administrator may obtain, at the expense of the Reorganized Debtors and with funds from the Wind-Down Reserve, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Reorganized Debtors.  The Plan Administrator may rely upon written information previously generated by the Debtors.

Notwithstanding anything to the contrary contained herein, the Plan Administrator in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors.

D.      *Tax Returns*

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

E.      *Dissolution of the Reorganized Debtors*

Upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all distributions having been made and completion of all its duties under the Plan and entry of a final

decree closing the last of the Chapter 11 Cases, the Reorganized Debtors shall be deemed to be dissolved without any further action by the Reorganized Debtors, including the filing of any documents with the secretary of state for the state in which the Reorganized Debtors is formed or any other jurisdiction. The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Reorganized Debtors in and withdraw the Reorganized Debtors from applicable state(s).

F.      *Wind-Down Reserve*

On the Effective Date, the Plan Administrator shall establish the Wind-Down Reserve by depositing Cash from the Plan Administrator Assets in the amount of the Wind-Down Amount into the Wind-Down Reserve. The Wind-Down Reserve shall be used by the Plan Administrator solely to satisfy the expenses of the Reorganized Debtors and the Plan Administrator as set forth in the Plan; provided that all costs and expenses associated with the winding up of the Reorganized Debtors and the storage of records and documents shall constitute expenses of the Reorganized Debtors and shall be paid from the Wind-Down Reserve. In no event shall the Plan Administrator be required or permitted to use its personal funds or assets for such purposes. Any amounts remaining in the Wind-Down Reserve after payment of all expenses of the Reorganized Debtors and the Plan Administrator shall promptly be transferred to the Plan Administrator or Reorganized Debtors, as applicable.

**ARTICLE IX.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

A.      *Allowance of Claims*

After the Effective Date, each of the Reorganized Debtors or the Plan Administrator, as applicable, shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim immediately before the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.

B.      *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Reorganized Debtors or the Plan Administrator, as applicable, shall have the sole authority to File and prosecute objections to Claims, and the Reorganized Debtors or the Plan Administrator, as applicable, shall have the sole authority to: (1) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; (2) settle, compromise, or resolve any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or

action, order, or approval by the Bankruptcy Court.  On and after the Effective Date, the Reorganized Debtors, or the Plan Administrator, as applicable, will use commercially reasonable efforts to advance the claims resolution process through estimation or otherwise.

C.      *Estimation of Claims*

Before, on, or after the Effective Date, the Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim pursuant to applicable law, including pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the pendency of any appeal relating to such objection.  Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Claim, such estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions and discharge) and may be used as evidence in any supplemental proceedings, and the Debtors, Reorganized Debtors, or the Plan Administrator, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before seven days after the date on which such Claim is estimated.  Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D.      *Adjustment to Claims Without Objection*

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable, without an objection having to be Filed and without any further notice to, or action, order, or approval of, the Bankruptcy Court.

E.      *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the Claims Objection Bar Date.

F.      *Disallowance of Claims*

Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may

not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the Reorganized Debtors or the Plan Administrator, as applicable.  All Proofs of Claim Filed on account of an indemnification obligation shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to, or action, order, or approval of, the Bankruptcy Court.

**Except as otherwise provided herein or as agreed to by the Reorganized Debtors or the Plan Administrator, as applicable, any and all Proofs of Claim Filed after the Claims Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to, or action, order, or approval of, the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order.**

G.      *Amendments to Claims*

On or after the Bar Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court, the Reorganized Debtors, or the Plan Administrator, as applicable, and any such new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further notice to, or action, order, or approval of, the Bankruptcy Court to the maximum extent provided by applicable law.

H.      *No Distributions Pending Allowance*

If an objection to a Claim or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim, unless otherwise determined by the Reorganized Debtors or the Plan Administrator, as applicable.

I.      *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Reorganized Debtors shall provide to the Holder of such Claim the distribution to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim, without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law or as otherwise provided herein.

## ARTICLE X.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.     *Discharge of Claims and Termination of Interests*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action against any Debtor of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Causes of Action accrued before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim based upon such debt or right is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Any default or "event of default" by the Debtors or their Affiliates with respect to any Claim that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date.   Unless expressly provided in the Plan, the Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

Notwithstanding the requirements of section 1192 of the Bankruptcy Code with respect to confirmation of a plan under section 1191(b) of the Bankruptcy Code, the discharge provision set forth in this Article X.A shall be effective on the Effective Date because the Plan is not income-based and all required Distributions shall be made from the proceeds of the Debtors' sale.

