

**WILMINGTON**
RODNEY SQUARE

**NEW YORK**
ROCKEFELLER CENTER

**M. Blake Cleary**
P 302.571.6714
F 302.576.3287
mbcleary@ycst.com

February 4, 2021

**Via CM/ECF**

The Honorable Brendan Linehan Shannon
United States Bankruptcy Court for the District of Delaware

    Re:    In re BC Hospitality Group Inc., *et al.*, Case No. 20-13103 (BLS)

Dear Judge Shannon:

    I write on behalf of BC Hospitality Group Inc. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in response to your request for a letter addressing: (1) the precise issue Your Honor should consider pertaining to the Debtors' ownership of the "by Chloe" trademark; and (2) the interplay, if any, between this issue and the corporate governance issues addressed by the Honorable Faith S. Hochberg and the Honorable Jesse M. Furman.

**Relevant Background**

    Debtor BC Hospitality Group LLC ("BCHG LLC") was formed on November 6, 2014 under the name CCSW LLC by Chef Chloe LLC ("Chef Chloe") and ESquared Hospitality LLC ("ESquared"). ESquared and Chef Chloe entered into a Limited Liability Operating Agreement, dated November 7, 2014 (the "Operating Agreement"), to set forth their agreement for the conduct of the business and operation of the company. On the same date, Chloe Coscarelli ("Coscarelli") and CCSW LLC entered into a Name, Face and Likeness Agreement (the "NFL Agreement").

    The first "by CHLOE." restaurant was opened in July 2015. By July 2016, the parties were engaged in arbitration regarding Chef Chloe and Coscarelli's multiple breaches of the Operating Agreement and their common law fiduciary duties, as well as Chef Chloe's gross negligence. In March 2017, an arbitrator entered an award in favor of ESquared and CCSW LLC on these issues and the award was later confirmed by a court. As a result, Chef Chloe was terminated as the service member of CCSW LLC for cause and Coscarelli was terminated as CCSW LLC's manager. In short, Chef Chloe and Coscarelli had a very limited tenure at the company, during which neither of them invested a dime, and they were terminated as a result of bad faith misconduct.

    On March 22, 2017, ESquared purported to exercise its rights under the Operating Agreement to repurchase Chef Chloe's 50% membership interest in CCSW LLC.

    On June 29, 2018, Coscarelli, Chef Chloe, and certain related entities (collectively, the "CC Parties") commenced an action against ESquared and BCHG LLC in the United States District Court for the Southern District of New York (the "SDNY District Court"), Case No. 18-cv-5943, asserting

27675352.9

**Young Conaway Stargatt & Taylor, LLP**
Rodney Square | 1000 North King Street | Wilmington, DE 19801
P  302.571.6600    F  302.571.1253    YoungConaway.com

Young Conaway Stargatt & Taylor, LLP
Page 2

twenty-one (21) counts ranging from breach of contract and unjust enrichment to federal trademark and cyber piracy violations. Coscarelli and Chef Chloe also sought a preliminary injunction preventing ESquared and BCHG LLC from launching or participating in packaged retail food sales under the "by Chloe." name, alleging that such sales breached both the Operating Agreement and the NFL Agreement.

On January 31, 2019, Judge Jesse L. Furman of the SDNY District Court denied Coscarelli and Chef Chloe's request for a preliminary injunction because they failed to demonstrate a likelihood of success on the merits that the NFL Agreement or the Operating Agreement had been breached. *Coscarelli*, 364 F. Supp. 3d at 223-26. Judge Furman specifically addressed the ownership of the By Chloe Mark and held that "by virtue of the Operating Agreement, CCSW owns the By Chloe Mark (or, more specifically, the By Chloe Word Mark), and thus its use, for whatever purpose, does not implicate Coscarelli's rights under the NFL Agreement." *Id.* Judge Furman reached this conclusion after analyzing the plain language of the Operating Agreement and the NFL Agreement, which clearly distinguished the By Chloe Mark, which is owned by BCHG LLC, from the NFL Rights (as defined in the NFL Agreement), which are owned by Coscarelli.

