# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BC HOSPITALITY GROUP INC., *et al.*,<br><br>Debtors.[1] | Chapter 11 (Subchapter V)Case No.<br><br>Case No. 20-13103 (BLS)<br><br>(Joint Administered)<br><br>**Hearing Date: March 11, 2021 at 10:00 a.m. ET**<br><br>**Re: D.I. 303** |

**OBJECTION OF CREDITORS CHLOE COSCARELLI, CHEF CHLOE, LLC, CC HOSPITALITY HOLDINGS LLC AND CKC SALES, LLC TO PROPOSED ORDER (I) APPROVING ASSET PURCHASE AGREEMENT, (II) AUTHORIZING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF**

---

Creditors Chloe Coscarelli, Chef Chloe LLC, CC Hospitality Holdings LLC and CKC Sales LLC (collectively, "<u>Chloe</u>") submit this objection to the Debtor's proposed order approving the asset purchase agreement with the Buyer (D.I. 303).[1] In furtherance of the Objection, Chloe respectfully states as follows:

### Preliminary Statement

1. The Buyer is a consortium of flush private equity firms that manage hundreds of billions of dollars. The Buyer is also the same Investor Group that invested over $30 million in the By Chloe company several years ago in 2018 and 2019. The Buyer/Investor Group made

---

[1] Capitalized terms used herein and not otherwise defined have the meanings set forth in the *Proposeed Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of the Debtors' Assets Free and Clear of All Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*, if defined therein.

76436394.1

this investment despite Chloe's disclosure to its members, Bain Capital and Kitchen Fund, that she remained a 50% owner in the company.

2. The Buyer/Investor Group have since tried to use this bankruptcy proceeding as a means to eliminate the company's longstanding litigation with Chloe.

3. For years now, Chloe has fought against the company's unlawful misconduct and wanton disregard of her rights as the founder of By Chloe.

4. The Buyer/Investor Group have since tried to leverage the global pandemic as a means to end Chloe's due process and access to justice rights. No evidence exists that the Buyer/Investor Group would not have continued to invest in the company to continue operations and protect its sizeable investment.

5. As set forth below, Chloe specifically objects to the Proposed Order on the Sale because (1) she did not receive full and fair notice and a fair opportunity to object; (2) she objects to the "royalty-free" license to the By Chloe Mark, which (a) she did not approve, (b) is not subject to the terms and conditions of the Operating and NFL Agreements, and (c) the Debtor is not authorized to provide; (3) she objects to any releases to the Buyer/Investor Group that impair or affect any of Chloe's rights or claims; and (4) she asks for a stay pending appeal if her objections are not sustained.

**Factual Background**

6. **Chloe.** Chloe has earned recognition as "America's favorite vegan chef." She attended culinary school at the prestigious National Gourmet Institute in New York City, and received a plant-based nutrition degree from Cornell University. Before culinary school, Chloe worked a variety of restaurant jobs, ranging from bussing to hosting to dishwashing, while she obtained her college degree at UC Berkley. At age 22, she appeared on—and won—Food Network's hit television competition, Cupcake Wars.

76436394.1

7. After Cupcake Wars, mainstream America started to appreciate Chloe and her talent. The New York Times published its first feature article about Chloe and her success as a vegan chef. Chloe published three cookbooks with Simon & Schuster (Chloe's Kitchen; Chloe's Vegan Italian Kitchen; and Chloe's Vegan Desserts)—all which appeared on Amazon's best-seller list. And Woman's World featured Chloe on its cover and in a high-profile article.

8. Chloe is the founder of by Chloe. She conceived of the concept and all the recipes for By Chloe.

9. **ESquared Hospitality.** Chloe partnered with ESquared Hospitality—a hospitality company—to launch by Chloe. James Haber was the CEO of ESquared Hospitality.

10. **The Litigation.** Chloe (through her entity, Chef Chloe LLC) and ESquared Hospitality formed CCSW LLC as 50/50 equity partners. After the initial smash success of by Chloe, the business relationship between Chloe and Haber soured. Haber conspired with his daughter to "milk" Chloe's name "till we can't!" Haber and Wasser also conspired to seize Chloe's 50% ownership interest in the company she founded.

11. Following an arbitration, Haber tried to execute this scheme to seize Chloe's 50% ownership interest for zero dollars. The next day ESquared Hospitality contacted Bain Capital to use that seizure to raise capital for the company. Put differently, ESquared Hospitality tried to sell Chloe's ownership in the company to investors, which ESquared Hospitality unlawfully seized from her.

12. Chloe disputed the purported seizure. She disputed the seizure with ESquared Hospitality shortly after receiving the purported repurchase letter. And when Bain Capital and Kitchen Fund continued to pursue their investment, Chloe informed them that she would pursue litigation that she remained a 50% owner. Bain and Kitchen Fund—along with several

other investors—disregarded this concern and proceeded with their investment. The Investor Group invested over $30 million for essentially Chloe's 50% interest in the company in 2018.

