## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>BC HOSPITALITY GROUP INC., *et al.*,<br><br>Debtors.[1] | Chapter 11 (Subchapter V)<br><br>Case No. 20-13103 (BLS)<br><br>(Jointly Administered) |

## ORDER (I) APPROVING ASSET PURCHASE AGREEMENT, (II) AUTHORIZING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") pursuant to sections 105(a), 363, 365, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order authorizing the Debtors to conduct a marketing process for plan sponsors or purchasers of the Debtors' assets and to sell the Debtors' assets or equity through a chapter 11 plan or through a sale under section 363 of the Bankruptcy Code; and this Court having entered that certain *Order (I) Approving the Bidding Procedures, (II) Scheduling the Bid Deadline and the*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: BC Hospitality Group Inc. (8766); BC Hospitality Group LLC (9360); BC International LLC (1356); BC Commissary NJ LLC (0230); E2 185 Bleecker LLC (6862); E2 60 West 22nd Street LLC (9567); E2 Lafayette LLC (7419); BC Williamsburg LLC (8277); BCRC LLC (7297); CW SSS LLC (9958); BC Union Square LLC (5172); BC 1385 Broadway LLC (2138); BC 630 Lexington LLC (3202); CCSW Fenway LLC (5517); E2 Seaport LLC (9720); BC Back Bay LLC (0550); BC Providence LLC (0737); BC Silver Lake LLC (2825); BC Century City LLC (0901); and BC West Hollywood LLC (3878). The Debtors' mailing address is 205 Hudson Street, Suite 1001, New York, New York 10013.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the APA (as defined herein), or to the extent not defined therein, the Bidding Procedures Order (as defined herein).

*Auction, (III) Approving the Form and Manner of Notice Thereof, and (IV) Granting Related Relief* [Docket No. 102] (the "Bidding Procedures Order"); and the Debtors having received no bids for a chapter 11 plan transaction; and upon consideration of the Debtors' proposed order (this "Sale Order") (a) authorizing and approving that certain Asset Purchase Agreement (the "APA," a copy of which is attached hereto as **Exhibit 2**), dated as of March 9, 2021, between BC Hospitality Group Inc., BC Hospitality Group LLC, BC International LLC, BC Commissary NJ LLC, E2 185 Bleecker LLC, E2 60 West 22nd Street LLC, E2 Lafayette LLC, BC Williamsburg LLC, BCRC LLC, CW SSS LLC, BC Union Square LLC, BC 1385 Broadway LLC, BC 630 Lexington LLC, CCSW Fenway LLC, E2 Seaport LLC, BC Back Bay LLC, BC Providence LLC, BC Silver Lake LLC, BC Century City LLC, and BC West Hollywood LLC (collectively, the "Sellers") and the buyer parties to the APA (collectively, with any designee thereof in accordance with the APA, the "Buyer"), (b) approving the sale of the Purchased Assets pursuant to the APA, (c) approving the assumption and assignment of certain executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code, (d) authorizing the Debtors to consummate transactions related to the APA, and (e) granting other related relief; and the Debtors having determined that the highest or otherwise best offer for the Purchased Assets was made by Buyer pursuant to the APA; and upon consideration of the declaration of Michael Mortell [Docket No. 306] (the "Mortell Declaration") and the declarations of Patrick J. Bartels, Jr. [Docket Nos. 307 & 312]; and this Court having conducted hearings on March 11, 2021 and March 16, 2021 (together, the "Sale Hearing"), at which time all parties in interest were offered an opportunity to be heard with respect to the sale of the Purchased Assets to the Buyer pursuant to the APA (the "Sale"), to consider the approval of the Sale pursuant to the terms and conditions of the APA, and this Court having considered (i) the Motion and any objections thereto, (ii) the Sale and any objections thereto, (iii) the

arguments of counsel made, and evidence adduced, related thereto, and (iv) the full record in these chapter 11 cases, including the record related to the hearing to consider the Bidding Procedures Order and the Sale Hearing held before this Court; all parties in interest having been heard, or having had the opportunity to be heard, regarding the approval of the APA and the Sale and other transactions contemplated by the APA; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; it is hereby **FOUND, CONCLUDED, AND DETERMINED THAT**:[3]

A.      The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these chapter 11 cases pursuant to Bankruptcy Rule 9014.

B.      To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.      This Court has jurisdiction over the Motion and over the property of the Debtors, including the Purchased Assets to be sold, transferred, and conveyed pursuant to the APA, pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of these chapter 11 cases and the Motion in this District and Court is proper under 28 U.S.C. §§ 1408 and 1409.

D.      This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Court finds that there is no just

---

[3]      All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to this Sale Order are hereby incorporated herein to the extent not inconsistent herewith.

reason for delay in the implementation of this Sale Order, and directs entry of judgment as set forth herein.