B.     *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

C.     *Release of Liens*

**Except as otherwise specifically provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates**

shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors or the Reorganized Debtors, as applicable.  The DIP Lenders may execute and deliver all documents reasonably requested by the Reorganized Debtors to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall authorize the Reorganized Debtors to file UCC-3 termination statements (to the extent applicable) with respect thereto.

D.    *Debtor Release*

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized Debtors, Plan Administrator, and their Estates from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or Causes of Action, including all direct and derivative claims asserted by or on behalf of the Debtors, that the Debtors, the Reorganized Debtors, Plan Administrator, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, or that any Holder of any Claim or Interest could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part:

(1)    the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Documents;

(2)    any Restructuring Document, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan;

(3)    the Chapter 11 Cases, the Plan, the DIP Loan Documents, the Asset Purchase Agreement or the Plan Sponsor Agreement, the DIP Facility, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities (including the New BCHG Interests) pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or

(4)    the business or contractual arrangements between any Debtor and any Released Party, and any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.

27437196.15

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; provided further that in no event shall anything in this Article X.D be construed as a release of any person's gross negligence, fraud, or willful misconduct, each as determined by a Final Order.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth above, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the releases set forth above are:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the releases set forth above; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after reasonable investigation by the Debtors and after notice and opportunity for hearing; and (6) a bar to any of the Debtors asserting any claim released by the releases set forth above against any of the Released Parties.

E.      *Release by Holders of Claims or Interests*

As of the Effective Date, except as otherwise set forth herein, each Releasing Party is deemed to have released and discharged each Debtor or Reorganized Debtor, as applicable, and other Released Party from any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code) or Causes of Action, including all direct and derivative claims asserted by or on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), including but not limited to those based on or relating to, or in any manner arising from, in whole or in part:

(1)     the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the formulation, preparation, dissemination, negotiation, or filing of the other Restructuring Documents;

(2)     any Restructuring Document, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan;

(3)     the Chapter 11 Cases, the Plan, the DIP Loan Documents, the DIP Facility, the Asset Purchase Agreement or the Plan Sponsor Agreement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or

(4)    the business or contractual arrangements between any Debtor and any Released Party, and any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; provided further that in no event shall anything in this Article X.E be construed as a release of any person's gross negligence, fraud, or willful misconduct, each as determined by a Final Order.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party release set forth above, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the third-party release set forth above is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Releasing Parties; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties asserting any Claim released by the third-party release set forth above against any of the Released Parties.

F.    *Exculpation*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim arising on or after the Petition Date related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the Plan, the DIP Loan Documents, the Asset Purchase Agreement, the Plan Sponsor Agreement, the DIP Facility, or any Restructuring Document, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement.  The Exculpated Parties have, and upon closing of the Chapter 11 Cases or the Effective Date shall be deemed to have with respect to all actions arising on or after the Petition Date, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan; provided that in no event shall anything in this Article X.F be construed as a release of any person's gross negligence, fraud, or willful misconduct, each as determined by a Final Order.

G.    *Injunction*

**Except with respect to the obligations arising under the Plan or the Confirmation Order, and except as otherwise expressly provided in the Plan or the Confirmation Order, all Entities that held, hold, or may hold claims or interests that have been released, discharged, or exculpated pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors or Reorganized Debtors, or the other Released Parties:    (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property of such Entities on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.**

H.    *Protection Against Discriminatory Treatment*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because the Debtors have been debtors under chapter 11 of the Bankruptcy Code, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases), or have not paid a debt that is dischargeable in the Chapter 11 Cases.

I.    *Recoupment*

In no event shall any Holder of a Claim be entitled to recoup against such Claim any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has provided notice of such recoupment in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

J.    *Subordination Rights*

Any distributions under the Plan shall be received and retained free from any obligations to hold or transfer the same to any other Holder and shall not be subject to levy, garnishment,

attachment, or other legal process by any Holder by reason of claimed contractual subordination rights. Any such subordination rights shall be waived, and the Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan.