Following this decision, certain of the counts in the CC Parties' complaint pertaining to Chef Chloe were submitted to arbitration before Judge Hochberg, including Chef Chloe's request for a declaratory judgment that it owned 50% of the membership interests in BCHG LLC. Ultimately, the arbitrator issued an award in favor of Chef Chloe on this issue and awarded Chef Chloe attorneys' fees.

On January 27, 2021, Judge Furman entered an order confirming the arbitration award in part solely against non-debtor ESquared. Specifically, Judge Furman confirmed the arbitrator's liability finding that ESquared's purported repurchase of Chef Chloe's membership interest was invalid and the attorneys' fee award against ESquared. Judge Furman did not confirm the attorney's fee award against Debtor BCHG LLC and he did not confirm the arbitrator's remedy of reinstating Chef Chloe's membership interest in Debtor BCHG LLC because he concluded that a decision on that issue would violate the automatic stay.

**Issue 1 – The Court's ruling on February 25, 2021 should be narrowly tailored to address the most critical question implicated by the Debtors' sale transaction.**

To avoid wasting judicial resources and squandering the limited assets of the Debtors' estates, the Debtors submit that the Court's ruling at the February 25, 2021 hearing should be limited to the following issue:

> By virtue of the Operating Agreement, does BCHG LLC (f/k/a CCSW LLC) unconditionally own the Company IP (as defined in the Operating Agreement) for use by or in connection with the ownership and/or management and/or licensing and/or franchising of "fast casual" vegan restaurants, such that BCHG LLC may sell the Company IP free and clear pursuant to sections 363 and 1123 of the Bankruptcy Code?

The Debtors further submit that Your Honor can decide the above issue based solely on the plain language of the Operating Agreement and the NFL Agreement without any consideration of extrinsic evidence. *See, e.g.*, Operating Agreement § 4.3 ("[CCSW LLC] shall be deemed the owner of the Company IP."); NFL Agreement § 1(b) ("All rights in and to the By Chloe Mark are reserved by [CCSW LLC] as stated in the Operating Agreement.").

27675352.9

Young Conaway Stargatt & Taylor, LLP
Page 3

      Following hours of conversations with counsel to Coscarelli and Chef Chloe, their position seems to be that the following language in Section 4.4(a) of the Operating Agreement may be ambiguous: "[CCSW LLC] shall own all right, title and interest in and to the By Chloe Mark, including the right to register the By Chloe Mark with the U.S. Patent & Trademark Office, **subject to the terms and conditions of this Operating Agreement and the NFL License Agreement**[.]" (emphasis added).

      The Debtors, and Judge Furman, disagree that there is any ambiguity in this language. Rather, both the Operating Agreement and the NFL Agreement expressly acknowledge BCHG LLC's ownership of the By Chloe Mark. Thus, even if the NFL Agreement was terminated, as counsel to Chef Chloe and Coscarelli allege, BCHG LLC's ownership of the By Chloe Mark would not be affected. As Judge Furman explained, "CCSW received limited rights to use Coscarelli's name, face, and likeness; Coscarelli retained the rest; and separate from these NFL Rights was the By Chloe Mark, which CCSW owns outright." *Coscarelli*, 364 F. Supp. 3d at 224.

      Coscarelli's counsel indicates that the inclusion of the name "Chloe" in the By Chloe Mark means that the By Chloe Mark is an NFL Right. The plain language of the NFL Agreement and the Operating Agreement, which repeatedly emphasize the distinction between the NFL Rights and the By Chloe Mark, contradict this interpretation. *See, e.g.,* Operating Agreement § 4.1 (defining "Approved Project" to mean "any project related to the food and beverage industry that utilizes one or more of **the NFL Rights *or* the By Chloe Mark**, and which has been pre-approved in writing by [Chef Chloe].") (emphasis added); Operating Agreement § 4.4 ("The parties acknowledge and agree that the By Chloe Mark incorporates CC's first name, and that nothing in this Agreement is intended to bestow upon the Company any rights to CC's NFL Rights (as defined in the NFL License Agreement), except as permitted herein and the NFL License Agreement."); NFL Agreement § 1(b) ("Notwithstanding anything contained in this Agreement or the Operating Agreement to the contrary in connection with the By Chloe Mark, and for the avoidance of doubt, (i) any rights not specifically granted to Licensee hereunder or under the Operating Agreement remain the sole and absolute right and ownership of Licensor, and (ii) **Licensor shall retain the right to use the NFL Rights in any way whatsoever except in connection with the By Chloe Mark**, including but not limited to in connection with cooking shows, demonstrations, appearances, blogs and cookbooks and packaged foods and beverages, except as set forth pursuant to the terms of the Operating Agreement. **All rights in and to the By Chloe Mark are reserved by the Company as stated in the Operating Agreement**.").