13. After a comprehensive Final Hearing, the Honorable Faith S. Hochberg issued her Partial Final Award in May 2020 that found the purported repurchase of Chloe's 50% interest ineffective and restored Chef Chloe as a 50% owner. Yet the Company—controlled by a Board of Directors with representatives from Bain, Kitchen Fund, and ESquared Hospitality—refused to comply with Judge Hochberg's order to reestablish Chloe's 50% interest. Judge Hochberg issued her Final Award in September 2020.

14. In late November 2020, the Honorable Jesse M. Furman of the Southern District of New York ordered the Final Award unsealed, making it available to the public. Just weeks later, the Company filed this petition for bankruptcy.

## Objections to the Proposed Order

**Chloe Objects to the Proposed Order Because She Received Inadequate Notice**

15. The Debtors filed the Proposed Order late in the afternoon on March 9, 2021. Chloe had no notice of the terms of the Proposed Order before this filing, and specifically, with regard to the terms of the "royalty-free" license.

16. The Proposed Order and Asset Purchase Agreement exceeds 100 pages.

17. The hearing on this proposed sale is scheduled to take place less than 48 hours after Chloe first received the Proposed Order and Asset Purchase Agreement. Yet under the terms of the Bidding Order, creditors were set to have 5 business days' notice to review and object to terms of a proposed asset purchase agreement or transaction. The Debtors' Proposed Order and Sale does not comply with the Bidding Order, providing far less than the 5 business days' notice provide for therein. *See* Dkt. 102 ¶ 6.

18. Chloe requested that the Debtors adjourn the hearing from Thursday, March 11, 2021 until Tuesday, March 16, 2021, so Chloe could fully review and consider the dense terms and conditions in the Proposed Order and Asset Purchase Agreement. The Debtors and the Buyers/Investor Group have refused to this short extension.

19. Chloe therefore objects to the Proposed Order because she has not received adequate time to review and object to the terms and conditions of the Proposed Order, or otherwise protect her rights.

**The Company May Not Grant a 6-Month License of the By Chloe Mark to the Buyers**

20. Chloe objects to the Sellers' attempt to license the By Chloe Mark to the Buyers/Investor Group for six months after the sale. The Debtors have no right to license the By Chloe Mark for a royalty-free, six-month period. Such a license does not protect Chloe's rights and interests, as this Court has previously ordered. Indeed, this proposal is an end run around the Court's previous order, and it does not work. Here is why.

21. This Court has confirmed that any rights the Debtor has in the By Chloe Mark are subject to the terms and conditions of the Operating Agreement and NFL Agreement. The Debtor's proposed order that includes a royalty-free license to the Buyers/Investor Group to use the By Chloe Mark does not honor this conclusion.

22. Section 4.3(e) of the Operating Agreement also restricts and limits the company's ability to license its intellectual property:

> Unless otherwise agreed to by the unanimous consent of the Members, exploitation of the Concept shall be done only through the Company. "Exploitation of the Concept" includes owning, managing, licensing, consulting with and/or franchising Restaurants (as owner, manager, licensor, consultant or franchisor, respectively) and engaging in the Approved Projects. Nothing in this paragraph prohibits the Company or its subsidiaries from licensing or sublicensing the Concept, the NFL Rights, the Company

>IP, ESquared Pre-Existing IP and CC Entity Pre-Existing IP to third parties on terms acceptable to the Managers in connection with Restaurants and Approved Projects **provided that 100% of the economics of such transactions flow to the Company**, except (i) as specifically set forth herein, (ii) as set forth in the NFL License Agreement, (iii) as set forth in an Approved Financing, (iv) as agreed by CC Entity in connection with an Approved Project or (v) if unanimously agreed to by the Members.

The plain language prevents the Company from licensing intellectual property unless 100% of the economics flow to the Company.

23. The proposed "royalty-free" license violates this provision. Indeed, there are no economics to a "royalty-free" license, and even so, nothing flows back to the Company.

24. In addition, the Debtor has no rights to license the By Chloe Mark because the NFL Agreement was terminated in March 2018. Put differently, because the Company's interest in the By Chloe Mark was subject to the NFL Agreement, and the NFL Agreement is terminated, then the Company has no rights to license to the Buyer.

25. Chloe also objects because no version of any actual license has been provided to her.

26. The proposed license suffers from other deficiencies as well. To start, while purporting to be limited only to six months, the proposal also states the license is "perpetual." The proposal is also improper because it seeks to make the license "transferable," sublicensable," and "worldwide." Chloe objects to this language.

27. Chloe also objects to the vague limitation that the Buyers/Investor Group will only use the By Chloe Mark "consistent with Sellers' past usage of the Licensed IP." Dkt. 303-1 ¶ 11. Chloe has proven that the Company's past usage includes improper sales of retail products. Feb. 25, 2021 Hr. Chloe Ex. 20. Chloe objects to this language for this reason as well.