      E.      The Purchased Assets constitute property of Sellers' bankruptcy estates and title thereto is vested in Sellers' bankruptcy estates within the meaning of section 541(a) of the Bankruptcy Code.

      F.      The statutory bases for the relief provided for herein are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

      G.      On December 14, 2020 (the "Petition Date"), each of the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code and elected to proceed under Subchapter V of the Bankruptcy Code.  Since the Petition Date, the Debtors have continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

      H.      This Court previously entered the Bidding Procedures Order:  (i) establishing bidding and auction procedures; (ii) scheduling the Auction (if necessary) and the Sale Hearing to consider the sale of the Purchased Assets, to the extent set forth in the Bidding Procedures Order; (iii) establishing procedures for noticing and determining Cure Costs related to the Sellers' executory contracts and unexpired leases, which procedures were set forth in the Debtors' proposed chapter 11 plan [Docket No. 169], the *Notice of Potential Assumption of Executory Contracts and Unexpired Leases and Cure Claims* [Docket No. 226] and the *Amended Notice of Potential Assumption of Executory Contracts or Unexpired leases and Cure Claims* [Docket No. 230]; (iv) approving the form and manner of notice of all procedures, protections, schedules, and agreements; (v) specifically contemplating that the Debtors could seek approval of the Sale pursuant to section 363 of the Bankruptcy Code at any hearing scheduled to confirm the Debtors'

proposed chapter 11 plan (*see* Paragraph 17 of the Bidding Procedures Order); and (vi) granting certain related relief.

      I.      As evidenced by the affidavits of service previously filed with the Court [Docket Nos. 104, 205, 211, 217, 240, 253, 271 & 311], and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Auction, the Sale, the assumption and assignment of the executory contracts and unexpired leases to be assumed and assigned to Buyer at Closing pursuant to this Sale Order and the APA (collectively, the "Assigned Contracts"), and the designation of the Buyer as the winning bidder has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9007, and in compliance with the Bidding Procedures Order, to each party entitled to such notice, including, as applicable:  (a) the Office of the United States Trustee for the District of Delaware; (b) the Subchapter V Trustee; (c) holders of the twenty (20) largest unsecured claims on a consolidated basis against the Debtors; (d) counsel to the Debtors' post-petition lenders; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) the Office of the United States Attorney General for the District of Delaware; (h) all entities known to have expressed an interest in a transaction with respect to some or all of the Debtors' assets during the past six months; (i) all entities known to have asserted any interest in or upon any of the Debtors' assets; (j) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by this Motion; (k) known counterparties to any unexpired leases or executory contracts that could potentially be assumed and assigned to the Winning Bidder; and (l) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  The notices

described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale, and the Sale Hearing is, or shall be, required.

J.      The Debtors have articulated good and sufficient reasons for this Court to grant the relief provided for herein.

K.      The *Notice of Entry of Order (I) Approving the Bidding Procedures, (II) Scheduling the Bid Deadline and the Auction, (III) Approving the Form and Manner of Notice Thereof, and (IV) Granting Related Relief* [Docket No. 104] and the *Notice of (I) Hearing to Consider Confirmation of the Joint Chapter 11 Plan of BC Hospitality Group Inc. and Its Debtor Affiliates and (II) Related Voting and Objection Deadlines* [Docket No. 175] provided all interested parties with timely and proper notice of the Sale, the Sale Hearing, and the Auction, including the Debtors' ability to seek approval of the Sale pursuant to section 363 of the Bankruptcy Code at the Sale Hearing.

L.      The disclosures made by the Debtors in the Motion, the Sale Notice, and related documents filed with the Court concerning the APA, the Auction, the Sale, and the Sale Hearing were good, complete, and adequate.

M.      The Bidding Procedures set forth in the Bidding Procedures Order were non-collusive, proposed and executed in good faith as a result of arms'-length negotiations, and were substantively and procedurally fair to all parties.

N.      As set forth in the Mortell Declaration, the Debtors conducted the sale process in accordance with, and have otherwise complied in all respects with, the Bidding Procedures Order. The sale process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any entity to make a higher or otherwise better offer to purchase the Purchased Assets.

O.      The terms contained in the APA constitute the highest and best offer for the Purchased Assets and will provide a greater recovery for the Sellers' estates for the Purchased Assets than would be provided by any other available alternative.  The Sellers' determination that the APA constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Sellers' business judgment.

P.      The APA and the Sale contemplated thereby represent a fair and reasonable offer to purchase the Purchased Assets under the circumstances of these chapter 11 cases.  No other entity or group of entities has presented a higher or otherwise better offer to the Sellers to purchase the Purchased Assets for greater economic value to the Sellers' bankruptcy estates than Buyer.