## ARTICLE XI.
## CONDITIONS PRECEDENT TO
## CONSUMMATION OF THE PLAN

A.    *Conditions Precedent to the Effective Date*

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied (or waived pursuant to the provisions of Article XI.B hereof):

1.    if the Equitization Restructuring occurs, all conditions precedent to the effectiveness of the Plan Sponsor Agreement shall have been satisfied or duly waived;

2.    if the Asset Sale Restructuring occurs, all conditions precedent to the effectiveness of the Asset Purchase Agreement shall have been satisfied or duly waived;

3.    the DIP Claims have been paid indefeasibly in full in cash or the DIP Lenders have consented to alternate treatment, including the equitization of such Claims, in writing;

4.    the Confirmation Order shall have been duly entered and in full force and effect;

5.    the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and each of the other transactions contemplated by the Restructuring;

6.    all Allowed Professional Fee Claims approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such Allowed Professional Fee Claims after the Effective Date shall have been placed in the Professional Fee Escrow Account pending approval of the Professional Fee Claims by the Bankruptcy Court; and

7.    the Debtors shall have implemented the Restructuring Transactions in a manner consistent in all material respects with the Plan.

B.    *Waiver of Conditions*

The conditions to the Effective Date of the Plan set forth in this Article XI may be waived only by consent of the Debtors without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

C.    *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

27437196.15

D.    *Effect of Nonoccurrence of Conditions to the Effective Date*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall:  (1) constitute a waiver or release of any Claims or Interests; (2) prejudice in any manner the rights of the Debtors, any Holders of a Claim or Interest, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

## ARTICLE XII.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.    *Modification and Amendments*

Subject to the limitations contained in the Plan, the Debtors, with the consent of the DIP Lenders and Plan Sponsor or Purchaser, as applicable, reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code.  The Debtors expressly reserve their rights to alter, amend, or modify materially the Plan, with the consent of the DIP Lenders and Plan Sponsor or Purchaser, as applicable, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modifications shall comply with section 1193 of the Bankruptcy Code.

B.    *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.    *Revocation or Withdrawal of the Plan*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date. If the Debtors revoke or withdraw the Plan, or if Confirmation and Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtors or any other Entity, including the Holders of Claims; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XIII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the

Chapter 11 Cases and all matters arising out of or related to the Chapter 11 Cases and the Plan, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, validity, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, validity amount, or allowance of Claims and Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals;

3.      resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Claims pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article VI hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed and assigned or rejected or otherwise; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters,  and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.      adjudicate, decide, or resolve any and all matters related to sections 1141 and 1145 of the Bankruptcy Code;

8.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

9.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10.     resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

27437196.15

12. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in Article X hereof and enter such orders as may be necessary or appropriate to implement or enforce such releases, injunctions, and other provisions;

13. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VII.L.1 hereof;

14. enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15. determine any other matters that may arise in connection with or relate to the Plan, , the Confirmation Order, or the Plan Supplement;

16. adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

17. consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18. determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

20. hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date;

21. enforce all orders previously entered by the Bankruptcy Court in the Chapter 11 Cases;

22. hear any other matter not inconsistent with the Bankruptcy Code;

23. enter an order closing the Chapter 11 Cases;

24. enforce the injunction, release, and exculpation provisions provided in Article X hereof; and

25. enter a final decree closing each of the Chapter 11 Cases.

27437196.15

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect*

Subject to Article XI.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the final versions of the documents contained in the Plan Supplement, and the Confirmation Order, shall be immediately effective and enforceable and deemed binding upon the Debtors or Reorganized Debtors, as applicable, and any and all Holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

B.    *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or advisable to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Reorganized Debtors, as applicable, all Holders of Claims and Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Reservation of Rights*

Before the Effective Date, neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to any Claims or Interests.

D.    *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to, the benefit of any heir, executor, administrator, successor, assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

E.    *Service of Documents*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

27437196.15

the Debtors:    BC Hospitality Group Inc.
205 Hudson Street, Suite 1001
New York, New York 10013
Attn.: Patrick J. Bartels, Jr.

with copies to:

Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, Delaware 19801
Attn.: M. Blake Cleary and Elizabeth S. Justison

After the Effective Date, the Reorganized Debtors shall have the authority to send a notice to parties in interest providing that, to continue to receive documents pursuant to Bankruptcy Rule 2002, such party must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

F.      *Entire Agreement*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

G.      *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above, at the case website maintained by the Voting Agent at https://dm.epiq11.com/case/bychloe, or for a fee via PACER at: https://www.ded.uscourts.gov.

H.      *Nonseverability of Plan Provisions*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified

without the Debtors' or Reorganized Debtors' consent, as applicable; and (3) nonseverable and mutually dependent.

27437196.15

Respectfully submitted, as of the date first set forth above,

BC Hospitality Group Inc. (on behalf of itself and all other Debtors)

By:    /s/ *Patrick J. Bartels, Jr.*
Name: Patrick J. Bartels, Jr.
Title:   Authorized Person

27437196.15

**<u>EXHIBIT A</u>**

**Liquidation Analysis**

**[To be filed]**