      Chloe's attempts to conflate the NFL Rights and the By Chloe Mark simply because her first name is "Chloe" go too far. Put simply, Coscarelli does not own the name "Chloe". Chloe is a common name used by many other brands (Chloé, See by Chloé, etc.). In fact, there is even another restaurant named "Chloe" in Washington, D.C. that was awarded a Michelin star in 2020.[1] This dispute is not about the ownership of Coscarelli's name – it is about the ownership of the Debtors' name.

      To be clear, the Debtors are not asking Your Honor to rule that they are entitled to unlimited use of the Company IP. They only seek a ruling that they may sell the Company IP for use in "fast casual"

---

[1] CHLOE, http://restaurantchloe.com/ (last visited Feb. 4, 2021).

27675352.9

Young Conaway Stargatt & Taylor, LLP
Page 4

vegan restaurants because the ability to sell the Company IP in this manner is a threshold issue for the consummation of a sale and chapter 11 plan.

The Debtors submit that using the hearing on February 25, 2021 to address this narrow issue is the best use of the Debtors' limited resources, before undertaking expensive and time-consuming discovery that may ultimately prove unnecessary. Should Your Honor disagree with the Debtors and determine that the underlying contracts are ambiguous, a trial could be scheduled following an adequate discovery period.

**Issue 2 – There is no interplay between the above issue and the corporate governance issues considered by Judge Hochberg and Judge Furman.**

Judge Hochberg's arbitration award did not address the ownership of the Company IP and, accordingly, neither the arbitration award nor Judge Furman's order partially confirming the arbitration award impact the issue set forth above. Moreover, Judge Furman did not confirm the portion of the arbitration award reinstating Chef Chloe's membership interest in BCHG LLC.

However, Judge Hochberg did consider the scope of the permitted usage of the By Chloe Mark in the arbitration award. In her analysis, she made several statements indicating that BCHG LLC owns the By Chloe Mark and may use the By Chloe Mark in connection with "fast casual" vegan restaurants without Coscarelli's consent. First Partial Final Award, at 26 ("**[Coscarelli] must abide by the deal that she made with [CCSW LLC] to continue to use her first name as the name of the fast casual vegan restaurant**, but likewise [CCSW LLC] must abide by the terms of the deal that it struck with Chef Chloe not to expand the use [of] the trademark beyond fast casual restaurants without getting her pre-approval.") (emphasis added); First Partial Final Award, at 29 ("Upon termination as Service Member, Chef Chloe has lost her right to be involved in the running, menu selections, and restaurant design of **the restaurants that will forever have her name above the doorway**, but she still has the right to control any new broader, or potentially insulting uses of the trademark that still bears her name, as she pursues her own future as a vegan chef.") (emphasis added); First Partial Final Award, at 31 ("The Arbitrator grants Chef Chloe's request to permanently enjoin CCSW from using the By Chloe Mark or the NFL Rights on any projects (including retail goods), other than vegan fast casual restaurants, without Chef Chloe's consent, pursuant to the terms of the Operating Agreement Section 4.1.").

**Conclusion**

The Debtors are actively engaged in a marketing process and must address the narrow issue set forth above before the sale hearing scheduled for March 4, 2021. The Debtors respectfully submit that the ownership of the Company IP can be readily determined from the plain language of the Operating Agreement and the NFL Agreement, obviating the need for the consideration of any extrinsic evidence or any time-consuming and expensive discovery. Accordingly, the Debtors respectfully request that the Court limit the scope of the hearing on February 25, 2021 to the narrow issue set forth above.

Sincerely,

*/s/ M. Blake Cleary*

M. Blake Cleary