28. Chloe objects to the proposed injunction as well. Chloe has received less than 48 hours' notice of this proposed injunction before the Hearing. Chloe's Due Process rights cannot

be honored with any injunction under these circumstances. The Court should not enter any injunction as a result. Nor should this Court retain exclusive jurisdiction to resolve any disputes that arise from it. At minimum, other federal courts should maintain concurrent jurisdiction, especially as this provision pertains to a federal trademark and other aspects of Chloe's rights of publicity. Indeed, the Southern District of New York is already presiding over claims relating to the subject matter. Chloe objects to any injunction that would affect or impact her right to pursue any claims in that court, or her ability to join new claims to that pending litigation over related subject matter.

29.     Finally, Chloe objects to the improper characterizations of the "Seller's exclusive ownership of the Licensed IP." Dkt. 301-1 ¶ 11. This is wrong for many reasons and should be excluded. First, the Court has held that any rights in the By Chloe Mark are limited by the terms and conditions of the Operating and NFL Agreements. Any such conditional rights are not "exclusive ownership." Second, "Licensed IP" is broader than just the By Chloe Mark. For instance, it includes the domain names "chefchloecoscarelli.com" and "chloecoscarellinyc.com," among many other domains that the company never had any rights to in the first instance. Dkt. 303-1 at 98.

30.     Chloe objects in full to the proposed license.

**The Court Should Not Grant the Buyer/Investor Group Any Releases**

31.     Chloe objects to the proposed releases.

32.     No release of the Buyer/Investor Group that could in any way impair or affect any of Chloe's claims or rights is appropriate. The Buyer/Investor Group consists of pre-petition equity investors in the Debtors who provided post-petition financing to protect their investment and interests in order to then position themselves to acquire the Company through bankruptcy. Further, the Buyer/Investor Group has used its position and effective control of

the Debtors, whether directly or indirectly, pre-petition and post-petition, to pursue and advance its own interests to the detriment of Chloe, among others. Indeed, there is no evidence that the Investor Group would not have made the DIP Financing to protect its original $30 million investment, except for Chloe's pending litigation claims. Accordingly, there is no basis for the release of the Buyers/Investor Group.

33. At minimum, Chloe asks for the following modification to avoid any ambiguity that no claim of hers or any affiliated entity is released: "For the avoidance of doubt, nothing in this order exculpates or releases any claim (known or unknown) that Chloe, Chef Chloe, CC Hospitality Holdings LLC, CKC Sales LLC, or any affiliated entity has against the Buyer, including any of its members, partners, employees, affiliates, successors, assigns, advisors, or representatives."

### Request for Stay Pending Appeal

34. Should the Court enter the Proposed Order, Chloe requests that the Court issue a stay pending appeal. Bankruptcy Rule 8005 contemplates a stay pending appeal of a Bankruptcy Court's order. *See* Fed. R. Bankr. P. 8005. Under Rule 8005, a stay pending appeal is appropriate to "maintain the status quo." *See KOS Pharm. Inc. v. Andrx Corp.,* 369 F.3d 700, 708 (3d Cir. 2004). In bankruptcy cases, myriad circumstances can occur "that would necessitate the grant of a stay pending appeal in order to preserve a party's position." *In re Highway Truck Drivers & Helpers Local Union #107,* 888 F.2d 293, 298 (3d Cir. 1989).

35. The issues raised in these objections are material and should be heard on appeal if the Proposed Order is adopted. Without the stay, the Debtors may consummate the Sale while an appeal is pending, potentially rendering the appeal "equitably moot." In the near term, however, a stay will not harm the Estates. Accordingly, if the Court enters the Proposed Order, a stay should issue as well.

76436394.1

**Reservation of Rights**

36. Chloe reserves all rights with respect to the Debtors' Proposed Order, including without limitation Chloe's rights to supplement or amend this Objection in advance of the hearing to approve the Sale.

## Conclusion

Chloe respectfully requests that the Court (i) continue the hearing from March 11, 2021 to March 16, 2021; (ii) deny the Sale under the terms in the Proposed Order; (iii) deny the Debtors' proposed "royalty-free" license; (iv) deny the Debtors' proposed releases; and (v) absent amendments to the Proposed Order, grant a stay pending appeal if Chloe's objections are not sustained.

*[The remainder of this page intentionally left blank.]*

Dated: March 10, 2021

Respectfully submitted,

/s/ Mette H. Kurth

Mette H. Kurth (DE Bar No. 6496)
CULHANE MEADOWS, PLLC
4023 Kennett Pike #165
Wilmington, Delaware 19807
Telephone:(302) 660-8331
Email: mkurth@cm.law

 /s/ Patrick M. Arenz
Ronald J. Schutz (admitted *pro hac vice*)
Patrick M. Arenz (admitted *pro hac vice*)
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone:  (612)  349-8591
rschutz@robinskaplan.com
parenz@robinskaplan.com

James P. Menton, Jr. (admitted *pro hac vice*)
2049 Century Park East, Suite 3400
Los Angeles, California 90067
sgautier@robinskaplan.com

*Counsel for Chloe Coscarelli, Chef Chloe LLC, CC Hospitality Holdings LLC and CKC Sales, Inc.*

76436394.1