Q.      Approval of the Motion and the APA and the consummation of the Sale contemplated thereby is in the best interests of the Debtors, their creditors and estates, and other parties in interest in these chapter 11 cases.

R.      The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale of the Purchased Assets because, among other reasons, (i) the APA constitutes the highest and best offer for the Purchased Assets, (ii) the APA and the closing thereon will present the best opportunity to realize the value of the Purchased Assets, and (iii) any other transaction would not have yielded as favorable an economic result.

S.      The Buyer is purchasing the Purchased Assets in good faith and is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code and therefore is entitled to the full protections of that provision, and otherwise has proceeded in good faith in all respects in connection with these chapter 11 cases in that:  (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (ii) the Buyer complied with the provisions in the Bidding Procedures Order; (iii) the Buyer agreed to subject its bid to the

competitive bidding procedures set forth in the Bidding Procedures Order; (iv) all payments to be made by Buyer and other agreements or arrangements entered into by Buyer in connection with the Sale have been disclosed; (v) the Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (vi) the negotiation and execution of the APA, including the Sale contemplated thereby, were at arms'-length and in good faith.

T.    The APA and the transactions contemplated thereby cannot be avoided under section 363(n) of the Bankruptcy Code.  The Debtors and the Buyer and the Buyer's agents, representatives and affiliates have not engaged in any conduct that would cause or permit the APA or the consummation of the transactions contemplated thereby to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

U.    The consideration provided by Buyer pursuant to the APA:  (i) is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia (including the Uniform Fraudulent Transfer Act); (ii) is fair consideration under the Uniform Fraudulent Transfer Act; (iii) is reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States, any state, territory, or possession thereof, or the District of Columbia; and (iv) will provide a greater recovery for the Debtors' creditors than would be provided by any other reasonably practicable available alternative.

V.    By consummating the Sale, the Buyer is not a mere continuation of Sellers or any other Debtor or any Debtor's bankruptcy estate, and there is no continuity, no common identity, and no continuity of enterprise between the Buyer and any Debtor.  Buyer is not a successor to any Debtor or any Debtor's estate by reason of any theory of law or equity, and the Sale does not amount to a consolidation, merger, or de facto merger of Buyer or any of the Debtors.  Neither

Buyer nor any of its agents, representatives or affiliates shall assume or in any way be responsible for any obligation or liability of any Debtor (or any affiliates thereof) and/or any Debtor's estate except as expressly provided in this Sale Order or the APA.

W.     The Sale neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization of the Debtors.  The Sale does not constitute a *sub rosa* plan.

X.     The Debtors, acting by and through their existing agents, representatives, and officers, have full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, and the Debtors require no further consents or approvals to consummate the Sale contemplated by the APA, except as otherwise set forth in the APA.

Y.     The transfer of each of the Purchased Assets to the Buyer will be as of the Closing Date a legal, valid, and effective transfer of such assets, and vests or will vest the Buyer with all right, title, and interest of Seller to the Purchased Assets free and clear of all Interests or Claims (as defined below) accruing, arising or relating thereto any time prior to the Closing Date, unless otherwise assumed in, or permitted by, the APA.

Z.     The Sellers may sell the Purchased Assets free and clear of all Interests or Claims against Sellers, their bankruptcy estates, or any of the Purchased Assets (unless otherwise assumed in, or permitted by, the APA) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Interests or Claims against the Sellers, their bankruptcy estates, or any of the Purchased Assets who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of such Interests or Claims who did object fall within one or more of the other subsections of section 363(f) and are

adequately protected by having their Interests or Claims, if any, in each instance against the Sellers, their bankruptcy estates, or any of the Purchased Assets, attach to the cash proceeds of the Sale ultimately attributable to the Purchased Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force, and effect that such creditor had prior to the Sale, subject to any claims and defenses that the Sellers may possess with respect thereto.

AA.     If the Sale were not free and clear of all Interests or Claims (except as otherwise assumed in, or permitted by, the APA), or if the Buyer would, or in the future could, be liable for any of the Interests or Claims (except as otherwise assumed in, or permitted by, the APA), the Buyer would not have entered into the APA and would not consummate the Sale, thus adversely affecting the Debtors and their bankruptcy estates and creditors.

BB.     Sellers have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assigned Contracts to the Buyer pursuant to the terms of this Sale Order and the APA, in each case in connection with the consummation of the Sale, and the assumption and assignment of the Assigned Contracts is in the best interests of the Sellers, their bankruptcy estates and creditors, and other parties in interest.  The Assigned Contracts being assigned to the Buyer under the APA are an integral part of the APA and the Sale and, accordingly, such assumptions and assignments are reasonable and enhance the value of the Debtors' bankruptcy estates.  Any non-Debtor counterparty to any Assigned Contract that has not actually filed with this Court an objection to such assumption as of the date hereof is deemed to have consented to such assumption and assignment.

CC.     The Sellers and the Buyer have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1)(A), 365(b)(1)(B), and 365(f) of the Bankruptcy Code, in connection with the sale and assumption and assignment of the

Assigned Contracts to the extent provided under this Sale Order and the APA and will: (i) cure any default existing prior to the date hereof under any of the Assigned Contracts, within the meaning of section 365(b)(l)(A) of the Bankruptcy Code; and (ii) provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assigned Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and Buyer has provided adequate assurance of future performance with respect to the Assigned Contracts, within the meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code. The Assigned Contracts are assignable notwithstanding any provisions contained therein to the contrary.

DD.    The APA and Sale must be approved and the Closing must occur promptly to preserve the value of the Purchased Assets and the Debtors' bankruptcy estates.

EE.    Given all of the circumstances of these chapter 11 cases and the adequacy and fair value of the consideration provided by Buyer under the APA, the Sale constitutes a reasonable and sound exercise of Sellers' business judgment, is in the best interests of Sellers and the other Debtors, their bankruptcy estates, their creditors, and other parties in interest in these chapter 11 cases, and should be approved.

FF.    The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale.

**<u>NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:</u>**

1.    The relief requested in the Motion is granted as set forth herein.

2.      Any and all objections and responses to the Motion that have not been withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby overruled and denied on the merits.

3.      Notice of the Motion, the Auction, the Sale Hearing, and the Sale was fair and equitable under the circumstances, and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

### Approval of the Sale of the Purchased Assets

4.      The APA, including all other ancillary documents, and all of the terms and conditions thereof, and the Sale contemplated thereby, are hereby approved in all respects.

5.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtors, acting by and through their existing agents, representatives, and officers, are authorized and empowered to take any and all actions necessary or appropriate to:  (a) consummate and close the Sale pursuant to and in accordance with the terms and conditions of this Sale Order and the APA; (b) transfer and assign all right, title, and interest to all property, licenses, and rights to be conveyed in accordance with the terms and conditions of this Sale Order and the APA; and (c) execute and deliver, perform under, consummate, and implement this Sale Order and the APA and all additional instruments and documents that may be reasonably necessary or desirable to implement this Sale Order, the APA, and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by this Sale Order, the APA, and any such other ancillary documents.  The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other ancillary documents.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding

sentence and the other provisions of this Sale Order; provided, however, that the Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

6.      This Sale Order shall be binding in all respects upon the Debtors, their bankruptcy estates, all creditors, all holders of equity interests in the Debtors, all holders of any Interests or Claims (whether known or unknown) against any Debtor, any holders of Interests or Claims against or on all or any portion of the Purchased Assets, all counterparties to any executory contract or unexpired lease of the Debtors, the Buyer and all agents, representatives, affiliates, and permitted successors and assigns of the Buyer, and any trustees, examiners, or other fiduciary under any section of the Bankruptcy Code, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtors' cases.  The terms and provisions of the APA and this Sale Order shall inure to the benefit of the Debtors, their bankruptcy estates, and their creditors, the Buyer and all agents, representatives, affiliates, and permitted successors and assigns of the Buyer, and any other affected third parties, including all persons asserting any Interests or Claims in the Purchased Assets to be sold to the Buyer pursuant to the APA, notwithstanding any subsequent appointment of any trustee(s), party, entity, or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee(s), party, entity, or other fiduciary such terms and provisions likewise shall be binding.

## Sale and Transfer of Purchased Assets

7.      Pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, upon the Closing Date and pursuant to and except as otherwise set forth in the APA, the Purchased Assets shall be transferred to the Buyer free and clear of all encumbrances, claims, interests, and liens, including the Excluded Liabilities (as defined in the APA), mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, collective bargaining agreements, leases, licenses, options, deeds of trust, security interests, other interests,

conditional sale or other title retention agreements, pledges, and other liens (including mechanics', materialman's, and other consensual and non-consensual liens and statutory liens), judgments, demands, encumbrances, rights of first refusal, offsets, contracts, recoupment, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, or tax, decrees of any court or foreign or domestic governmental entity, or charges of any kind or nature, if any, including any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act, including any liabilities related to the Employee Retirement Income Security Act of 1974, liabilities related to the Internal Revenue Code, or any other liability relating to Debtors' current and former employees, including any withdrawal liabilities or liabilities under any collective bargaining agreement or labor practice agreement, of the Debtors or any of the Debtors' predecessors or affiliates, claims, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability (other than Assumed Liabilities and Permitted Encumbrances) (collectively, the "Interests or Claims"), with all such Interests or Claims to attach to the cash proceeds of the Sale in the order of their priority, with the same validity, force, and effect that they now have as against the Purchased Assets, subject to any claims and defenses the Debtors and their bankruptcy estates may possess with respect thereto.

8.      On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Purchased Assets or a bill of sale transferring good and marketable title in such Purchased Assets to Buyer pursuant to the terms and allocations set forth in this Sale Order and the APA.  For the avoidance of doubt, the Excluded Assets set forth in the APA are not included in the Purchased Assets, and the Excluded Liabilities set forth in the APA are not Assumed Liabilities.

9.      Subject to the terms and conditions of this Sale Order, and based on the record made in connection with the Motion and the Sale Order, the transfer of Purchased Assets to Buyer pursuant to the APA and the consummation of the Sale and any related actions contemplated thereby do not require any consents other than as specifically provided for in this Sale Order and the APA, constitute a legal, valid, and effective transfer of the Purchased Assets, and shall vest the Buyer with right, title, and interest of Sellers in and to the Purchased Assets as set forth in this Sale Order and the APA, as applicable, free and clear of all Interests or Claims of any kind or nature whatsoever (except as otherwise assumed in, or permitted by, the APA).

10.     The Buyer, to the extent provided by this Sale Order or the APA, shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of Sellers constituting Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to Buyer as of the Closing Date as provided by this Sale Order and the APA.  To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any grant, permit, or license relating to the operation of the Purchased Assets sold, transferred, assigned, or conveyed to Buyer on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale.  Each and every federal, state,

and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Sale.

11.     For the avoidance of doubt, the Purchased Assets do not include the By Chloe Mark, and the By Chloe Mark and the other Excluded IP set forth in the APA shall not be transferred to the Buyer in connection with the Sale; *provided*, *however*, that the Buyer, the Sellers, and Chloe Coscarelli, as an individual and on behalf of Chef Chloe LLC ("Chef Chloe"), CC Hospitality Holdings LLC and CKC Sales LLC and their respective parents, subsidiaries, affiliates or any of their respective officers, directors, shareholders, employees, consultants, agents, attorneys, bankers, accountants, advisors, assigns, successors, predecessors or representatives (collectively "Chloe") have entered into a covenant not to sue agreement dated March [15], 2021 (the "Covenant Not to Sue Agreement"), the terms of which are approved and incorporated into this Sale Order by reference.  The Covenant Not to Sue Agreement is attached hereto as **Exhibit 1**.  For the avoidance of doubt, the Buyer will not attempt to register the By Chloe Mark or any of the Excluded IP, alone or as part of the Buyer's own service marks, trademarks, or tradenames, in the United States or with any other governmental entity anywhere in the world.  The Buyer will not represent that it has any ownership right in the By Chloe Mark or Excluded IP other than the rights provided in the Covenant Not to Sue Agreement or in this Sale Order.

12.     All entities that are presently, or on the Closing may be, in possession of some or all of the Purchased Assets to be sold, transferred, or conveyed (wherever located) to the Buyer pursuant to this Sale Order and the APA are hereby directed to surrender possession of the Purchased Assets to the Buyer on the Closing Date.

13.     Upon consummation of the Sale, if any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements

evidencing Interests or Claims against or in the Purchased Assets shall not have delivered to Sellers prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfactions, releases of all Interests or Claims that the person or entity has with respect to the Purchased Assets (unless otherwise assumed in, or permitted by, the APA), or otherwise, then (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Purchased Assets and (b) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests or Claims in the Purchased Assets of any kind or nature (except as otherwise assumed in, or permitted by, the APA); *provided* that, notwithstanding anything in this Sale Order or the APA to the contrary, the provisions of this Sale Order shall be self-executing, and neither the Sellers nor Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.  For the avoidance of doubt, upon consummation of the Sale, the Buyer is authorized to file termination statements, lien terminations, or other amendments in any required jurisdiction to remove and record, notice filings or financing statements recorded to attach, perfect, or otherwise notice any lien or encumbrance that is extinguished or otherwise released pursuant to this Sale Order under section 363 of the Bankruptcy Code and the related provisions of the Bankruptcy Code.

14.     Except to the extent included in Assumed Liabilities or Permitted Encumbrances, or to enforce the APA, all entities, including all lenders, debt security holders, equity security holders, governmental, tax, and regulatory authorities, parties to executory contracts and unexpired leases, customers, employees and former employees, dealers and sale representatives, and trade or

other creditors holding Interests or Claims of any kind or nature whatsoever against or in the Debtors and their bankruptcy estates or the Purchased Assets arising under or out of, in connection with, or in any way relating to, the Purchased Assets or the transfer of the Purchased Assets to Buyer, hereby are forever barred, estopped, and permanently enjoined from asserting any Interests or Claims of any kind or nature whatsoever against Buyer and its permitted successors, designees, and assigns, or property in connection with the Purchased Assets conveyed in accordance with the APA.

15.     As of and after the Closing:  (a) each of the Debtors' creditors is hereby authorized and directed to execute such documents and take all other actions as may be necessary to release its Interests or Claims in the Purchased Assets (if any) as such Interests or Claims may have been recorded or may otherwise exist; and (b) any Purchased Asset that may be subject to a statutory or mechanic's lien shall be turned over and such liens shall attach to the proceeds of the Sale in the same priority they currently enjoy with respect to the Purchased Assets.

16.     To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, deemed to be transferred to the Buyer as of the Closing Date.

17.     Subject to the terms, conditions, and provisions of this Sale Order, all persons are hereby forever prohibited and barred from taking any action that would adversely affect or interfere (a) with the ability of the Debtors to sell and transfer the Purchased Assets to Buyer in accordance with the terms of the APA and this Sale Order, and (b) with the ability of the Buyer to acquire, take possession of, use and operate the Purchased Assets in accordance with the terms of the APA

and this Sale Order. Notwithstanding the foregoing, nothing in this Sale Order or the APA shall prohibit any party from seeking to enforce or collect any of the Assumed Liabilities against the Buyer.

18.     Effective upon the Closing, and to the maximum extent available under applicable law, the Debtors shall be deemed to have released Buyer and its current and former officers, directors, stockholders, employees, agents, representatives, attorneys, investors, parents, predecessors, subsidiaries, successors, assigns and affiliates (the "Buyer Released Parties") from all actions, causes of action, damages, claims, and demands whatsoever, in law or in equity, known or unknown, contingent or liquidated, whether direct claims or for indemnification or contribution, that the Debtors ever had, now have, or may have against the Buyer Released Parties in connection with any event, conduct or circumstance occurring prior to the Closing; provided that, to the extent that a claim or cause of action by the Debtors, their estates, or any of their predecessors, successors or assigns is determined by order of this Court or any court of competent jurisdiction to have resulted from fraud, gross negligence or willful misconduct of the Buyer, such claim or cause of action shall not be released against Buyer.

19.     Effective upon the Closing, and to the maximum extent available under applicable law, neither the Buyer nor any of its members, partners, employees, affiliates, successors, assigns, advisors, or representatives shall have or incur any liability to, or be subject to any action by, the Debtors, their estates, or any of their predecessors, successors or assigns, including any trustee or examiner appointed in these cases or upon a conversion of these cases to chapter 7 of the Bankruptcy Code, other fiduciaries that are or may be appointed in these cases, or any persons or entities, arising from, based on, or related in any way to the negotiation, documentation, or due diligence in respect of, or the performance or consummation of the APA and any related

agreements entered into in connection therewith, the Debtors, their estates, and the conduct of their business prior to the Closing, and the entry into and consummation of the sale transaction, other than (with respect to the Buyer only) the Buyer's obligations under this Sale Order or the APA or any related agreements entered into in connection with the sale transaction; provided that, to the extent that a claim or cause of action by the Debtors, their estates, or any of their predecessors, successors or assigns is determined by order of this Court or any court of competent jurisdiction to have resulted from fraud, gross negligence or willful misconduct of the Buyer, such claim or cause of action shall not be released against Buyer.

20.    For the avoidance of doubt, Paragraphs 18 and 19 of this Sale Order do not exculpate or release the Buyer with respect to any direct or personal prepetition claims or defenses that a person may have independent of any claims or causes of action of the Debtors and the Debtors' estates (including derivative claims).  For the avoidance of doubt, except to the extent permitted under section 363 of the Bankruptcy Code, nothing in this Sale Order exculpates or releases any direct or independent claim (known or unknown) that Chloe, Chef Chloe, or any affiliated entity has or may have against the Buyer, including any of its past, present, or future members, partners, employees, affiliates, successors, assigns, advisors, or representatives and all such claims are preserved.

21.    The Buyer and its successors and assigns shall not be deemed, as a result of any action taken in connection with the transfer of the Purchased Assets, (a) to be a successor to the Debtors or their estates, (b) to have, *de facto* or otherwise, merged or consolidated with or into the Debtors or their estates, (c) to be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors, (d) to have a common identity with the Debtors, (e) to have acquired the trade or business of any of the Debtors for any purpose under applicable U.S. federal law (including

the Bankruptcy Code and the Internal Revenue Code of 1986, as amended), or (f) to be held out to the public as a continuation of the Debtors or the Debtors' trade or business, and the Buyer shall have no successor, transferee, or vicarious liability of any kind or character, including, but not limited to, under any theory of foreign, federal, state, or local antitrust, environmental, successor, tax, ERISA, assignee, or transferee liability, labor, product liability, employment, *de facto* merger, substantial continuity, or other law, rule, or regulation, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Business, the Purchased Assets, the Debtors or any obligations of the Debtors arising prior to the Closing Date.  The Buyer shall not be deemed to have expressly or implicitly assumed any of the Debtors' liabilities other than the Assumed Liabilities.  Except as otherwise provided herein or in the APA, the transfer of the Purchased Assets to the Buyer pursuant to the APA shall not result in the Buyer or the Purchased Assets having any liability or responsibility for, or being required to satisfy in any manner, whether in law or in equity, whether by payment, setoff, or otherwise, directly or indirectly, any claim against the Debtors or against any insider of the Debtors or liens (other than Permitted Encumbrances).

### Contracts to be Assumed and Assigned

22.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the occurrence of the Closing Date, Sellers' assumption and assignment to the Buyer, and the Buyer's assumption, on the terms set forth in this Sale Order and the APA of the Assigned Contracts, is hereby approved in its entirety, and the requirements of section 365 of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

23.     Sellers are hereby authorized in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to assume and assign to the Buyer, effective upon the Closing Date, the

Assigned Contracts free and clear of all Interests or Claims of any kind or nature whatsoever (except as otherwise assumed in, or permitted by, the APA) and execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to Buyer.  A schedule of the Assigned Contracts is set forth on **Exhibit 3** hereto.  For the avoidance of doubt, nothing herein affects the Buyer's right to re-designate prior to the Closing Date an Assigned Contract as an Excluded Asset, or an Excluded Asset as an Assigned Contract, in accordance with, and subject to the conditions set forth in, Section 2.8 of the APA.

24.    Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested in all right, title, and interest of each Assigned Contract.  The Debtors shall cooperate with, and take all actions reasonably requested by, the Buyer to effectuate the foregoing, as further provided in this Sale Order and the APA.

25.    The Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract that is assumed and assigned to the Buyer pursuant to the APA (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.

26.    Pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, at the Closing, the Buyer shall pay to the respective counterparty the Cure Costs relating to any Assigned Contract.

27.    The Debtors served all counterparties to the Debtors' executory contracts and unexpired leases with notice [Docket Nos. 226 and 230] ("Notice of Potential Assignment") of potential assignment to the Winning Bidder, the proposed Cure Costs, and the deadline to object to the Cure Costs and adequate assurance of future performance with respect to a potential buyer, which deadlines have passed.  Accordingly, unless an objection to the proposed assumption and

assignment of an Assigned Contract (including whether applicable law excuses a counterparty from accepting performance by, or rendering performance to, Buyer), the proposed Cure Costs or the adequate assurance of future performance with respect to Buyer was filed and served before the applicable deadline, each counterparty to an Assigned Contract is forever barred, estopped and permanently enjoined from asserting against the Debtors or Buyer, their respective affiliates, successors or assigns or the property of any of them, any objection to assignment or default if such objection or default was not raised or asserted prior to or at the appropriate objection deadline.

28.    RCPI Landmark Properties LLC ("RCPI"), lessor under that certain lease agreement for space located at One Rockefeller Center (the "Rockefeller Lease"), preserves for later adjudication before this Court its rights to argue about the assumption, assumption and assignment, assignment, or rejection under section 365 of the Bankruptcy Code and the terms and conditions thereof, including, without limitation, the Cure Costs, the cure of non-economic defaults that must be cured under section 365 of the Bankruptcy Code as a condition to assumption and assignment, and adequate assurance of future performance.  Nothing in this Sale Order shall release and/or discharge any guarantee issued by a non-debtor party in connection with the Rockefeller Lease without the parties' consent.

29.    Except as otherwise agreed in writing between the Debtors and the non-Debtor parties to the Assigned Contracts or stated on the record of the Sale Hearing, the Cure Costs for the Assigned Contracts are hereby fixed at the amounts set forth on the Notice of Potential Assignment, and the non-Debtor parties to such Assigned Contracts are forever bound by such Cure Costs and, upon payment of such Cure Costs, are hereby enjoined from taking any action against the Debtors and their bankruptcy estates, Buyer and all agents, representatives, affiliates,

and permitted successors and assigns of Buyer, or the Purchased Assets with respect to any claim for cure under any Assigned Contract.

30.      Upon the Closing, the Debtors shall file a notice of sale Closing and serve the same on all counterparties to the Assigned Contracts.    Such notice shall serve as notice that such Assigned Contracts have actually been assumed and assigned.  The Buyer may designate any of the Assigned Contracts listed on **Exhibit 3** hereto as a rejected contract, and any rejected contract as an Assigned Contract, until the Closing occurs.

31.      The payment of the applicable Cure Costs (if any) shall effect a cure of all defaults existing as of the date that such executory contracts or unexpired leases are assumed and compensate for any actual pecuniary loss to such non-Debtor party resulting from such default.

32.      The Buyer shall have assumed the Assigned Contracts, and pursuant to section 365(f) of the Bankruptcy Code, the assignment by Sellers of such Assigned Contracts shall not be a default thereunder.  After the payment of the relevant Cure Costs by the Buyer, neither the Debtors and their bankruptcy estates nor Buyer shall have any further liabilities to the non-Debtor counterparties to the Assigned Contracts, other than the Buyer's obligations under the Assigned Contracts that accrue or become due and payable on or after the date that such Assigned Contracts are assumed.

33.      Any provisions in any Assigned Contracts that prohibit or condition the assignment of such Assigned Contract or allow the party to such Assigned Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assigned Contract constitute unenforceable anti-assignment provisions that are void and of no force and effect.  All other requirements and conditions under sections 363 and

365 of the Bankruptcy Code for the assumption by the Sellers and assignment to Buyer of the Assigned Contracts have been satisfied.

34.     Any party having the right to consent to the assumption or assignment of any Assigned Contract that failed to object to such assumption or assignment is deemed to have consented to such assumption and assignment as required by section 365(c) of the Bankruptcy Code.

35.     The Buyer shall be deemed to be substituted for the Sellers as a party to the applicable Assigned Contracts and the Debtors and their estates shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assigned Contracts.

36.     The Buyer has provided adequate assurance of future performance under the relevant Assigned Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

37.     There shall be no assignment fees, increases, rent-acceleration, or any other fees charged to the Buyer or the Debtors and their estates as a result of the assumption and assignment of the Assigned Contracts.

38.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all counterparties to the Assigned Contracts are forever barred and permanently enjoined from raising or asserting against the Debtors and their estates or the Buyer any assignment fee, default, breach, claim, pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts, existing as of the date that such Assigned Contracts are assumed or arising by reason of the Closing.

39.     Neither the Buyer nor any successor of the Buyer shall be responsible for or have any Interests or Claims or obligations arising out of any of the contracts, agreements, or

understandings that are not Assigned Contracts after the Closing Date (except as specifically provided by the APA).

## Additional Provisions

40.     The Sellers and the Buyer hereby waive, and shall be deemed to waive, any requirement of compliance with, and any claims related to non-compliance with, the provisions of any bulk sales, bulk transfer, or similar law of any jurisdiction that may be applicable.

41.     Following the Closing, no holder of an Interest or Claim in or against the Debtors and their bankruptcy estates or the Purchased Assets shall interfere with Buyer's title to or use and enjoyment of the Purchased Assets based on or related to such Interest or Claim or any actions that the Debtors and their bankruptcy estates may take in these chapter 11 cases or any successor cases.

42.     The Debtors, including their respective officers, employees, and agents, are hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of the APA and this Sale Order.  The Debtors shall be, and they hereby are, authorized to take all such actions as may be necessary to effectuate the terms of this Sale Order and the relief granted pursuant to this Sale Order.

43.     The Sale is undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assigned Contracts by the Buyer, if any, and the sale free and clear of all Interests or Claims (unless otherwise assumed in, or permitted by, the APA)), unless such authorization and consummation of such Sale are duly stayed pending such appeal.  The Buyer is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

44.     As a good-faith purchaser of the Purchased Assets, the Buyer has not colluded with any of the other bidders, potential bidders, or any other parties interested in the Purchased Assets, and therefore the sale of the Purchased Assets may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

45.     The Buyer shall use commercially reasonable efforts to comply with information requests from the Debtors' investors in connection with the requirements of the EB-5 Immigrant Investor Program.

46.     The failure specifically to include any particular provisions of the APA including any of the documents, agreements, or instruments executed in connection therewith in this Sale Order shall not diminish or impair the efficacy of such provision, document, agreement, or instrument, it being the intent of this Court that the APA and each document, agreement or instrument be authorized and approved in its entirety.

47.     Nothing contained in any other order in these chapter 11 cases (including any order entered after any conversion of any of these chapter 11 cases to a case under chapter 7 of the Bankruptcy Code) or any related proceeding subsequent to entry of this Sale Order shall alter, conflict with, or derogate from, the provisions of the APA or this Sale Order.

48.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

49.     To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in these chapter 11 cases, the terms of this Sale Order shall govern.

50.     To the extent there are any inconsistencies between the terms of this Sale Order and the APA (including all ancillary documents executed in connection therewith), the terms of this Sale Order shall govern.

51.     The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court.

52.     The provisions of this Sale Order are nonseverable and mutually dependent.

53.     Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d) or 7062 or any applicable provisions of the local rules of this Court, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.

54.     This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

**Dated: March 16th, 2021**
**Wilmington, Delaware**

BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE